Cause No. 2018-79647

| | | |
|---|---|---|
| RYAN W. LANE | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| HEALING FAVOR INVESTMENTS, | § | 333RD JUDICIAL DISTRICT |
| LLC. | § | |
| Defendant & Third Party Plaintiff, | § | |
| v. | § | |
| | § | |
| UNIQUE MICA GREEN | § | |
| Third Party Defendant. | § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S MOTION TO DISSOLVE TEMPORARY INJUNCTION

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, RYAN W. LANE, and files this his Motion to Dissolve Temporary Injunction, entered in the above styled case, and in support thereof would respectfully show the Court the following:

## I.
## BACKGROUND AND FACTS

On July 29, 2016, the Property that is the subject of the Temporary Injunction in this case and located at 4630 Perry Street, Houston, TX 77021, and all improvements thereon, (the "Property"), was purchased by Healing Favor Investments, LLC, ("Healing Favor"), from then owner of record, Lillian Price, for $150,000.00, cash. Healing Favor intended to open an assisted living facility on the Property but after purchasing the Property determined that the Property would not work for an assisted living facility and decided to sell the same, hopefully, for a profit. Healing Favor member, Ryan Lane, (hereinafter sometimes referred to as "Lane" or "Ryan W. Lane"), was authorized for the second time by the other members of Healing Favor to put the Property up for sale and, ostensibly, sell the Property. (See **Exhibit A**). On or about September 24, 2018, Lane did so and on

EXHIBIT B

or about February 21, 2019, third-Party Defendant, Michael J. Green, aka Unique Mica Green, ("Green"), agreed to purchase the Property from Healing Favor, on a seller financed basis. The General Warranty Deed with Vendor's Lien dated February 21, 2019 is recorded in Instrument No. RP-2019-91041 of the Property Records of Harris County, Texas. A true and correct copy of the General Warranty Deed with Vendor's Lien is attached hereto as **Exhibit B**. The Deed of Trust securing Healing Favor's interest in the Property dated February 21, 2019 is also recorded in Instrument RP-2019-91042 of the Property Records of Harris County, Texas. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit C**. A true and correct copy of the Seller's and Purchaser's Closing Statements from American Title Company of Houston, located at 2900 Woodbridge Drive, Suite 210, Houston, TX 77087, detailing the charges and credits of the real property transaction is attached hereto as **Exhibit D**.

On March 5, 2019, a Loan Servicing Agreement was executed by Green and Ryan W. Lane, who presented himself as and believed he was authorized to serve as the President and Managing Member of Healing Favor. A true and correct copy of the Loan Servicing Agreement is attached hereto as **Exhibit E**. As Healing Favor does not service its loans and in expectation of selling the loan to a 3rd party, Healing Favor hired  TEXSTAR Escrow to collect the principle and interest payments of $2,017.85/month on the Promissory Note executed by Green on February 21, 2019, with a Promissory Note maturity date of January 21, 2049. A true and correct copy of the Promissory Note executed by Unique Mica Green is attached hereto as **Exhibit F**.

Thereafter, out of the blue, but before the first payment on the Promissory Note, a General Warranty Deed with No Lien, dated March 5, 2019, ("GWDNL"), was recorded in Instrument No. RP-2019-104731 of the Property Records of Harris County, Texas, presumably by Green, (attached

hereto as **Exhibit G**), which purports to transfer the Property to Green free and clear of the Deed of Trust. This recorded GWDNL is  nonsensical and is a manufactured document that incorporates an obvious signature block of Ryan Lane that if he executed the same, he executed it to attach to a court filing in his divorce case that was pending at the time. The use of this signature block is a fraud upon Lane and Healing Favor by Green in which she was assisted by Charles E. Hart, Jr., ("Hart"), the notary. The GWDNL is an obvious manufactured document for other reasons as well: (i) it has a different font on page one (1) compared with page two (2); (ii) the signature block form is incorrect for a deed but is consistent with a court filing; (iii) in a real estate transaction no such document would exist, in that if the original lien was satisfied, the deed of trust would simply be released; (iv) the "no-lien" language is nonsensical and unnecessary;  (v) there is no mention of a cash option in the earnest money contract; (vi) the email with this cash option has obviously been doctored, (see **Exhibit H**); (vii) there is no evidence of the $70,000.00 cash being paid; (viii) there is no receipt for the payment of $70,000.00 in cash; (ix) Charles E. Hart, Jr.,worked for Green,  has no book documenting the event and he has no specific memory of notarizing the GWDNL for Lane (attached as **Exhibit H-1** is the transcript of the Temporary Injunction hearing in which Hart provided testimony[1]; (x) Lane asserts that he did not execute the General Warranty Deed with No Lien; (xi) Green has done this before as part of a different transaction, a previous General Warranty Deed dated December 13, 2017 is recorded in Instrument RP-2017-547565 by Green with the exact same font and similar form. A true and correct copy of which is attached hereto as **Exhibit I and Exhibit I-1**; (xii) compare document in item (xi) with the GWDNLin this transaction, which originally closed

---

[1] *See* Exhibit H-1, Page 40, Lines 16-25; Page 41, Lines 1-10 and 18-25; Page 42, Lines 1-9; Page 43, Lines 20-22; Page 44, Lines 6-11.

at a title company; and (xiii) this alleged payment cash payout did not go through the servicing agreement.

Invariably, on December 2, 2019, Plaintiff received a copy of the TEXSTAR ESCROW Loan Servicing statement for Green concerning the Property. The statement received reflects that Green did not make the March 21, 2019 or any subsequent payments. A true and correct copy of the TEXSTAR ESCROW statement is attached hereto as **Exhibit J**.

Plaintiff, Ryan Lane ultimately brought suit seeking a declaratory judgment that he had the authority to sell the Property on behalf of Healing Favor. Lane also ultimately brought claims against Unique Mica Green, ("Green"), for Conversion; Unjust enrichment/Constructive Trust; Fraud, Fraudulent Transfer, and Fraud in a Real Estate Transaction; Breach of Contract; Failure to Pay Promissory Note/Suit on the Note; Quantum Meruit, Promissory Estoppel, and Unjust Enrichment; Theft pursuant to Texas Theft Liability Act; and Conspiracy with Charles E. Hart, Jr., to include on behalf of Healing Favor.

Notwithstanding the above and foregoing, on March 13, 2020, the Court granted a Temporary Restraining Order, temporarily restraining Lane from holding a foreclosure sale and from selling the Property on behalf of Healing Favor. On July 3, 2020, the Court ordered a Temporary Injunction, restraining Lane from holding a foreclosure sale and from selling the property subject of this lawsuit on behalf of Healing Favor. Lane seeks to dissolve that July 2, 2020 order by this motion.

In addition to the above and foregoing, Green has a long pattern of criminal behavior that includes been charged with tampering with a government instrument, violation of a protective order, aggravated assault of a family member and criminal investigations and/or convictions on multiple counts of forgery, filing false documents with civil courts, theft by check, unauthorized selling of

motor vehicles, and assault. A copy of the Harris County District Clerk Criminal and Civil Court History is attached hereto as **Exhibit K**. Additionally, Unique Mica Green has numerous abstracts of judgment on file in Harris County which are attached hereto as **Exhibit L**.

Accordingly, Green is a habitual criminal with a long pattern of criminal behavior that includes forgery, tempering with records, theft, aggravated robbery with a deadly weapon, breach of contract and fraud; all consistent with the same type of fraud she is perpetrating on Plaintiff Lane and Healing Favor. With all of this above as background and the GWDNL, *e.g.*, a poorly attempted fraud not only Plaintiff Lane and Healing Favor, but ultimately on the Court itself, Green has little or no chance of prevailing, on her assertion that she owns the Property made the basis of this case because of some $70,000.00 cash option and the GWDNL, if the case proceeds to trial, and therefore, on that basis alone, the temporary injunction should be dissolved.

**II.**
**ARGUMENT**

The purpose of a temporary injunction is to preserve the status quo pending a full trial on the merits. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Williard Capital Corp. v. Johnson*, 2017 Tex. App. LEXIS 7844; *Trostle v. Trostle,* 77 S.W.3d 908, 916 (Tex. App.—Amarillo 2002, no pet.). A temporary injunction maintains the status quo by preventing "any act of a party which would tend to render the final judgment in the case ineffectual." *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434, 441 (Tex. Civ. App.—El Paso 1967, writ ref'd n.r.e.) (quoting *Moffitt v. Lloyd*, 98 S.W.2d 860 (Tex. Civ. App.—Waco 1936, no writ)); *Hartwell v. Lone Star, PCA*, 528 S.W.3d 750 (Tex. App.—Texarkana 2017, pet. dism.). In a Temporary Injunction, the court must decide whether: a) **the party applying for the injunction is likely to prevail if the case proceeds to trial,** (emphasis

added), and b) the injury that the moving party would suffer from the foreclosure outweighs the injury that the foreclosing party is suffering by not getting paid ("balancing the equities"). *Townson v. Liming*, No. 06-10-00027-CV, 2010 Tex. App. LEXIS 5459, 2010 WL 2767984, at *2 (Tex. App.— Texarkana July 14, 2010, no pet.) The status quo, however, cannot be a violation of the law. *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 768 (Tex. App.—Fort Worth 1994, writ dism'd w.o.j.); *The City of San Antonio v. Vakey*, 123 S.W.3d 497, 502 (Tex. App.—San Antonio 2003, no pet.) (holding that "[w]here the acts sought to be enjoined violate an express law, the status quo to be preserved could never be a condition of affairs where the respondent would be permitted to continue the acts constituting that violation.")

The facts of this case are overwhelming in that there is little or no likelihood that Green can prevail if the case proceeds to trial. To the contary, the facts unequivocally show that (1) the documents upon which she bases her claim of ownership are fraudulent and (2) Green is a habitual criminal with multiple criminal investigations and/or convictions of fraud, very similar to the fraud that she is attempting to effectuate against Lane and Healing Favor, now using the judicial system to accomplish this goal.

### III.
### DEFENDANT GREEN'S CRIMINAL INVESTIGATIONS AND CONVICTIONS FOR FORGERY AND FRAUD

The facts set forth in paragraph I entitled Background and Facts are incorporated herein as if set forth at length. More specifically,  the allegations and convictions of fraudulent acts against Green are significant. For example, **Exhibit M-1** is a Harris County felony complaint, filed on May 26, 2021, which alleges tampering with a government document, specifically the Vehicle Identification Number (VIN) of a stolen vehicle. Green replaced the VIN of the stolen vehicle with

the VIN from her own vehicle and drove the vehicle for more than a year before being caught after the victim hired a private investigator. The affiant in the complaint further states that he is familiar with Green, having investigated her before for a scheme in which she would sell cars and then report them stolen. Green altered the VIN number of the stolen vehicle by a scheme involving the filing of a form 130-U for Application for Texas Title and/or Registration in which she forged the signature of the buyer.

Green's habit of forging signatures is well documented, and she has tried to avoid investigation by would-be victims of her fraud by using different variations of her name. The complaint further states that Green's license identifies her as a black female, but she is listed as a black male with the name of Michael Green on the Harris County District Attorney's website. **Exhibit M-2** attached hereto shows that the Harris County court system is aware of six known aliases for Green. The following exhibits also evidence similar crimes of forgery or fraud perpetrated by Green analogous to the case at issue:

**Exhibit M-3**: A felony forgery conviction from 2002 in Fort Bend County against Michael James Green.

**Exhibit M-4:** A Fort Bend forgery indictment against Green for a crime alleged on October 22, 2019, stamped January 11, 2021.

**Exhibit M-5:** Another Fort Bend forgery indictment against Green which is contemporaneous with **Exhibit M-4.**

**Exhibit M-6:** A list of the criminal cases on record with the Harris County District Clerk's Office against Green, including multiple counts of fraud and forgery.

**IV.**
<u>**THE DEED OF TRUST THAT GREEN RECORDED FOR THE PROPERTY IS A
FORGERY**</u>

Green claims that she had a side deal with Lane where she could purchase the Note from Plaintiff (versus Healing Favor) in exchange for $70,000.00 in cash, yet she has provided no receipt of that financial exchange, no record of giving the money in exchange for the Note, a release of the Deed of Trust, or the Property. She has not even provided of any evidence that she had $70,000.00 in cash at the time of the transaction, or even that she obtained financing for that amount of money to purchase the Property. Not only did Green offer no evidence that she had the money or was able to obtain financing, a tax delinquency suit was threatened on November 20, 2020, hereto attached as **Exhibit M-7.** Further as of January 2021, Green was delinquent on 2019 taxes in the amount of $5,489.77, evidence of which is attached hereto as **Exhibit M-8**. It is unlikely that Green ever had $70,000.00 in cash considering she could not even maintain regular tax payments.

In reality, at the time the sale to Green was pending, she offered to help Lane with his divorce claiming she was a paralegal and had experience in such matters. In the process of assisting him with a particular court filing, she asked Lane to sign multiple documents with the same signature block. The document that Green proffered as the alleged "General Warranty Deed With No Lien," to prove the conveyance of the property, is an outright forgery as it contains one of those signature blocks Green had Lane sign for a divorce court filing.

Additionally, the GWDNL was allegedly notarized by Charles Ervin Hart, Jr., a man who Lane has never met, and who, upon information and belief, is associated habitually with Green in her forgery ventures. Regardless, whether the signature was lifted from a different document or forged in some other way, the GWDNL was not signed by Lane.

Green has been convicted of Fraud numerous times, exhibiting a habit of engaging in the fraudulent behavior that is consistent with the facts of this case and the documents that Green has produced. This case is just another in a long line of criminal and civil cases which have resulted from the open and obvious fraudulent activities which Green has perpetrated.  Accordingly, the only party suffering irreparable harm in this case is Lane and the owners of Healing Favor, with Green having no basis nor likelihood to prevail if the case proceeds to trial. On that basis alone, the Temporary Injunction, should be dissolved and Lane and Healing Favor should be allowed to post the Property for foreclosure.

**III.**
**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Ryan W. Lane, prays that, the Court dissolve the Temporary Injunction restraining Plaintiff Ryan Lane and/or Healing Favor from foreclosing on the Property located at 4630 Perry Street, Houston, Texas 77021, and any and all other relief,  under law or equity, to which the Plaintiff is entitled.

Respectfully submitted,

DABNEY  PAPPAS

By: /s/  Gus E. Pappas

Gus E. Pappas
Texas Bar Number 15454850
gus@dabneypappas.com
1776 Yorktown, Suite 425
Houston, TX 77056
713-621-2678  Telephone
713-621-0074  Facsimile

ATTORNEY FOR PLAINTIFF
RYAN W. LANE

## CERTIFICATE OF CONFERENCE

I, Gus E. Pappas, conferred with Randal L. Telford, counsel for Defendant Unique Green, regarding the filing of Plaintiff's Motion to Dissolve Temporary Injunction.  While Mr. Telford expected the filing of the motion, he is opposed.

/s/ Gus E. Pappas

Gus E. Pappas

## CERTIFICATE OF SERVICE

In accordance with TEX. R. CIV. P. 21A, I, Gus E. Pappas, counsel for Plaintiff, do hereby certify that a true and correct copy of Ryan William Lane's Motion to Dissolve Temporary Injunction was served on all counsel of record, by electronic service, on this the 21st day of January, 2022.

/s/ Gus E. Pappas

Gus E. Pappas

## Re: Healing Favors' 2018 BLDG 'For Sale'

IS  **Dwight Isaacs**
Mon, 24 Sep 2018 8:19:51 PM -0500

To  "Valerie Pratt (OlayInka)" <valerie.pratt@gmail.com>,
"Ryan William Lane" <ryanlane@onlyaip.com>

Cc  "Marcus Dawes - ESTATE Real" <dataque1911@gmail.com>,
"Bernard Jones" <bjones06@yahoo.com>,
"Johnny C6F C. Williams - LCDR" <johnny.c.williams@mac.com>,
"Marie Jean-Jacques" <mimi723@gmail.com>,
"Andrea Lopez" <AndreaLopez@onlyaip.com>

Tags ⟡

Hey Ryan,
Please put the property up for sale and let's get this thing on the market on all professional websites. The collective will pay their fare share to advertise full force. The building has appreciated significant value based off my research. Also, the market is hot as we all know and the money from the sale will come in very handy for all, especially me.

Please acknowledge receipt. Let's talk ASAP.

Thanks,
Dwight H. Isaacs
Isaacs Holdings LLC
678.653.6115

On Mon, Sep 24, 2018, 11:12 AM O. Valerie Nicolas <valerie.pratt@gmail.com> wrote:
> Good morning all,
>
> Hope you're well.
>
> Ryan, can you pls send me (or put on Dropbox) the 2017 tax return? I'm buying a house and the loan officer needs it since it's on my tax return.
>
> Also, I would love to get a conference call going to get updates on the house.
>
> Thanks,
>
> -vn-
>
> Sent from my iPhone
> Pls excuse any typos



## Re: Healing Favors' 2018 BLDG 'For Sale'

**VA**  O. Valerie Nicolas
Mon, 24 Sep 2018 8:28:51 PM -0500

To  "Marie Jean-Jacques" <mimi723@gmail.com>

Cc  "Dwight Isaacs" <isaacsholdingsllc@gmail.com>,
"Ryan William Lane" <ryanlane@onlyaip.com>,
"Marcus Dawes - ESTATE Real" <dataque1911@gmail.com>,
"Bernard Jones" <bjones06@yahoo.com>,
"Johnny C6F C. Williams - LCDR" <johnny.c.williams@mac.com>,
"Andrea Lopez" <AndreaLopez@onlyaip.com>

Tags ⬭

I agree! Ryan, let's pls put it up for sale ASAP.

Also, pls send the 2017 tax return as soon as you can. I need it ASAP.

-vn-

Sent from my iPhone
Pls excuse any typos

On Sep 24, 2018, at 9:22 PM, Marie Jean-Jacques <mimi723@gmail.com> wrote:

■



## Re: Healing Favors' 2018 BLDG 'For Sale'

**MI**   Marie Jean-Jacques
Mon, 24 Sep 2018 8:22:13 PM -0500

To   "Dwight Isaacs" <isaacsholdingsllc@gmail.com>

Cc   "Valerie Pratt (OlayInka)" <valerie.pratt@gmail.com>,
"Ryan William Lane" <ryanlane@onlyaip.com>,
"Marcus Dawes - ESTATE Real" <dataque1911@gmail.com>,
"Bernard Jones" <bjones06@yahoo.com>,
"Johnny C6F C. Williams - LCDR" <johnny.c.williams@mac.com>,
"Andrea Lopez" <AndreaLopez@onlyaip.com>

Tags  ⊘

Yes, please.  I'm ready to move on.
Please advise on the next steps and what you need from the collective to make this happen;

Thanks,
Marie

On Sep 24, 2018, at 9:19 PM, Dwight Isaacs <isaacsholdingsllc@gmail.com> wrote:

Hey Ryan,
Please put the property up for sale and let's get this thing on the market on all professional websites. The collective will pay their fare share to advertise full force. The building has appreciated significant value based off my research. Also, the market is hot as we all know and the money from the sale will come in very handy for all, especially me.

Please acknowledge receipt. Let's talk ASAP.

Thanks,
Dwight H. Isaacs
Isaacs Holdings LLC
678.653.6115

On Mon, Sep 24, 2018, 11:12 AM O. Valerie Nicolas <valerie.pratt@gmail.com> wrote:
Good morning all,

Hope you're well.

Ryan, can you pls send me (or put on Dropbox) the 2017 tax return? I'm buying a house and the loan officer needs it since it's on my tax return.

Also, I would love to get a conference call going to get updates on the house.

Thanks,

-vn-

Case 22-30587   Document 27-2   Filed in TXSB on 04/08/22   Page 14 of 139

Sent from my iPhone
Pls excuse any typos

03/07/2019   ER   $20.00

GENERAL WARRANTY DEED WITH VENDOR'S LIEN

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION
FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY
BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL
SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

Effective Date:          February 21, 2019

Grantor:       HEALING FAVOR INVESTMENTS, LLC,
               a Texas limited liability company

Grantor's Mailing Address:   5868 Westheimer Rd, Suite 363, Houston, TX 77057

Grantee:       UNIQUE MICA GREEN

Grantee's Mailing Address:   1116 Elberta St., Houston, TX 77021

Consideration: Ten Dollars ($10.00) cash and other good and valuable consideration
and one (1) note of even date executed by Grantee and payable to the order of GRANTOR, in
the principal amount of TWO HUINDRED SEVENTY FIVE THOUSAND and 00/100
Dollars ($275,000.00). The note is secured by a first and superior vendor's lien and
superior title retained in this deed in favor of GRANTOR, and by a first-lien deed of trust of
even date from Grantee to John D. Tamburello, Trustee.

Property (including any improvements):

Lot Six (6), in Block Eight (8), of SOUTH COURT AMENDING PLAT NO. 1, a
subdivision in Harris County, Texas, according to the map or plat thereof recorded
under Film Code No. 681616 of the Map Records of Harris County, Texas

Reservations from Conveyance: None.

Exceptions to Conveyance and Warranty: Lien(s) described as part of the Consideration
of the property. This conveyance is made subject to, all and singular, the restrictions,
mineral reservations, royalties, conditions, easements and covenants, if any, applicable
to and enforceable against the above described property as reflected by the records of
the County Clerk of the aforesaid County.

Grantor, for the Consideration and subject to the Reservations from Conveyance and
the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee
the Property, together with all and singular the rights and appurtenances thereto in any
way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and

RECORDED BY
AMERICAN TITLE COMPANY
GF 3080919-00621


PLAINTIFF'S
EXHIBIT
6

assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

Taxes for the current year have been prorated between the Grantor and Grantee and the Grantee assumes the payment thereof.

The vendor's lien against and superior title to the Property is retained until the note described is fully paid according to its terms, at which time this deed will become absolute.

When the context requires, singular nouns and pronouns include the plural.

HEALING FAVOR INVESTMENTS, LLC
a Texas limited liability company

Name: Ryan W. Lane
Title:    President & Managing Member

THE STATE OF TEXAS   §
COUNTY OF HARRIS   §

This instrument was acknowledged before me, on this the ⌐21⌐ day of February, 2019, by Ryan W. Lane, in the capacity therein stated.



NOTARY PUBLIC, STATE OF TEXAS

RP-2019-91041
# Pages 3
03/07/2019 08:59 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
DIANE TRAUTMAN
COUNTY CLERK
Fees   $20.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

RP-2019-91042
03/07/2019  ER  $52.00

RP-2019-91042

# DEED OF TRUST

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

Effective Date:  February 21, 2019

Grantor:   UNIQUE MICA GREEN

Grantor's Mailing Address:   1116 Elberta St., Houston, TX 77021

Trustee:   John D. Tamburello

Trustee's Mailing Address:  P. O. Box 41791, Houston, TX 77241-1791

Lender:  Healing Favor Investments, LLC, a Texas limited liability company

Lender's Mailing Address:   5868 Westheimer Rd., Suite ⟨363⟩, Houston, TX 77057

Obligation

    Note

        Date: Even date

        Original principal amount: Two Hundred Seventy Five Thousand and 00/100 Dollars ($275,000.00)

        Borrower:  Unique Mica Green

        Lender:    Healing Favor Investments, LLC,
                a Texas limited liability company

        Maturity date: As set forth in the note.

Property (including any improvements):

Lot Six (6), in Block Eight (8), of SOUTH COURT AMENDING PLAT NO. 1, a subdivision in Harris County, Texas, according to the map or plat thereof recorded under Film Code No. 681616 of the Map Records of Harris County, Texas

Prior Lien: None.

Other Exceptions to Conveyance and Warranty:



RECORDED BY
AMERICAN TITLE COMPANY
GF301091-00621



## A.    Granting Clause

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

## B.    Grantor's Obligations.

*B.1.*    Grantor agrees to maintain all property and liability insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender, and as to property loss, that are payable to Lender under policies containing standard mortgagee clauses, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender before execution of this deed of trust and again at least ten days before the expiration of the Required Insurance Coverages.

*B.2.*    Grantor agrees to—

a.    keep the Property in good repair and condition;

b.    pay all taxes and assessments on the Property before delinquency, not authorize a taxing entity to transfer its tax lien on the Property to anyone other than Lender, and not request a deferral of the collection of taxes pursuant to section 33.06 of the Texas Tax Code;

c.    defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

d.    obey all laws, ordinances, and restrictive covenants applicable to the Property;

e.    keep any buildings occupied as required by the Required Insurance Coverages;

f.    if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments; and

g.    notify Lender of any change of address.

## C.    Lender's Rights

*C.1.*    Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees, succeeding to all rights and responsibilities of Trustee.

RP-2019-91042



*C.2.* If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

*C.3.* Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

*C.4.* Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

*C.5.* If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

*C.6.* **COLLATERAL PROTECTION INSURANCE NOTICE**

**In accordance with the provisions of section 307.052(a) of the Texas Finance Code, the Beneficiary hereby notifies the Grantor as follows:**

    (A) **the Grantor is required to:**

        (i) **keep the collateral insured against damage in the amount the Lender specifies;**

        (ii) **purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and**

        (iii) **name the Lender as the person to be paid under the policy in the event of a loss;**

    (B) **the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and**

    (C) **if the Grantor fails to meet any requirement listed in Paragraph (A) or (B), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.**

RP-2019-91042



Page 4 of 11   Thursday, August 26, 2021   County Clerk Harris County, Texas

*C.7.*   If a default exists in payment of the Obligation or performance of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may—

a.   declare the unpaid principal balance and earned interest on the Obligation immediately due;

b.   exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;

c.   direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

d.   purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

*C.8.*   Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

## D.   Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee will—

*D.1.*   either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

*D.2.*   sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

*D.3.*   from the proceeds of the sale, pay, in this order—

a.   expenses of foreclosure, including a reasonable commission to Trustee;

b.   to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

c.   any amounts required by law to be paid before payment to Grantor; and

d.   to Grantor, any balance; and

*D.4.*   be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs,

RP-2019-91042



including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

## E. General Provisions

*E.1.* If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

*E.2.* Recitals in any trustee's deed conveying the Property will be presumed to be true.

*E.3.* Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

*E.4.* This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

*E.5.* If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

*E.6.* Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

*E.7.* Grantor collaterally assigns to Lender all present and future rent from the Property and its proceeds. Grantor warrants the validity and enforceability of the assignment. Grantor will apply all rent to payment of the Obligation and performance of this deed of trust, but if the rent exceeds the amount due with respect to the Obligation and the deed of trust, Grantor may retain the excess. If a default exists in payment of the Obligation or performance of this deed of trust, Lender may exercise Lender's rights with respect to rent under the Texas Property Code as then in effect. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent collected under this paragraph as required by the Texas Property Code as then in effect. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies.

RP-2019-91042



*E.8.*  Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

*E.9.*  In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

*E.10.*  Grantor may not sell, transfer, or otherwise dispose of any Property, whether voluntarily or by operation of law, without the prior written consent of Lender. If granted, consent may be conditioned upon (a) the grantee's integrity, reputation, character, creditworthiness, and management ability being satisfactory to Lender; and (b) the grantee's executing, before such sale, transfer, or other disposition, a written assumption agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not cause or permit any Property to be encumbered by any liens, security interests, or encumbrances other than the liens securing the Obligation and the liens securing ad valorem taxes not yet due and payable without the prior written consent of Lender. If granted, consent may be conditioned upon Grantor's executing, before granting such lien, a written modification agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, an approval fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not grant any lien, security interest, or other encumbrance (a "Subordinate Instrument") covering the Property that is subordinate to the liens created by this deed of trust without the prior written consent of Lender. If granted, consent may be conditioned upon the Subordinate Instrument's containing express covenants to the effect that—

    a.    the Subordinate Instrument is unconditionally subordinate to this deed of trust;

    b.    if any action is instituted to foreclose or otherwise enforce the Subordinate Instrument, no action may be taken that would terminate any occupancy or tenancy without the prior written consent of Lender, and that consent, if granted, may be conditioned

RP-2019-91042



in any manner Lender determines;

c.      rents, if collected by or for the holder of the Subordinate Instrument, will be applied first to the payment of the Obligation then due and to expenses incurred in the ownership, operation, and maintenance of the Property in any order Lender may determine, before being applied to any indebtedness secured by the Subordinate Instrument;

d.      written notice of default under the Subordinate Instrument and written notice of the commencement of any action to foreclose or otherwise enforce the Subordinate Instrument must be given to Lender concurrently with or immediately after the occurrence of any such default or commencement; and

e.      in the event of the bankruptcy of Grantor, all amounts due on or with respect to the Obligation and this deed of trust will be payable in full before any payments on the indebtedness secured by the Subordinate Instrument.

Grantor may not cause or permit any of the following events to occur without the prior written consent of Lender: if Grantor is (a) a corporation, the termination of the corporation or the sale, pledge, encumbrance, or assignment of any shares of its stock; (b) a limited liability company, the termination of the company or the sale, pledge, encumbrance, or assignment of any of its membership interests; (c) a general partnership or joint venture, the termination of the partnership or venture or the sale, pledge, encumbrance, or assignment of any of its partnership or joint venture interests, or the withdrawal from or admission into it of any general partner or joint venturer; or (d) a limited partnership, (i) the termination of the partnership, (ii) the sale, pledge, encumbrance, or assignment of any of its general partnership interests, or the withdrawal from or admission into it of any general partner, (iii) the sale, pledge, encumbrance, or assignment of a controlling portion of its limited partnership interests, or (iv) the withdrawal from or admission into it of any controlling limited partner or partners. If granted, consent may be conditioned upon (a) the integrity, reputation, character, creditworthiness, and management ability of the person succeeding to the ownership interest in Grantor (or security interest in such ownership) being satisfactory to Lender; and (b) the execution, before such event, by the person succeeding to the interest of Grantor in the Property or ownership interest in Grantor (or security interest in such ownership) of a written modification or assumption agreement containing such terms as Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

RP-2019-91042



*E.11.* When the context requires, singular nouns and pronouns include the plural.

*E.12.* The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

*E.13.* This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

*E.14.* If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

*E.15.* Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, (e) protest, (f) notice of protest, and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code].

*E.16.* Grantor agrees to pay reasonable attomey's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney who is not an employee of Lender for enforcement.

*E.17.* If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

*E.18.* The term *Lender* includes any mortgage servicer for Lender.

E. 19.   Grantor will deposit with Lender or other holder of the Note, in addition to the principal and interest installments, a pro rata part of the estimated annual ad valorem taxes on the Property and a pro rata part of the estimated annual insurance premiums for the improvements on the Property. The initial monthly escrow deposit amount for taxes and insurance is $ [  .  ]. These tax and insurance deposits are only estimates and may be insufficient to pay total taxes and insurance premiums. Grantor must pay any deficiency within thirty days after notice from Lender or other holder of the Note. Grantor's failure to pay the deficiency will constitute a default under the Deed of Trust.

Grantor shall furnish Beneficiary casualty insurance naming Beneficiary as a mortgagee loss payee, and shall instruct insurance company and insurance agent to notify Beneficiary should insurance be cancelled for any reason.

E. 20. Lender may declare the debt secured by this deed of trust immediately payable and invoke any remedies provided in this deed of trust for default if Grantor transfers any of the Property to a person who is not a permitted transferee without Lender's consent or, if Grantor is not a natural person, if any person owning a direct or indirect interest in Grantor transfers such interest to a person that is not a "permitted transferee" without Lender's consent. "Permitted transferee" for a natural

RP-2019-91042



Page 9 of 11   Thursday, August 26, 2021   County Clerk Harris County, Texas

person means that person's spouse or children, any trust for that person's benefit or the benefit of the person's spouse or children, or any corporation, partnership, or limited liability company in which the direct and beneficial owner of all the equity interest is a natural person or that person's spouse or children or any trust for the benefit of them; and the heirs, beneficiaries, executors, administrators, or personal representatives of a natural person on the death of that person or on the incompetency or disability of that person for purposes of the protection and management of that person's assets; and for a person that is not a natural person, any other person controlling, controlled by, or under common control with that person.

E. 21. Grantor hereby grants Lender a right of first refusal with respect to Grantor's power to authorize any third party (other than Lender pursuant to its rights as set forth in this instrument) to pay ad valorem taxes on the Property and authorize a taxing entity to transfer its tax lien on the Property to that third party. Grantor's authorization to any third party (other than Lender) to pay the ad valorem taxes and receive transfer of a taxing entity's lien for ad valorem taxes shall be null and void and of no force and effect unless Lender, within ten days after receiving written notice from Grantor, fails to pay the ad valorem taxes pursuant to Lender's rights as set forth in this instrument.

E. 22. Grantor represents that this deed of trust and the Note are given for the following purposes: Grantor represents that this deed of trust and the Note are given for the following purposes: The debt evidenced by the Note is in part payment of the purchase price of the Property; the debt is secured both by this deed of trust and by a vendor's lien on the Property, which is expressly retained in a deed to Grantor of even date. This deed of trust does not waive the vendor's lien, and the two liens and the rights created by this deed of trust are cumulative. Lender may elect to foreclose under either of the liens without waiving the other or may foreclose under both

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.



Unique Mica Green



Page 10 of 11    Thursday, August 26, 2021    County Clerk Harris County, Texas

THE STATE OF TEXAS      §
  COUNTY OF HARRIS       §

    This instrument was acknowledged, before me, on this the _____ day of February, 2019, by Unique Mica Green.

Notary Public, State of Texas

TRISHA SLAY-OKEEFE
Notary Public, State of Texas
Comm. Expires 10-18-2021
Notary ID 124019897

RP-2019-91042

RP-2019-91042

# Pages 11

03/07/2019 08:59 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

DIANE TRAUTMAN

COUNTY CLERK

Fees $52.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS





I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages
are a true and correct copy of the original record filed and recorded in my office,
electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This August 26, 2021

Teneshia Hudspeth, County Clerk
Harris County, Texas

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the
Public Information Act.



**American Title Company of Houston**
2900 Woodridge Suite 210
Houston, TX, 77087
(713)681-7711
(281)715-2852

## SELLER'S STATEMENT

| Date : | 2/21/2019 | GF No. | 3080919-00621 |
|---|---|---|---|
| Sale From : | Healing Favor Investments, LLC | | |
| Sale to : | Unique Mica Green | | |
| Property: | 4630 Perry St Houston, TX 77021 | | |

LOT 6, BLOCK 8, SOUTH COURT, BOOK , PAGE , PUBLIC RECORDS OF HARRIS COUNTY, TEXAS.

### CREDITS:

| Description | Amount |
|---|---|
| Sales Price | $280,000.00 |
| **TOTAL CREDITS** | **$280,000.00** |

### CHARGES:

| Description | Amount |
|---|---|
| **Prorations and Other Debits** | |
| All Taxes 2530.4400/yr 01/01/19 to 02/21/19 | $353.57 |
| **Additional Charges** | |
| Seller Finance to Healing Favor Investments LLC | $275,000.00 |
| **Title Charges** | |
| Owner's Coverage (280000.00) (American Title Company of Houston, 45.00 %, 842.40) (Daniel Barrera & Associates, 55.00 %, 1029.60) | $1,872.00 |
| Atty Document Preparation to John Tamburello, Attorney | $350.00 |
| Atty Review to Daniel Barrera & Associates | $200.00 |
| Electronic Delivery & Handling Fee to Daniel Barrera & Associates | $9.00 |
| Endorsement (American Title Company of Houston, 45.00 %, 22.50) (Daniel Barrera & Associates, 55.00 %, 27.50) | $50.00 |
| Escrow Fee to Daniel Barrera & Associates | $400.00 |
| Lender's Coverage (275000.00) (American Title Company of Houston, 45.00 %, 45.00) (Daniel Barrera & Associates, 55.00 %, 55.00) | $100.00 |
| Tax Certificate to Processing Solutions, Inc. | $99.95 |
| **Recording and Transfer Charges** | |
| Notice to Purchaser to Daniel Barrera & Associates | $24.00 |
| Recording Fees for Deed 24.00; Recording Fees for Release; Recording Fees for Mortgage 52.00 | $76.00 |
| **Additional Settlement Fees** | |
| Delinquent Taxes to Harris County Tax Assessor | $135.71 |
| **TOTAL CHARGES** | **$278,670.23** |

### CASH TO SELLER $1,329.77

Seller understands the Closing or Escrow Agent has assembled this information representing the transaction from the best information available from other sources and cannot guarantee the accuracy thereof.

Seller understands that tax and insurance prorations and reserves were based on figures for preceding year or supplied by others, or estimated for current year, and in the event of any change for current year, all necessary adjustments must be made between Purchaser and Seller directly.The undersigned hereby authorizes American Title Company of Houston to make expenditures and disbursements as shown above and approves same for payment.The undersigned also acknowledges receipt of a copy of this statement.

Healing Favor Investments, LLC

By: Ryan W. Lane, Managing Member

Closing or Escrow Agent



PLAINTIFF'S EXHIBIT
Blumberg No. 5113
16

**American Title Company of Houston**
2900 Woodridge Suite 210
Houston, TX, 77087
(713)681-7711
(281)715-2852

## PURCHASER'S STATEMENT

| Date : | 2/21/2019 | | | GF No. | 3080919-00621 |
|---|---|---|---|---|---|
| Sale From : | Healing Favor Investments, LLC | | | | |
| Purchaser : | Unique Mica Green | | | | |
| Property: | 4630 Perry St Houston, TX 77021 | | | | |

LOT 6, BLOCK 8, SOUTH COURT, BOOK , PAGE , PUBLIC RECORDS OF HARRIS COUNTY, TEXAS.

**CHARGES:**

| Description | | | Amount |
|---|---|---|---|
| **Purchase Price** | | | |
| Contract Sales Price | | | $280,000.00 |
| **New Loan Fees** | | | |
| Daily interest charges from 2/21/2019 to 3/1/2019 @ .00/day Healing Favor Investments LLC | | | $504.47 |
| | | | |
| **TOTAL CHARGES** | | | **$280,504.47** |

**CREDITS:**

| Description | | | Amount |
|---|---|---|---|
| **Prorations and Other Credits** | | | |
| All Taxes 2530.4400/yr 01/01/19 to 02/21/19 | | | $353.57 |
| **Deposits & Credits** | | | |
| Deposit or earnest money | | | $1,000.00 |
| Deposit or earnest money | | | $400.00 |
| **New Loan (s)** | | | |
| Principal Loan Amount from Healing Favor Investments LLC | | | $275,000.00 |
| | | | |
| **TOTAL CREDITS** | | | **$276,753.57** |

### CASH FROM PURCHASER

**$3,750.90**

Purchaser understands the Closing or Escrow Agent has assembled this information representing the transaction from the best information available from other sources and cannot guarantee the accuracy thereof.

Purchaser understands that tax and insurance prorations and reserves were based on figures for preceding year or supplied by others, or estimated for current year, and in the event of any change for current year, all necessary adjustments must be made between Purchaser and Seller directly. The undersigned hereby authorizes American Title Company of Houston to make expenditures and disbursements as shown above and approves same for payment.The undersigned also acknowledges receipt of a copy of this statement.

_____
Unique Mica Green

_____
Closing or Escrow Agent

4/28/2020 10:07 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 42593975
By: MARCELLA WILES
Filed: 4/28/2020 10:07 AM



5809 Acacia Circle
El Paso, Texas 79912
Phone: 915.201.4337
Fax: 915.845.7800
Email: info@texstarloans.com
Web: www.texstarescrow.com

## TERMS AND CONDITIONS GOVERNING ESCROW

By signing below, Lender and Borrower acknowledge that they have read the following terms and conditions governing escrow, have read and received the Loan Servicing Instructions, Fee Schedule, Late Notice Policy and Delinquency Service Agreement, Privacy Notice, Disclosure Statement, General Information About Your Account, and if applicable, Lender ACH Authorization, Borrower ACH Authorization and voided check (collectively, the "Escrow Documents"), whose terms are incorporated herein by reference, and accept and agree to be legally bound by the terms and conditions governing escrow herein contained, together with the terms, conditions and selections made by them in the Escrow Documents, and agree to designate Texstar Escrow as their escrow agent, to act in accordance with the Escrow Documents and the following terms and conditions governing escrow.

1.  Except as provided herein, Texstar Escrow shall have no other duties and/or responsibilities unto Lender or Borrower. Except for changes in disbursement as authorized in writing by Lender, Lender and Borrower agree that the following terms and conditions may not be modified or altered, and shall govern in all respects.

2.  Lender and Borrower hereby acknowledge and agree that Texstar Escrow shall not be held liable or responsible, in any way and in any event, for any documents, instruments, correspondence or papers, legal or otherwise, deposited with Texstar Escrow by Lender, Borrower, or any third party on their behalf, or for the content of anything contained in any documents, instruments, correspondence or papers, legal or otherwise, deposited with Texstar Escrow by Lender, Borrower, or any third party on their behalf, including, but not limited to, the accuracy, correctness, completeness, sufficiency, form, execution, authority, identity, description, compliance with applicable law and/or validity in connection therewith. Lender and Borrower hereby agree and acknowledge that Texstar Escrow shall in no way interpret or construe, legally or otherwise, the content of any documents, instruments, correspondence or papers, legal or otherwise, deposited with Texstar Escrow by Lender, Borrower, or any third party on their behalf. Lender and Borrower agree and acknowledge that they will seek their own independent legal representation in connection therewith.

3.  **LENDER AND BORROWER HEREBY INDEPENDENTLY, JOINTLY AND SEVERALLY PROMISE AND AGREE TO INDEMNIFY, DEFEND AND HOLD HARMLESS TEXSTAR ESCROW FROM AND AGAINST ALL LIABILITIES, DAMAGES, JUDGMENTS, ATTORNEY'S FEES, COSTS, EXPENSES AND OBLIGATIONS OF ANY KIND OR NATURE WHICH TEXSTAR ESCROW MAY INCUR OR SUFFER, DIRECTLY OR INDIRECTLY, IN CONNECTION WITH OR ARISING OUT OF THE ESCROW SERVICES BEING FURNISHED TO LENDER AND BORROWER, INCLUDING, BUT NOT LIMITED TO, ANY NEGLIGENT ACT OR OMISSION OF TEXSTAR ESCROW.** Texstar Escrow is hereby given a lien and a contractual right to set off upon and against all rights, titles and interest of Lender and Borrower in all escrowed money, property, paper, instruments, documents, and all monies arising therefrom, to protect Texstar Escrow's rights to indemnification, defense and/or reimbursement, as set out herein. The foregoing right to set off may be exercised at Texstar Escrow's sole discretion without notice to Lender, Borrower or any third party in connection herewith.

4.  Should any dispute, conflict, controversy or conflicting demand arise in connection with the services being performed by Texstar Escrow, Lender and Borrower hereby expressly grant their consent and agree that Texstar Escrow shall have the absolute right in its sole discretion to do any of the following in connection therewith: (i) withhold all money, property, paper, instruments, documents, and all monies arising therefrom, deposited with Texstar Escrow and cease to provide any further services until a mutually satisfactory agreement has been made between Lender and Borrower, which shall be evidence in writing and provided to Texstar Escrow; or (ii) file suit in interpleader to cause Lender and Borrower to interplead and litigate in court their respective claims and legal rights as between each other. **IN SUCH EVENT, OR IN THE EVENT THAT A PARTY FILES AN ACTION AGAINST TEXSTAR ESCROW, TEXSTAR ESCROW SHALL BE FULLY DISCHARGED AND RELEASED FROM ALL ESCROW OBLIGATIONS IMPOSED UPON IT IN CONNECTION WITH ANY SUCH PARTY OR PARTIES, AND SUCH PARTY OR PARTIES SHALL INDEPENDENTLY, JOINTLY AND SEVERALLY DEFEND TEXSTAR ESCROW, INDEMNIFY AND PAY ON BEHALF OF TEXSTAR ESCROW ALL COSTS, EXPENSES AND REASONABLE ATTORNEY'S**

1

Exhibit H

FEES WHICH IT MAY EXPEND OR INCUR IN SUCH ACTION, AND HOLD TEXSTAR ESCROW HARMLESS IN CONNECTION THEREWITH.

5.   AS MATERIAL CONSIDERATION FOR TEXSTAR ESCROW'S ACCEPTANCE OF THE ESCROW WITH LENDER AND BORROWER, LENDER AND BORROWER HEREBY AGREE THAT TEXSTAR ESCROW SHALL BE HELD HARMLESS AND SHALL NOT BE LIABLE FOR ANY  ACTS OR OMISSIONS, INCLUDING, BUT NOT LIMITED TO, ANY NEGLIGENT ACT OR OMISSION OF TEXSTAR ESCROW, DONE ON BEHALF OF LENDER AND BORROWER, AND TEXSTAR ESCROW SHALL BE HELD HARMLESS AND NOT BE LIABLE FOR ANY DAMAGES, CLAIMS, DEMANDS, LOSSES OR COSTS ALLEGED, CLAIMED, INCURRED OR SUFFERED BY LENDER AND BORROWER.

6.   Lender and Borrower hereby acknowledge and agree that Texstar Escrow shall have the right to revise its fees as delineated on its Fee Schedule from time to time without notice. Lender and Borrower hereby agree that charges and fees may be deducted from any installment when not paid, reducing amounts applied to principal and interest or escrow balance. Texstar Escrow will abide by the instructions set forth in the Escrow Documents (as defined above), provided, however, that Lender and Borrower shall be independently, jointly and severally liable unto Texstar Escrow for all unpaid late notice and delinquent service charges and fees, together with all other uncollected charges and fees, including, without limitation, miscellaneous fees, attorney's fees or administrative fees.

7.   Should any writ or levy be served upon Texstar Escrow to garnish or levy Lender's or Borrower's money, property, paper, instruments, documents, and all monies arising therefrom, Texstar Escrow shall be entitled to recover all its reasonable fees incurred in connection with such request out of monies due the party whose interest in the escrow has been garnished, levied upon or otherwise attached.

8.   In consideration of Texstar Escrow remitting payments without waiting for checks or drafts to be honored by the institution upon which they are drawn, Lender and Borrower agree to hold Texstar Escrow harmless from any loss sustained by reason of the dishonoring of said checks or drafts. In the event any check or draft is dishonored by the institution upon which it is drawn, and Texstar Escrow has remitted such payment unto Lender, Lender hereby agrees to return such payment to Texstar Escrow within five (5) days from the date requested by Texstar Escrow.

9.   Texstar Escrow reserves the right to assign its duties as escrow agent, and may resign from its duties as escrow agent for any reason by providing Lender and Borrower with sixty (60) days prior written notice.

10.  The terms and conditions contained herein shall be legally binding upon and inure to Texstar Escrow, Lender, Borrower and their respective heirs, legal representatives, successors and assigns.  The terms and conditions herein contained shall be governed by the laws of the State of Texas in all respects, including matters of construction, validity and performance. Any term or condition herein contained, or part thereof, held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of the terms and conditions herein contained, and the effect thereof shall be confined to the term or condition, or part thereof, so held to be invalid or unforceable, unless the term or provision, or part thereof, can be reformed so as to carry out the intent of the parties hereto.

EFFECTIVE DATE:_____        **TEXSTAR ESCROW:**

By:    /s/ Andrew L. Ainsa
Name:  Andrew L. Ainsa
Its:   President

**LENDER:**

By:    _____
Name:  Healing Favor Investments, LLC
Its:   Managing Member & President

**BORROWER:**

By:    _____
Name:  Unique Mica Green
Its:   _____

2



**ESCROW** ★

5809 Acacia Circle
El Paso, Texas 79912
Phone: 915.201.4337
Fax: 915.845.7800
Email: info@texstarloans.com
Web: www.texstarescrow.com

### Loan Servicing Instructions

Thank you for choosing Texstar Escrow!  Please provide the following information and documentation, as applicable, to facilitate Texstar Escrow in servicing your loan and escrow needs.  We're glad to be of assistance in this regard!

[✓]     Copy of Loan Documents

[✓]     Copy of Deed of Trust, Warranty Deed, Transfer of Lien, Assumption, Other Liens

[✓]     Copy of Closing Statements (Buyer and Seller)

[✓]     Terms and Conditions Governing Escrow (Signed by Lender and Borrower)

[✓]     Late Notice Policy and Delinquency Service Agreement (Initialed by Lender)

[✓]     Check for Setup Fee ($90 With Escrows or $75 Without Escrows)

[✓]     W-9 Form (Signed by Lender and Borrower)

[ ]     Check for Escrow funds, if applicable

[✓]     Copy of Tax Certificate

[✓]     Copy of Insurance Policy

Lender: Healing Favor INVESTMENTS, LLC
Lender's Address: 5868 WESTHEIMER Ro, #363, HOUSTON, TX 77057
Lender's Mailing Address (if different): _____
Lender's Home Phone: _____ Lender's Cell Phone: (281) 777-7175
Lender's E-Mail: RyANLANE @ ONLYAIP.COM
Lender's SSN or EIN: 83-3810512
*Preferred Contact Method: Email

Borrower: Unique Mica Green
Borrower's Address: 1116 Elberta ST, HOUSTON, TX 77021
Borrower's Mailing Address (if different): _____
Borrower's Home Phone: _____ Borrower's Cell Phone: (281) 408-3103
Borrower's E-Mail: GreenMicA18 GreenMica.1980 @ AOL.COM
Borrower's SSN or EIN: 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
*Preferred Contact Method: _____

1



5809 Acacia Circle
El Paso, Texas 79912
Phone: 915.201.4337
Fax: 915.845.7800
Email: info@texstarloans.com
Web: www.texstarescrow.com

## Late Notice Policy and Delinquency Service Agreement

By signing the Terms and Conditions Governing Escrow, Lender and Borrower hereby acknowledge that they have read the following terms, and accept and agree to be legally bound by the following terms and selections. By initialing below, Lender makes the following selections regarding delinquency service.

1. Texstar Escrow shall monitor and service Lender's loan and escrow account(s) in accordance with the Terms and Conditions Governing Escrow. In the event that any payment in connection with any loan or escrow is past due, Texstar Escrow shall automatically furnish Borrower with a late notice. The late notice will remind Borrower that a payment is past due and delinquent, and will request immediate payment of any past due and delinquent amounts, together with any contractual late fees that may be owed in connection therewith, notwithstanding any applicable grace period. A late notice fee will be applied for each late notice furnished as set out in the Fee Schedule.

2. _____ (Lender Initial if Applicable) Lender hereby instructs Texstar Escrow to contact Lender in the event that any payment in connection with any loan or escrow is past due, and to await Lender's further instructions prior to proceeding with any further action. Notwithstanding the foregoing, Lender understands and agrees that a late notice(s) will be automatically sent to Borrower as provided in paragraph 1 above.

3. _____ (Lender Initial if Applicable) Lender hereby instructs Texstar Escrow to automatically send a Notice of Default/Notice of Intention to Accelerate with a twenty (20) day cure period to Borrower in the event that any payment in connection with any loan or escrow is past due. Lender will be provided with a copy of such demand correspondence when sent. A fee will be applied for such demand correspondence as set out in the Fee Schedule.

4. _____ (Lender Initial if Applicable) Lender hereby instructs Texstar Escrow to automatically send a Notice of Acceleration to Borrower, and to accelerate any Note that is past due and delinquent following any applicable cure period provided for in prior demand correspondence. Lender will be provided with a copy of such demand correspondence when sent. A fee will be applied for this demand correspondence as set out in the Fee Schedule.

5. _____ (Lender Initial if Applicable) Lender hereby instructs Texstar Escrow to automatically prepare, post and furnish all requisite notices required by law, and to have a foreclosure sale conducted with respect to real property securing any Note that is past due and delinquent following the provision of all applicable notices required by law. Lender will be provided with copies of all applicable notices in this regard, and will be informed of the date and time of the foreclosure sale in advance of the same. Certain fees will be applied for the foregoing as set out in the Fee Schedule.

6. _____ (Lender Initial if Applicable) Except as provided in paragraph 1 above, Lender prefers to utilize its own attorney to prepare and forward any applicable demand correspondence, and to have its own attorney conduct any applicable foreclosure sale that is required. The name and contact information for Lender's attorney is as follows:_____
_____

**Fund Distribution Instructions for Lender:**

_____ Funds mailed to Lender via check
\_\_\_X\_\_\_ Funds direct deposited into Lender's bank account (please complete attached Lender ACH Authorization)
_____ Funds distributed to Third Party (please provide Third Party information below if applicable)

Third Party Disbursement: $_____ less any applicable fees
Name and Address: Healing Favor Investments, LLC _____
Bank/Facility: ▓▓▓▓▓▓▓▓_____
Account or Loan No. ▓▓▓▓▓▓▓▓▓▓▓▓_____
Bank/Facility Address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓_____
Bank Routing No. ▓▓▓▓▓▓▓▓_____

Special Instructions for Fund Distribution:

_____
_____

Who pays the account setup fee?    \_\_X\_\_ Lender _____ Borrower _____ Split

Who pays the monthly service fee? _____ Lender _____ Borrower \_\_X\_ Split

Who pays miscellaneous fees?        _____ Lender _____ Borrower \_\_X\_ Split

Shall we accept partial payments
on Lender's behalf?*               _____ Yes   \_\_X\_\_ No

Special Instructions/Miscellaneous:

_____
_____
_____
_____

\* Unless otherwise instructed, Texstar Escrow will not accept partial payments on Lender's behalf. Partial payments accepted per Lender's instruction will be held in a reserve account until the outstanding balance is paid, including all late charges, late fees and miscellaneous fees.

**THANK YOU!**

2



**ESCROW** ★

5809 Acacia Circle
El Paso, Texas 79912
Phone: 915.201.4337
Fax: 915.845.7800
Email: info@texstarloans.com
Web: www.texstarescrow.com

## Lender ACH Authorization

By providing the following information and signing below, Lender authorizes Texstar Escrow to direct deposit your income into the following described account.

Bank Name: _____

Name on Account/Account Title: HEALING FAVOR INVESTMENTS, LLC _____

Account Number: _____ (Checking __X__) (Saving _____)

Bank Routing Number: _____

Bank Representative's Name: _____ Telephone _____

Lender hereby agrees to notify Texstar Escrow at least ten (10) days prior to the "deposit date" if there are any changes to the information provided above. Lender will be requested to complete a new ACH Authorization within such time in the event of any such changes.

To facilitate your direct deposit, please include a <u>voided check</u> with regard to the account listed above.

Lender's signature below is required to authorize the direct deposit into the account listed above. Should Lender have any questions, or need additional information regarding direct deposit, please feel free to contact Texstar Escrow. Thank you!

_____          _March 7, 2019_____
**Lender's Signature**                          **Date**



## TEXAS DEPARTMENT OF SAVINGS & MORTGAGE LENDING

**DISCLOSURE STATEMENT**

Pursuant to Texas Finance Code Chapter 158.101, a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan:

**"COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 North Lamar, Suite 201, Austin, Texas 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT (877) 276-5550"**



5809 Acacia Circle
El Paso, Texas 79912
Phone: 915.201.4337
Fax: 915.845.7800
Email: info@texstarloans.com
Web: www.texstarescrow.com

### PRIVACY NOTICE
*(Borrower's Copy)*

*Texstar Escrow collects certain nonpublic personal information about our clients that is necessary to provide them with escrow services. Federal law requires us to tell you how we collect, share, and protect your nonpublic personal information. Please read this Privacy Notice carefully to understand what we do. If you have any questions or if you would like additional information, please feel free to contact us at the contact information provided above. Thank you!*

*The categories of nonpublic personal information Texstar Escrow collects depends on the escrow services being provided, but can include: (i) names, addresses, phone numbers, emails, and Social Security numbers; (ii) income, insurance and property information submitted on our Loan Servicing Instructions or included in any documentation provided to us; (iii) nonpublic personal information concerning your account information, account balances, payment history and financial transactions with us; and (iv) nonpublic personal information reported to us from a consumer reporting agency, such as credit history and credit scores.*

*Texstar Escrow does not disclose any nonpublic personal information it collects from its present or former clients to any affiliated or nonaffiliated third parties unless we receive your written authorization to do so, or as required by applicable law. Texstar Escrow treats all of its clients' personal information as confidential.*

*Texstar Escrow restricts access to nonpublic personal information about our clients, and only permits employees and authorized agents of Texstar Escrow to access the same for purposes of providing escrow services. Employees and authorized agents of Texstar Escrow are required to keep all such nonpublic personal information confidential. Texstar Escrow maintains administrative, technical and physical safeguards to protect our clients' nonpublic personal information.*

*By signing the Terms and Conditions Governing Escrow, you acknowledge that you have received a written copy of this Privacy Notice prior to the establishment of our business relationship, and further acknowledge that this Privacy Notice has been posted online at www.texstarescrow.com in a clear and conspicuous manner, that you use our website to access information about your escrow services, and agree to receive annual notices of this Privacy Notice at our website, which you will review from time to time, but in no event, less than annually, for as long as our business relationship lasts. You may also request a copy of this Privacy Notice in writing from us at any time by contacting us at the contact information provided above.*



5809 Acacia Circle
El Paso, Texas 79912
Phone: 915.201.4337
Fax: 915.845.7800
Email: info@texstarloans.com
Web: www.texstarescrow.com

## *PRIVACY NOTICE*
*(Lender's Copy)*

*Texstar Escrow collects certain nonpublic personal information about our clients that is necessary to provide them with escrow services. Federal law requires us to tell you how we collect, share, and protect your nonpublic personal information. Please read this Privacy Notice carefully to understand what we do. If you have any questions or if you would like additional information, please feel free to contact us at the contact information provided above. Thank you!*

*The categories of nonpublic personal information Texstar Escrow collects depends on the escrow services being provided, but can include: (i) names, addresses, phone numbers, emails, and Social Security numbers; (ii) income, insurance and property information submitted on our Loan Servicing Instructions or included in any documentation provided to us; (iii) nonpublic personal information concerning your account information, account balances, payment history and financial transactions with us; and (iv) nonpublic personal information reported to us from a consumer reporting agency, such as credit history and credit scores.*

*Texstar Escrow does not disclose any nonpublic personal information it collects from its present or former clients to any affiliated or nonaffiliated third parties unless we receive your written authorization to do so, or as required by applicable law. Texstar Escrow treats all of its clients' personal information as confidential.*

*Texstar Escrow restricts access to nonpublic personal information about our clients, and only permits employees and authorized agents of Texstar Escrow to access the same for purposes of providing escrow services. Employees and authorized agents of Texstar Escrow are required to keep all such nonpublic personal information confidential. Texstar Escrow maintains administrative, technical and physical safeguards to protect our clients' nonpublic personal information.*

*By signing the Terms and Conditions Governing Escrow, you acknowledge that you have received a written copy of this Privacy Notice prior to the establishment of our business relationship, and further acknowledge that this Privacy Notice has been posted online at www.texstarescrow.com in a clear and conspicuous manner, that you use our website to access information about your escrow services, and agree to receive annual notices of this Privacy Notice at our website, which you will review from time to time, but in no event, less than annually, for as long as our business relationship lasts. You may also request a copy of this Privacy Notice in writing from us at any time by contacting us at the contact information provided above.*



**ESCROW**

5809 Acacia Circle
El Paso, Texas 79912
Phone: 915.201.4337
Fax: 915.845.7800
Email: info@texstarloans.com
Web: www.texstarescrow.com

## GENERAL INFORMATION ABOUT YOUR ACCOUNT

**GENERAL INFORMATION:** Loan or escrow payments made shall be first applied to the current total amount due. Funds in excess of the current total amount due shall be applied toward the principal balance unless Lender informs us in writing that Lender desires them to be otherwise applied. Any and all loan or escrow payments received in our office after 3:00 pm shall be posted as of the next business day. Unless otherwise instructed from Lender, we do not accept partial payments.

**CONTACT INFORMATION:** Please feel free to contact us with any questions or concerns at the contact information listed above. You may speak with a Texstar Escrow customer service representative at any time during our regular hours of operation. Se habla español!

**Hours of Operation**

Monday - Friday   8:30 a.m. - 5:30 p.m.

**WRITTEN COMPLAINTS:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE TEXAS DEPARTMENT OF SAVINGS & MORTGAGE LENDING, 2601 N. LAMAR, SUITE 201, AUSTIN, TX 78705, A TOLL FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.

**INSURANCE INFORMATION:** Please review your loan documents and/or insurance policies for requirements and terms. All insurance related documents should be sent to Texstar Escrow at our office address: 5809 Acacia Circle, El Paso, TX 79912.

**BANKRUPTCY:** If a Borrower has filed for bankruptcy protection, voluntarily or involuntarily, please forward your initial case notification and all subsequent correspondence to Texstar Escrow at our office address: 5809 Acacia Circle, El Paso, TX 79912.

**ATTEMPT TO COLLECT A DEBT:** ANY COMMUNICATION BY TEXSTAR ESCROW IS AN ATTEMPT BY TEXSTAR ESCROW TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED BY TEXSTAR ESCROW WILL BE USED FOR THAT PURPOSE.

**USE OF YOUR CREDIT REPORT:** Borrower hereby agrees that Texstar Escrow may request and utilize Borrower's credit report(s) at any time during the servicing of your loan or escrow account, to review, update, renew, or extend credit, or take collection action, or for other legitimate business purposes associated with your Loan and/or Escrow account.

**LATE CHARGES:** A Borrower can avoid any late notice charges/fees, or other late charges, by making any loan or escrow payments on or before the date when due for the total amount due and owing. Please refer to your Loan Documents, the Late Notice Policy and Delinquency Service Agreement and our Fee Schedule for certain terms and conditions regarding the assessment of late notice charges/fees, or other late charges, on your loan oe Escrow account.

To help us in receiving your payments on time, please use ACH or coupons provided to you by Texstar Escrow. Please send payments to our office address as set forth on the coupon, and please allow 7-10 days for U.S. mail delivery. There may be a delay in posting the payments if the payments are not received at our office address.

**MISCELLANEOUS FEES:** Miscellaneous fees are set out in the Fee Schedule. Miscellaneous fees may apply to and include, but are not limited to, costs of servicing, collection and attorney's fees. Please refer to your loan and escrow documents for details and repayment obligations.

**RETURNED/NSF CHECKS:** In the event that any payments are dishonored by your financial institution, Texstar Escrow reserves the right to require that all future payments be made by certified check or money order only. TEXSTAR ESCROW DOES NOT ACCEPT CASH PAYMENTS AT ANY TIME.

**NOTICE TO CONSUMER ABOUT NEGATIVE CREDIT REPORTING:** Federal law requires us to advise you that we may report information about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit report record may be submitted to a credit reporting agency if you fail to fulfill the terms on your credit obligation.

**CHECK PROCESSING:** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account according to the terms of your check or to process the payment as a check transaction. When we use your information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution.



**ESCROW**

5809 Acacia Circle
El Paso, Texas 79912
Phone: 915.201.4337
Fax: 915.845.7800
Email: info@texstarloans.com
Web: www.texstarescrow.com

## Fee Schedule

| | | |
|---|---|---|
| Account Set Up Fee Without Escrows | $ | 75.00 |
| Account Set Up Fee With Escrows | $ | 90.00 |
| Monthly Servicing Fee | $ | 15.00 |
| Payment History | $ | 10.00 |
| Photocopies Per Page | $ | 1.00 |
| Faxes Per Page | $ | 1.00 |
| Duplicate Coupon Book | $ | 15.00 |
| Amortization Schedule | $ | 15.00 |
| Returned Check or Draft Rejection | $ | 35.00 |
| Stop Payment Order | $ | 35.00 |
| Reissue Check | $ | 35.00 |
| Verification of Mortgage | $ | 30.00 |
| Payoff Statement | $ | 30.00 |
| Reconveyance/Payoff | $ | 150.00 |
| Closeout/Termination Fee | $ | 75.00 |
| Late Notice | $ | 25.00 |
| Notice of Default/Notice of Intention to Accelerate | $ | 250.00 |
| Notice of Acceleration | $ | 250.00 |
| Reinstatement Fee | $ | 150.00 |
| Appointment of Substitute Trustee | $ | 50.00 |
| Notice of Trustee/Substitute Trustee's Sale | $ | 150.00 |
| Conduct Foreclosure Sale | $ | 1,000.00 |
| Trustee's Deed/Substitute Trustee's Deed | $ | 150.00 |
| Deed in Lieu of Foreclosure Document Package | $ | 550.00 |
| Renewal and Extension of Note | $ | 500.00 |
| Modification of Note/Modification, Renewal and Extension of Note | $ | 500.00 |
| Seller Financing Loan Documents | $ | 650.00 |
| Loan Document Package | $ | 650.00 |
| Assumption Document Package | $ | 500.00 |
| General or Special Warranty Deed (Excluding Exceptions or As Is Language) | $ | 100.00 |
| General or Special Warranty Deed (Including Exceptions and As Is Language) | $ | 135.00 |
| General or Special Warranty Deed with Vendor's Lien (Excluding Exceptions or As Is Language) | $ | 125.00 |
| General or Special Warranty Deed with Vendor's Lien (Including Exceptions or As Is Language) | $ | 160.00 |
| Release of Lien | $ | 150.00 |
| Affidavits of Heirship | $ | 200.00 |
| Rush or Expedite Fees for Immediate Processing | $ | 150.00 |
| Time Charge Per Hour | $ | 75.00 |

(For Time Incurred Outside of Standard Account Set Up, Collection and Distribution)

**\*\*\*All fees are subject to change without notice, and are collected in advance of services performed. Any applicable postage, including certified mail, overnight delivery fees, recording and/or runner fees will be added and are not included above.  Fees may be deducted from any installment when not paid, reducing amounts applied to principal and interest or escrow balance.\*\*\***



ESCROW

5809 Acacia Circle
El Paso, Texas 79912
Phone: 915.201.4337
Fax: 915.845.7800
Email: info@texstarloans.com
Web: www.texstarescrow.com

## Borrower ACH Authorization

By providing the following information and signing below, Borrower authorizes Texstar Escrow to draft your monthly payments from the following described account.

Name: _____ Loan No.: _____

Address: _____

Phone Number /Email: _____

Bank Name: _____

Name on Account/Account Title: _____

Account Number: _____ (Checking _____) (Saving _____)

Bank Routing Number: _____

**DRAFT ACCOUNT FROM THE FOLLOWING DATE:** _____

**FREQUENCY OF DRAFTING: (_____) One Time Draft (_____) Monthly Draft**

To facilitate your direct deposit, please include a <u>voided check</u> with regard to the account listed above.

Borrower agrees to notify Texstar Escrow at least ten (10) days prior to the "payment date" if there are any changes to the information provided above. Borrower will be requested to complete a new ACH Authorization within such time in the event of any such changes.

Borrower hereby acknowledges and agrees that withdrawals will be initiated for the due date specified in the loan documents corresponding to this Authorization, and if such due date lands on either a Saturday or a Sunday, that particular withdrawal will be initiated on the following Monday. Borrower additionally acknowledges and agrees that interest costs and/or late fees may be applied if any such withdrawal is past due. Borrower agrees to be responsible for any interest costs and/or late fees that may be incurred in this regard.

Borrower's signature below is required to authorize the electronic payment process from the account listed above. Should Borrower have any questions, or need additional information regarding this Authorization, please feel free to contact Texstar Escrow. Thank you!

_____          _____
**Borrower's Signature**                                              **Date**

Lender

| Form **W-9**<br>(Rev. December 2014)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | **Give Form to the**<br>**requester. Do not**<br>**send to the IRS.** |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Healing Favor Investments, LLC

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only one of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☑ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ **S**

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

5868 Westhiemer Rd #363

**6** City, state, and ZIP code

Houston, TX 77057

**7** List account number(s) here (optional)

Requester's name and address (optional)

**Print or type** — **See Specific Instructions on page 2.**

### Part I — Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**

☐☐☐ – ☐☐ – ☐☐☐☐

or

**Employer identification number**

83 – 3 8 1 0 5 1 2

### Part II — Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here** — Signature of U.S. person ▶ *(signature)*   Date ▶ March 07, 2019

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)

- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X   Form **W-9** (Rev. 12-2014)

Borrower(s)

| Form **W-9**<br>(Rev. December 2014)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | **Give Form to the<br>requester. Do not<br>send to the IRS.** |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Unique Mica Greer

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

[x] Individual/sole proprietor or single-member LLC  [ ] C Corporation  [ ] S Corporation  [ ] Partnership  [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

[ ] Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

1116 Elberta St,

**6** City, state, and ZIP code

Houston, TX 77021

Requester's name and address (optional)

**7** List account number(s) here (optional)

**Print or type**

**See Specific Instructions on page 2.**

---

**Part I**    **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your *employer identification number* (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

▉▉▉ - ▉▉ - ▉260

**or**

Employer identification number

---

**Part II**    **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign<br>Here** | Signature of U.S. person ▶ *[signature]* | Date ▶ 3/5/2019

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

### Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)

- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X                        Form **W-9** (Rev. 12-2014)

## PROMISSORY NOTE

Effective Date:       February 21, 2019

Borrower:    UNIQUE MICA GREEN

Borrower's Mailing Address: 1116 Elberta St., Houston, TX 77021

Lender:    HEALING FAVOR INVESTMENTS, LLC,
        a Texas limited liability company

Place for Payment: 5868 Westheimer Rd., Suite ⟨⟨⟨ Houston, TX 77057, or such other place as Lender may designate from time to time.

Principal Amount:       Two Hundred Seventy Five Thousand and 00/100 Dollars
                ($275,000.00).

Annual Interest Rate: Eight Percent (8.00%)

Maturity Date:  January 21, 2049

Annual Interest Rate on Matured, Unpaid Amounts:  Maximum allowed by law

Terms of Payment (principal and interest): The Principal amount and interest are due and payable in 360 monthly installments, in the amount of Two Thousand Seventeen and 00/100 Dollars ($2,017.85) each, beginning March 21, 2019 and continuing monthly on the same day of the month until February 21, 2049, at which time the entire unpaid balance of principal and accrued unpaid interest will be due and payable.

Payments will be applied first to accrued interest and the remainder to reduction of the Principal Amount.

Borrower may prepay this note in any amount at any time before the Maturity Date without penalty or premium.

If any installment becomes overdue for more than ten (10) days, at Lender's option, a late payment charge of Five Percent (5%) of the installment amount may be charged in order to defray the expense of handling the delinquent payment.

Security for Payment: This note is secured by a vendor's lien and superior title retained in a deed from Lender to Borrower of even date and by a deed of trust of even date from Borrower to John D. Tamburello, Trustee, both of which cover the following real property:

LANE 5

Lot Six (6), in Block Eight (8), of SOUTH COURT AMENDING PLAT NO. 1, a subdivision in Harris County, Texas, according to the map or plat thereof recorded under Film Code No. 681616 of the Map Records of Harris County, Texas

Other Security for Payment:   None.

Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

If Borrower defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note, Lender may declare the unpaid principal balance, earned interest, and any other amounts owed on the note immediately due. Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

Borrower also promises to pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note. These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the debt evidenced by the note and will be secured by any security for payment.

Interest on the debt evidenced by this note will not exceed the maximum rate or amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the Principal Amount or, if the Principal Amount has been paid, refunded. On any acceleration or required or permitted prepayment, any excess interest will be canceled automatically as of the acceleration or prepayment or, if the excess interest has already been paid, credited on the Principal Amount or, if the Principal Amount has been paid, refunded. This provision overrides any conflicting provisions in this note and all other instruments concerning the debt.

Each Borrower is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

Unique Mica Green

LANE 6

RP-2019-104731
03/15/2019   RP2   $20.00

# GENERAL WARRANTY DEED WITH NO LIEN

**Effective Date:**      **March 5th, 2019**

**Grantor:**      **HEALING FAVOR INVESTMENTS, LLC,**
**Ryan William Lane: President & Managing Member**
**a Texas limited liability company**

**Grantor's Mailing Address: 5868 Westheimer Rd. Suite 363, Houston, TX 77057**

**Grantee:**      **UNIQUE MICA GREEN**

**Grantee's Mailing Address: 1116 Elberta St. Houston, TX. 77051**

**Consideration:** Ten Dollars ($10.00) cash and other good and valuable consideration, and one (1) principal payment executed by **GRANTEE** and payable to the order of **GRANTOR**, the receipt and sufficiency of which are hereby acknowledged, paid by **UNIQUE M. GREEN**, (the "**Grantee**"), whose address **1116 Elberta St. Houston, TX. 77051** HAS **GRANTED, BARGAINED, SOLD and CONVEYED**, and by these presents **DOES GRANT, BARGAIN, SELL** and **CONVEY**, subject to the matters set forth herein, unto Grantee's the following described real property (the "Lot") situated in Harris County, Texas, to-wit:

**Property (including any improvements):**

**Lot Six (6), in Block Eight (8), of SOUTH COURT AMENDING PLAT NO. 1, a subdivision in Harris County, Texas, according to the map or plat thereof recorded under Film Code No. 681616 of the Map Records of Harris County, Texas**

**More commonly known as: PROPERTY ADDRESS: 4630 Perry St Houston, TX. 77021**

   **TO HAVE AND TO HOLD** the above described premises, together, and Grantee's successors and assigns forever, and Grantor does hereby bind Grantor, and Grantor's successors and assigns, to **WARRANT** and **FOREVER DEFEND**, all and singular the Lot unto Grantee and Grantee's successors and assigns, against every person lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise, and subject to the matters set forth herein.

   **Reservations from Conveyance: None**

**The** reservations, covenants, conditions, and restrictions set forth in this Deed shall be covenants running with the land for the benefit of Grantor and shall be binding on Grantee and Grantee's successors, heirs, executors, administrators, other legal representatives, and assigns.

When the context requires, singular nouns and pronouns include all plural.

EXECUTED on the date of the acknowledgement hereinafter set forth, but made effective as of the 5th day of MARCH 2019



PLAINTIFF'S EXHIBIT 5

Respectfully submitted,

By: _____

Ryan William Lane
3866 Palm St
Houston, Texas 77004
Tel. (281)777-7175
Email: ryan@ryanwlane.com
NO FAX NUMBER:

ACKNOWLEDGEMENT

THE STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on this 5th, day of March 2019. By Ryan William Lane.

_____
Notary Public, State of Texas

CHARLES ERVIN HART JR
Notary Public, State of Texas
Comm. Expires 12-09-2020
Notary ID 13092739-0

After Recording Return to:   ✓✓
Unique M. Green
1116 Elberta St
Houston, TX 77051

# FILED FOR RECORD

2:54:29 PM

Friday, March 15, 2019

*Diane Trautman*

COUNTY CLERK, HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

THE STATE OF TEXAS
COUNTY OF HARRIS

I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED; in the Official Public Records of Real Property of Harris County Texas

Friday, March 15, 2019

*Diane Trautman*

COUNTY CLERK
HARRIS COUNTY, TEXAS

## Telford, Randal (TRGC)

**To:**          DR UNIQUE GREEN PHD
**Subject:**     RE: Perry Street Building

-----Original Message-----
From: Ryan W. Lane, MBA <RyanLane@ONLYAIP.com>
To: greenmica1980 <greenmica1980@aol.com>
Sent: Thursday, Jan 10, 2019 3:53 pm
Subject: FW: Perry Street Building

Good Afternoon,

   I have considered your offer.  I do want to work a deal with you and proceed here are the options I have prepared and have approval to proceed with from my business partners.

Option #1

1.   30 year mortgage carried by Healing Favor Inc.
2.   Sale price of $280,000.00 w/ Cash down payment of $5,000.00

Option #2

1.   One lump sum payment of $70,000.00, if payment is made after the closing date of your purchase of property through owner finance mortgage then payment will satisfy and release lien.

Kind Regards,

Ryan W. Lane, MBA
Healing Favor Investments, LLC
5868 Westheimer Rd. Suite 363
Houston, TX. 77057

REPORTER'S RECORD

TRIAL COURT CAUSE NO. 2018-79647

```
                                    )
RYAN W. LANE                        )  IN THE DISTRICT COURT
        PLAINTIFF                   )
VS.                                 )  OF HARRIS COUNTY, TEXAS
                                    )
HEALING FAVOR INVESTMENTS,          )
LLC                                 )
      DEFENDANT AND                 )
      THIRD-PARTY PLAINTIFF         )
                                    )
VS.                                 )
                                    )
UNIQUE MICA GREEN                   )
      THIRD-PARTY DEFENDANT         )  333RD JUDICIAL DISTRICT
```

-------------------------------

TEMPORARY INJUNCTION

-------------------------------

On the 29th day of June, 2020, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Daryl L. Moore, Judge presiding, held in Houston, Harris County, Texas; Proceedings reported by machine shorthand.

A P P E A R A N C E S


Mr. Gus E. Pappas
State Bar No. 15454850
Dabney Pappas
1776 Yorktown, Suite 425
Houston, Texas 77056
Tel: 713.621.2678
Counsel for Plaintiff

Mr. Randy L. Telford
State Bar No. 00795679
Attorney at Law
8111 Lyndon B. Johnson Freeway, Suite 1200
Dallas, Texas 75251
Tel: 856.914.8031
Counsel for Defendant Unique Green

Mr. Robert Garate
State Bar No. 24077561
Garate & Associates, PLLC
17049 El Camino Real, Suite 200
Houston, Texas 77058
Tel: 713.370.9700
Counsel for Healing Favor Investments, LLC

INDEX

TEMPORARY INJUNCTION

                                              PAGE

JUNE 29, 2020


     Proceedings................................    4


     UNIQUE GREEN
          Direct by Mr. Telford.................    27
          Cross by Mr. Pappas...................    33
          Examination by the Court..............    39


     RYAN LANE
          Direct by Mr. Pappas..................    37
          Direct Continued by Mr. Pappas........    48


     CHARLES HART
          Examination by the Court..............    40
          Examination by Mr. Pappas.............    43
          Examination by Mr. Garate.............    44
          Examination by Mr. Telford............    46


     Court Reporter's Certificate..............    55

P R O C E E D I N G S

THE COURT:  Good morning.  This is Judge Moore.

MR. TELFORD:  Hi, Judge.  Randy Telford.

THE COURT:  All right.

MR. TELFORD:  And we have Ryan Lang on the phone, too.

THE COURT:  Because we're on the record and it's a telephonic hearing, I'm going to ask you to make your announcements and who you represent so we can get it all on the record.

MR. TELFORD:  Great.  Judge, this is Randy Telford.  I represent Unique Green.

MR. GARATE:  Your Honor, Robert Garate present, and I represent Healing Favor Investments, LLC.

MR. PAPPAS:  Judge, this is Gus Pappas, and I represent Ryan W. Lane, who is also on the phone call.

THE COURT:  Okay.  And I guess for the Movant, tell me what you are going to prove and how you're going to do it.

MR. TELFORD:  Well, Judge, basically, what we're asking for is an injunction during the pendency of the action to keep Mr. Lane from moving

forward with foreclosure of the deed of trust.

Basically -- I know the last time we spoke on the phone, you said you had gone through and looked through all the pleadings after the case was transferred to you.  I'm sure you're aware that the basis of this lawsuit is whether Mr. Garate's clients are the controlling interest of Healing Favor Investments or whether Mr. Lane has the ability to control Healing Favor Investments.

We think that the fact that that issue is still before the Court, that there's not a united front between them, then that in and of itself prevents Mr. Lane from moving forward of any foreclosure against my client.

Because, in effect, a temporary injunction -- if you didn't grant the temporary injunction, that would resolve the issues between Mr. Garate's clients and Mr. Pappas' client, which would -- and also if it went forward with the foreclosure, then it would wipe out my client's interest in the property.  So, effectively, a denial of the TI would be the -- would end the lawsuit.  It would accomplish the object of the suit.

And we have a Supreme Court case out, the *Texas Foundries v. International Moulders*, that says

that -- and that's error to accomplish the object of the suit. So, we think in and of itself, that's -- that's the reason -- one of the reasons why you should deny the TI -- excuse me -- why you should grant the TI and prevent Mr. Lane from moving forward.

Aside from that, we plan on putting into evidence the fact that the deed of trust was modified through an agreement between my client and Mr. Lane which allowed her to pay a total of $70,000 to extinguish the deed of trust and in turn make the property --

THE COURT: Okay.

MR. TELFORD: -- in her, and that's my brief statement.

THE COURT: Okay. And, then, before you get to your evidence -- and I'm going to ask you some evidentiary questions in a second. I'm going to give -- do either of the other parties want to respond to his initial assertion that the Court should grant a TI just to maintain the status quo until the superiority of interest is determined?

MR. PAPPAS: Judge, this is Gus Pappas on behalf of Ryan Lane. So our concerns are severalfold. One, we -- we believe on behalf -- that certainly we did have the authority as the president and managing

member of this LLC.  We -- we believe that there were certainly unanimity on the LLC's desire to sell the property.  It was sold.  The foreclosure is going forward.  The community -- the company wants the property back.  I don't think there's any dispute about anybody on that particular idea.

It's an internal dispute, perhaps, with regard to the parties, but that doesn't really have anything to do with the parties' desire to get the property back.  And so -- so, clearly, from that perspective, foreclosing the property accomplishes (telephonic interruption) and allows our company parties to determine their fate in course of the lawsuit.

We have a promissory note.  It wasn't paid.  There wasn't a single payment on it.  We believe we're entitled to foreclose as a mater of law and then to move forward with it.

Obviously, from our perspective, some of these other arguments that Mr. Telford has brought forth, we believe the evidence is going to show that they are manufactured evidence to get out of having to give the property back and to create a fact issue, and that they just fortuitously, essentially, globbed onto an internal corporate dispute that can be handled

after this -- after we get the property back.

And there's really no -- it won't resolve the case because we still have an internal dispute with regard to the property.  This just happens to be the object at this point in time of the internal dispute between the parties on our side.

So, therefore, we don't think there's any impediment.  Obviously, they have their second argument.  And we believe that when you hear the evidence, you'll understand and appreciate that you'll -- we think you'll give no credibility to it and allow the foreclosure to go forward.

But if you don't, it still is going to go forward because there's -- between all of these parties, because there is the issue of the -- of this -- this payment issue, which we believe to have been manufactured.

So, in any event, you know, our thought is either we get to foreclose the property and get back, they still have the claims for the defendant's side for all these other issues and we still have our claims.  Or if you ultimately didn't, you know, enter the temporary injunction, then we're all here for the same reasons.

THE COURT:  Okay.  So let me ask you-all

this question, and then I have an evidentiary question for the Movant.

Is this a jury -- are these legal questions to be decided by the Court or fact issues that somebody has got a jury request for?

MR. GARATE:  Your Honor, this is Robert Garate.  And, by the way, if I can, I would like to get my two cents on what I think should happen here today.

Let me address your question first.  The best that I know, right now, there is no jury demand and there is no jury amount that's been paid.  So, currently, it's a court or bench trial.

THE COURT:  Okay.  Are the questions predominantly legal, or do you think there are fact issues to be resolved?

MR. TELFORD:  I think --

MR. GARATE:  I would agree, Your Honor.  Robert Garate.

THE COURT:  And then, you-all were talking over each other, so I don't know what you agreed to.  I couldn't hear it.

MR. GARATE:  I'm sorry, Your Honor.  Robert Garate.  And I think Mr. Telford said that he believed that there are fact issues involved here.

THE COURT:  Okay.

MR. GARATE:  I would probably agree with that.  There are, obviously, some issues of law, but generally a lot of fact issues, yes, Your Honor.

THE COURT:  Okay.  So, then, is there an agreement about the evidence that's going to come in today, or do we need to sort of hop through the evidentiary hoops of getting them properly admitted?

MR. PAPPAS:  This is Gus Pappas on behalf of Ryan Lane.  Based on my review of the documents that have been submitted so far, there are two documents that are -- that Mr. Telford has proffered and that they have used.  The others, I have no agreement.  In fact, we'll probably use some of his myself.

But there are two documents, an e-mail and a document that's entitled deed with no lien or general warranty deed with no lien, something to that effect.

Those, we will object to.  And, you know, when the time comes, we'll make our objection, but I just kind of wanted to give you a heads-up.  We're going to object to those two documents on behalf of Mr. Telford's client.

THE COURT:  So, for purposes of the TI hearing, can I get an agreement and an identification of the exhibits that are going to come in by agreement

first?

MR. TELFORD:  Yes, Judge.  This is Randy Telford.  Out of the documents that Mr. Pappas has preoffered and marked, I have no objection to any of those.  And it includes one of the documents that he's going to object -- that he said he's going to object to, and that's the deed without the lien.  That is marked Exhibit Number 5.

And in addition, the only other document that I would submit is the e-mail that he referred to, which I labeled sale modification, and also the deed of trust.

THE COURT:  Okay.  And I'm looking at the Court's file.  And you said his Exhibit 5.  And I'm trying to see where that was filed so I can pull it up.

MR. PAPPAS:  Judge, this is Gus Pappas.  My understanding -- and I will just tell you, I was -- I was out of the office.  I do agree with Mr. Telford, that it is a document that I knew would be at issue.  So, I -- I at least presented it the Court, but I do not intend to offer it, and I will object to it.  I do agree that it's part of my list.  We filed it on Friday and, I believe, delivered a copy to the Court on Friday, and I think we were told to do that before 3:00, and I think we've accomplished that.  I wasn't in

the office.

THE COURT:  Okay.  Hold on a second.

MR. TELFORD:  Judge, this is Randy Telford again.  I didn't file the exhibits.  I provided a copy to -- if I should have filed it, then I am in error and I can do that.

THE COURT:  So, I've got the plaintiff's exhibits for the TI hearing, and I'm going to read these out loud so we can get these on the record for Michelle.

The commercial contract is Exhibit 1.  That's offered -- that's admitted by agreement.

MR. TELFORD:  Correct.

THE COURT:  And the Healing Favor Investments, LLC, statement as of 12/3/18 is admitted by agreement.

MR. GARATE:  Your Honor, this is Robert Garate for Healing Favor Investments, LLC.  I would object to that document.  One, it's hearsay, Your Honor, and then ultimately, just generally, a document that they provided, which I have never seen before.

THE COURT:  Mr. Telford, do you want to respond?

MR. TELFORD:  Judge, I have no objection to it.

THE COURT:  So, who is the proponent of the document, because Mr. Garate just objected?

MR. PAPPAS:  This is Gus Pappas.  We are proposing it on behalf of Ryan Lane.  My understanding is, and I think the testimony is going to be, that the Healing Favor Investment document about expenses made money put into the company and traded on behalf of the company by -- by my client, Mr. Lane.  And my understanding is that it's been seen and distributed, but I did not come into the case -- I didn't do it personally, so I -- because I came into this case just recently.  But my understanding -- and so, anyway, we believe it to be a corporate document, and we will be offering it.

THE COURT:  So what's your -- what's your response going to be to the hearsay objection?  What's the exception?

MR. GARATE:  Well, it certainly would be -- since I don't represent Healing Favor, it certainly would be a document that is a business record on one hand and then, two, it would certainly be a statement by a party opponent as well.  And so -- and so, I think on either front, it gets over the hearsay objection.

THE COURT:  Mr. Garate, you want to

respond to the --

MR. GARATE:  Yes, Your Honor.  Two things.  I think -- first is generally, I think, that we would argue the authenticity of the document of Healing Favor Investments, which obviously would not make it a business record.

Secondly, I think it's something that's been put together by Mr. Lane and not by the company itself, so I don't think it's an admission of a party opponent.

THE COURT:  I'm going to sustain the hearsay objection to Plaintiff's 2.

Exhibit 3, the lis pendens.  Is that admitted by agreement?

MR. TELFORD:  Randy Telford.  No objection.

MR. GARATE:  Robert Garate.  No objection, Your Honor.

THE COURT:  3 is admitted by agreement.

4, the notice of the lis pendens?

MR. TELFORD:  Randy Telford.  No objection to that.

MR. GARATE:  Robert Garate.  Your Honor, no objection.

THE COURT:  4 is admitted by agreement.

And this is the one you-all are arguing about, the general warranty deed with no lien.  Who is offering the document?

MR. TELFORD:  Judge, I will offer the document.  It was one of the documents that I had listed as well as my own.  When Mr. Pappas was offering it, that's why I said I have no objection to it.  But I'll offer it.

THE COURT:  Mr. Telford is offering Number 5.

And, Mr. Pappas, you said you're going to object.  What's the objection?  It looks like a certified copy that was filed with the county clerk's office.

MR. PAPPAS:  Yes.  I mean, I -- well, I see -- I understand that.  I just -- we believe it's via forgery, that it was not signed by my client, that it was manufactured.  So, therefore, we object to it as hearsay.

And as a result of -- it's also a -- there's also a general warranty deed that is also there, which is, in fact, the true document, so we don't think it's the best evidence of the document as well.  We think it's hearsay.  We don't think it's authentic despite the fact that it was filed of record.

We also question and challenge the notary of it as well.

So, those are the bases upon which we -- it's not an admission by a party opponent either because the testimony is going to be that my client never signed it and did not sign it.

THE COURT:  I'm going to go ahead and admit it.  You can certainly make those arguments when the testimony comes up.

MR. PAPPAS:  Okay.

THE COURT:  Plaintiff's 5 is admitted over objection.  General warranty deed with no lien.

How about Number 6?  Any objection to the general warranty deed with the vendor's lien?

MR. TELFORD:  Randy Telford.  No objection, Judge.

MR. GARATE:  Robert Garate.  No objection.

THE COURT:  All right.  6 is admitted.

7, there's a mortgage calculator and amortization schedule.  Any objection?

MR. TELFORD:  I don't have any objection to this one either.

THE COURT:  Mr. Garate, any objection?

MR. GARATE:  Your Honor, no objection.

THE COURT:  All right.  Plaintiff's 7 is admitted.

Number 8, the secretary of state's business organizations inquiry for Healing Favor?

MR. TELFORD:  Randy Telford.  No objection, Your Honor.

MR. GARATE:  Your Honor, Robert Garate. I guess the only question I have for the document is what is it supposed to depict?  Is it supposed to be who the registered agent is?  It doesn't really say.

THE COURT:  I guess it looks like -- just to show that it's an active LLC is the way I'm looking at it from the franchise tax document attached to the back.

MR. GARATE:  Your Honor, no objection.

THE COURT:  8 is admitted.

Number 9, the company agreement of Healing Favor?

MR. TELFORD:  Randy Telford.  No objection.

MR. GARATE:  Your Honor, Robert Garate. I would object to this document as well.  One of them, obviously, being hearsay again, and particularly because there's attachments and exhibits that we don't believe are authentic.  And as a company, which I

assume we're going to take the company agreement again -- or excuse me, a company document again, I don't think -- or we would challenge the authenticity at least of some of the attachments of the company agreement.

THE COURT:  Which attachments are you challenging?  It's the operative document for the dispute, right, so the hearsay rule doesn't apply.

MR. GARATE:  Your Honor, there's the A-1 exhibit, which basically states that Ryan Lane has a disproportionate interest in the company.

THE COURT:  Are you going to have somebody testify that it wasn't part of the original document?

MR. GARATE:  Your Honor, I was supposed to have my client on the phone.  I'm not really sure if they are or not.

THE COURT:  You might want to text him and give them the call-in number.

MR. GARATE:  Yeah.

THE COURT:  We've got all of those admitted with the exception of -- let me go back and make sure I've got that right.

Do we know who just put me on hold?  Who put me on hold and played music for the Court?

Who is this?

MR. HART:  This is Charles Hart.

THE COURT:  Okay.  Do we still have all the lawyers on the phone?

Whoever did it, don't put me on hold again and play that dentist office music.

I'm going to ask the Movant, do you want to -- you've -- do you want to call a witness?  How do you want to proceed?

MR. TELFORD:  Well, Judge, I have two exhibits that I would like to proffer to.  The deed of trust that I forwarded to all of the parties as well as the clerk.

THE COURT:  Can you tell me where that is in the Court's file so I can pull it up and look at it?

MR. TELFORD:  Judge, I cannot.  I'm at a loss for that.  Would you e-mail it to me?

THE COURT:  Did you file it already?

MR. TELFORD:  No, I submitted it to the court reporter.

THE COURT:  Okay.  Michelle's got it.  She's here.

Will you forward that to me real quick?

MR. TELFORD:  Judge, the other document that I would ask to forward to you is the one that is

labeled "sale modification."

THE COURT:  She sent those both to me. So you have got your own deed of trust and the sale modification.  I'm going to call those Movant's 1 and 2.

Is there an objection to Movant's 1, the deed of trust?

MR. PAPPAS:  Not from me, Judge.  This is Gus Pappas.

MR. GARATE:  Your Honor, Robert Garate. No objection.

THE COURT:  Okay.  So Movant's 1, the deed of trust, I want to make sure I have this right. Is it the one that's marked at the top 3-7-19 and the filing fee was $52?

MR. TELFORD:  Yes, sir, that's correct.

THE COURT:  So, that's admitted.

And then Movant's 2, the sale modification.

MR. TELFORD:  Basically, a forward of an e-mail from client to me, Judge, from Ryan Lane.

THE COURT:  Okay.  So, it's -- is there an objection to the e-mail?

MR. PAPPAS:  Yes.  This is Gus Pappas. This is that initial document, Judge, one of those two

initial documents that I objected to. We don't -- well, one, it -- it's hearsay, it's not a party opponent, we never signed it, never created it, this is not our e-mail, and --

THE COURT: So let me ask the question of the Movant. Who are you offering it on behalf of and who do you contend it's an exception to the hearsay rule? Who is a party opponent -- admission of a party opponent, or statement against interest of?

MR. TELFORD: Yes, Your Honor, I'm offering it on behalf of Unique Green. We think it's an exception to the hearsay rule because it is Mr. Lane's e-mail forwarded to her.

THE COURT: Mr. Pappas, do you want to respond? It says it's from Ryan Lane to --

MR. PAPPAS: I know. And it's not. I mean, we do not -- we do not contend that we ever sent an e-mail like that. We could not find an e-mail. We never sent an e-mail to Unique Green on that day. We believe this document was manufactured. And so, therefore, we do not believe it is our document nor that we sent it.

THE COURT: I think that goes to weight and not admissibility, so I'm going to admit it over the objection. Movant's 2 is admitted. But I'll let

you address that on the merits when you respond from an evidentiary perspective. All right?

MR. PAPPAS: There's one other document that we relied upon that Mr. Telford submitted to the Court. It's the promissory note. So, if he's not going to offer it, we will. It's one of his documents that he submitted to the Court.

THE COURT: I've got the promissory note up. Is it dated February 21st, 2019?

MR. PAPPAS: Yes.

THE COURT: Is there any objection to -- I'm going to call it Movant's 3.

MR. TELFORD: No, Judge. Randy Telford. No objection.

THE COURT: Mr. Pappas?

MR. PAPPAS: No objection.

MR. GARATE: No objections, Judge.

THE COURT: All right. Movant's 3 is admitted.

Anybody -- from a housekeeping perspective -- this is weird to do it by phone, so I'll try to keep it efficient -- have any other exhibits that we need to address before we get to the testimony?

MR. GARATE: Your Honor, this is Robert Garate. I do have a handful of exhibits that I don't

necessarily anticipate using unless there's an necessity like there's some type of testimony in which I need to use them.  So, do you want to go through them, or would you rather just wait until we have the --

THE COURT:  Let's just stand on it.  If you don't need them, let's not go ahead and admit them.  Let's just wait and see.

All right.  Who is going to call the first witness?

MR. TELFORD:  It's my motion, Judge, so I suppose I will.

THE COURT:  All right.

MR. TELFORD:  I'll call Unique Green.

MR. GARATE:  Judge, is there a way to invoke the rule?  I understand that there's several potential witnesses by Mr. Telford that are on the phone and -- other than parties.  I don't -- I don't -- you know --

THE COURT:  Sure.  Anybody that is not a party to the proceeding or an expert cannot be in the room with Movant's counsel or the witness who is about to testify.  So, if you're in the room, you need to step out.

MR. TELFORD:  Judge, how do we bring them

back?

THE COURT: After the witness is done testifying, you can go and grab your next witness.

MR. TELFORD: Well, sir, I think I've got them on three different phone lines.

THE COURT: Let me ask you this question: How long do you-all think this hearing is going to take? Marcella set you-all for 30 minutes, and we're at 30, so --

MR. TELFORD: Judge, I have three witnesses. If I got to go through all three witnesses, I'm assuming my part is going to take 45 minutes to an hour.

THE COURT: Okay.

MR. TELFORD: Once again, I think that that as a matter of law, you should grant this because of the dispute between Healing Favor and Ryan Lane. We should never even have to get to the -- my witnesses will testify as to the signing of Mr. Lane on the deed without warranty. That's Charles Hart. I've got Ms. Harris on the line who is going to testify that she saw Ms. Green give Mr. Lane money, and then I've got Ms. Green on the phone who will also testify that she provided Mr. Lane money and what she believed to be satisfaction of the note in deed of trust.

THE COURT:  Mr. Pappas, was it you that invoked the rule?

MR. PAPPAS:  Yes, I did.

THE COURT:  Can you tell me why if they are going to testify on different things?  We're doing this remotely.  It sure does make it difficult when people are calling in.  It's not a traditional trial, it's a TI.

MR. PAPPAS:  I read the deposition of Unique Green, okay, and I went through it, and there were probably no less than 15 instances where she responded back to questions that were asked by Mr. Garate -- I was not there -- where she said -- there were none of your business questions with regard to Wanda Harris.  Questions with regard to other witnesses what they know, what their involvement is. There were questions with regard to receipts for the $70,000.  All of the very issues that are existing in this case, when Mr. Garate asked the questions about that, she flat answered, "None of your business" and refused to answer any of those questions, and he concluded the deposition and said, "I'll go before the Court."

So, when I looked at all of those things, I have -- those issues were going to be discovered, the

questions were asked, and so there is -- there is -- when I read that, I thought to myself, well, first of all, nobody has had the opportunity to go back and address the motion to compel and have her answer.

THE COURT:  We are way further afield than my question.

MR. PAPPAS:  And I appreciate that, but it puts me in an incredibly bad position for them to be able to sit there and listen to testimony by Unique Green and corroborate that when questions of -- corroborate things that she has said when, in fact, we have absolutely no idea of what those people would say if they didn't have to hear her testimony.  I think this is an incredibly prejudicial position.

THE COURT:  Okay.  I'm good.  You've answered the question.

I'll tell you-all what I'm going to do. I'm going to start with this, and then I'm going to reset you-all when we have more time.  So, we're going to start with Unique Green, and I'm going to ask the other witnesses to get off the phone.

Anybody else still on the phone?  Any other witnesses?

THE WITNESS:  Unique Green is here.

THE COURT:  All right.

(Witness sworn.)

THE WITNESS:  Yes, sir.

THE COURT:  All right.  Mr. Telford, do you want to get started?

MR. TELFORD:  Yes, sir.

UNIQUE GREEN,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. TELFORD:

Q.   Just for brevity sake, since we're short on time, Ms. Green, could you very briefly tell the Court your initial dealings with Mr. Lane in conjunction with the purchase of this property?

A.   You mean about the building or how I met him? I don't understand the question.

Q.   Yes.  I apologize.

First off, tell the Judge what your relationship is to the building.

A.   Your Honor, I own a funeral home.  And about two years ago, I thought the building was vacant.  I contacted the number that was on the building.  It was Mr. Lane.  We could not work out a deal.  About a year later, he came back to my funeral home and left a message with the office manager that the building was still for sale and he could work a deal out with me.

He came back to the building.  Me and my team went -- we came back to my office, me and my team. We set up an appointment to go see the building two or three times.  We came up with an agreement, and we went to closing about the building.

Q.   And, Ms. Green, what was your understanding of the agreement that you had with Mr. Lane about purchasing the building?

A.   We went to closing.  And if I could come up with money and e-mail confirmation -- communication between me and him, if I could come up with a lump sum of money, he would get rid of the lien or mortgage on the building if I would just make a one-time payment.

So, after we went to closing -- so, we went to closing.  And after we went to closing, I made a one-time payment with him, and he said that that would get rid of the lien on the building.

Q.   And what was the amount of money that was your understanding that you could pay to get rid of the lien that was placed on the building?

A.   I needed to give him $70,000.

Q.   Okay.  Did you, in fact, give Mr. Lane the $70,000?

A.   Yes, sir.  And I have a witness to it.

Q.   Okay.  And where did -- where did that take

place?

A.   At the funeral home where he came to -- at the funeral home where he came to do the paperwork and where he came looking for me.

Q.   Now, Ms. Green, you were on the line earlier whenever the Judge was preadmitting the exhibits. These are the same documents that I forwarded to the Court.

What the Court admitted as Movant's 2, which is the e-mail, do you have that in front of you right now?

A.   I do.  Exhibit 2.  Yes, sir.  Exhibit 2.  You sent it to me, Mr. Telford.  I'm just looking for the e-mail that you sent.  It's under -- on your exhibit --

Q.   The exhibits that I sent to you labeled "sale modification."

A.   I've got it, yes, sir, in front of me.  I'm looking at it right now.

(Off-the-record discussion.)

BY MR. TELFORD:

Q.   Ms. Green, what we have marked as Movant's 2, which is a sale modification, who did you -- did you receive this e-mail?

A.   Yes, from me and Mr. Lane in our communication.

Q.   And can you -- is that e-mail -- is that the understanding of the agreement that you had with Mr. Lane?

A.   Yes, sir.  It was -- when he came to the building looking for me, I explained to him that my credit wasn't so-so good.  And he said that we would be going to closing, and it would be an owner finance type deal.

So, we went to closing to a title company that he chose.  I didn't know anything about them.  And then he said that the lump-sum money is either before or after the closing and could have the building free with no lien on it.

Q.   Okay.  And you testified earlier that you provided Mr. Lane with $70,000.  Where did you provide him that money?

A.   We were at the funeral home.  I mean, he came in that morning.  And we were at the funeral home.  And he stopped to sign papers with the receptionist, and then he came back to my office where me and Ms. Harris was.

Q.   And so, who was present besides you and Ms. Harris?

A.   Well, the office manager was up front where he signed the paperwork, but only me and Ms. Harris was in

my office, because I didn't want anybody to see us, you know, our money transaction.

Q. And so, Ms. Harris witnessed you giving Mr. Lane the money?

A. Yes. Well, Ms. Harris gave me some of the money. I got money from her. She was there because it was some of her money that was helping me buy the building.

Q. Now, after you gave him the $70,000, did Mr. Lane execute any documents at the funeral home that day?

A. The paperwork was signed before he went to my office.

Q. Okay. So, just so that I understand you correctly, when you say "the paperwork," what document are you referring to?

A. The only paper that he signed was something called the deed or title to the building. I think it's the deed or deed of trust. He said it was signed in the document and that would mean no more lien on the building and I would own it free and clear.

Q. Okay. I have also forwarded to you the documents that Mr. Pappas has submitted to the Court. In that, there's a document labeled Plaintiff's Exhibit 5. Would you look at that document, please?

A.   Plaintiff's Exhibit 5?

Q.   Yes, ma'am.

A.   The general warranty deed with no lien?

Q.   Yes, ma'am.

A.   Yes, sir.  I'm looking at it.

Q.   Okay.  Do you know what this document is?

A.   Yes, sir.  That's the deed that Mr. Lane presented me when we changed money.  When we did our money exchange, that was the paperwork that he brought -- that he signed that day.

Q.   And who recorded this document; do you know?

A.   Harris County Clerk's Office.

Q.   Yes, ma'am.  Did you proffer it to the Harris County clerk or to Mr. Lane?

A.   No, sir.  I took it downtown and paid the filing fee.

Q.   Okay.  Now, what's your understanding of what this document did?

MR. GARATE:  Objection, Judge, calls for a legal conclusion.

THE COURT:  Sustained.

BY MR. TELFORD:

Q.   Ms. Green, did -- did Mr. Lane provide you with any other type of document related to the deed of trust?

A.   No.  No.  He just -- no, sir.  He told me the paperwork that we were signing when I gave him the money, that this was a new deed that I needed to record and this would make me the owner and I wouldn't have to worry about making any more payments.

MR. TELFORD:  Judge, no further questions of Ms. Green.

THE COURT:  Mr. Pappas, do you have any questions?

MR. PAPPAS:  Yes, I have a few.

CROSS-EXAMINATION

BY MR. PAPPAS:

Q.   Ms. Green, you have no other receipts for any $70,000, correct?  You never gave --

A.   No, sir.

Q.   Okay.

A.   No, sir, I don't.

Q.   Okay.  And so the -- the -- the only documentation that you have is that -- is presumably this general warranty deed with no lien; is that correct?

A.   Yes, sir.  This is the form that Mr. Ryan signed.

Q.   All right.  Mr. Ryan did not create this document, though, did he?

A.    I'm not for sure.  He brought it in with him. I don't know who created it for him.

Q.    You never saw him actually create this document, correct?

A.    No, sir.  He walked -- he came into the building with it.  He could have had anybody prepare it.  I don't know.

Q.    I looked on the back of this document.  On the second page of this document, it says, "respectfully submitted."

Do you see that?

A.    Yes.

Q.    Was that -- you have done some previous real estate transactions, correct?

A.    Not enough to remember.

Q.    So, you're not experienced in real estate transactions, correct?

A.    No, sir.

Q.    Okay.  All right.  And is it your contention that Mr. Hart actually acknowledged this document, he actually saw Ms. Green sign this document where it says "respectfully submitted" on the second page?

A.    You mean, Mr. Ryan?  Mr. Hart -- to my knowledge, Mr. Hart said that -- yes, when Mr. Ryan signed it, he asked for his ID.  So, yes, Mr. Ryan

signed this form.

Q. Were you there? Did you see him sign?

A. Okay. So, I was -- let's go back. I was in the funeral home that day, and I was in my office --

THE COURT: I'm going to interrupt you, and I'm going to ask you to answer the question. Did you see him sign the document or not? It's a yes-or-no answer.

THE WITNESS: Yes, sir. On the camera, I witnessed him, you know, administer -- at the front desk sign a form on the camera that I'm presuming was this. So, I was not standing next to him, Your Honor. I did see him bring papers in his hand and do a transaction, and I watched him, you know, lean on the desk and sign a form. I'm assuming it was this form, Your Honor.

BY MR. PAPPAS:

Q. So you don't know that he actually signed this document? You're just making the assumption, correct?

A. I just answered that I saw him come in the building on the camera and stop at the reception desk --

THE COURT: I need you to answer the question "yes" or "no." Did you see him sign the document or not? You're presuming he signed it, or did

you see him sign it?

THE WITNESS:  I saw him signing.  I was watching him on the camera.  Yes, sir.

THE COURT:  You saw him signing this document or a document?

THE WITNESS:  I saw him signing a document, Your Honor.

THE COURT:  Okay.  Go ahead, Mr. Pappas.

MR. PAPPAS:  Thank you.

BY MR. PAPPAS:

Q.   Do you -- you do understand and appreciate that the font is different on both pages of this document, correct?  The font on the front page is different from the font on the second page?

A.   I don't understand what you're saying.  They all look the same to me.

Q.   So you don't recognize the difference in the type of lettering and the style of lettering?

THE COURT:  I'm going to short circuit this in the interest of time because I think I know where this is going.  Is Mr. Lane on the phone?

MR. PAPPAS:  Yes, he is.

MR. LANE:  Yes, I am.

THE COURT:  Mr. Lane, I'm going to interrupt this and just kind of abbreviate a little

bit.

(Witness sworn.)

THE WITNESS:  Yes, Your Honor.

THE COURT:  I'm going to take some folks out of order.  Who wants to question Mr. Lane about this document?

MR. PAPPAS:  Judge, since it's my client, I'll go ahead.

THE COURT:  All right.

RYAN LANE,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. PAPPAS:

Q.   Ryan, please state your name for the record.

A.   Ryan W. Lane.

Q.   Okay.  Ryan, what -- I'm going to ask you some questions about this specific document.  But please tell the Court what your -- what your relationship is to Healing Favor, Inc., in this matter and the basis for your ability to testify.

A.   I am the president and managing member of -- of Healing Favor Investments.

Q.   Were you the lead person on behalf of Healing Favor Investments with regard to the purchase of the subject property with Unique Green?

A.   Yes.

Q.   Okay.  You -- you have seen this general warranty deed with no lien because it's listed as the document in the -- in the documents that I sent you as Exhibit Number 5, correct?  Do you see that document?

A.   Yes.

Q.   Okay.  With regard to that document, did you create that document?

A.   No.

Q.   Okay.  Did you sign that document?  Is that your signature on the second page?

A.   That appears to be the facsimile of my signature.

Q.   I understand that.  But did you sign this document -- this document on the second page where it appears to be a reasonable facsimile of your signature?

A.   No.

Q.   Did you ever sign any document releasing the lien that is part of Exhibit Number 6, which is a general warranty deed with vendor's lien.  Did you ever sign a document releasing that in any way, shape, or form for $70,000?

A.   No.

Q.   Did you ever get $70,000 from Unique Green or Wanda Harris or anybody in relationship to this

property?

A.   No.

Q.   Did you ever give a receipt for $70,000 to Unique Green, or did you ever give any document to her or anyone acting or purporting to act by, through, or under her?

A.   No.

Q.   All right.  The -- after the transaction --

THE COURT:  I'm going to -- I'm kind of short circuiting this in a couple of different ways. Thank you.  And I'm going to go back to Ms. Green in a minute.

But do we have the notary public on the phone?

MR. TELFORD:  Judge, he was on the phone, but he's one that you told he could get off the line.

THE COURT:  I may get him back on in a minute.

Ms. Green, I have a question for you.

What was the manner you contend the $70,000 was paid?  What was the form of the payment?

MS. GREEN:  Me and Ms. Harris, we gave him cash.

THE COURT:  So you took $70,000 in cash to a meeting and didn't get a receipt?

MS. GREEN:  Well, he gave me the deed to the property.

THE COURT:  And you're referring to Exhibit 5?

MS. GREEN:  Yes, sir.

THE COURT:  And the deed says for -- and I know this is typical, but it says for $10 cash consideration.  Do you have any other documentation that reflects you paid $70,000 in cash?

MS. GREEN:  No, sir.

THE COURT:  Okay.  Mr. Telford, can you get Mr. -- or Ms. Hart, or whomever it is, to call in?

MR. TELFORD:  I can try, Judge.

Ms. Green, do you know Mr. Hart's number off the top of your head?

MR. HART:  This is Charles Hart.  I'm on the phone.

THE COURT:  Okay.  Mr. Hart, you signed a document, an acknowledgment, on page 2 of Exhibit 5, that says, "This instrument was acknowledged before me on this fifth day of March 2019 by Ryan William Lane."

Do you have your notary book from that transaction?

MR. HART:  No, sir, I don't have my notary, but I do remember Mr. Lane.

THE COURT: And this is -- it's a general warranty deed with no lien on the front, and the font is different than the signature page on the back. Is it your testimony that these two pages were handed to you together and that Mr. Lane was there and he signed the second page in person?

MR. HART: Yes, sir. From what I remember, Mr. Ryan came in with the document saying that he needed something notarized. I asked for his ID, I reviewed that it was him, and I notarized the paperwork.

THE COURT: Do you know how many pages he had with him that he asked you to sign, or was it this single page that you notarized?

MR. HART: That's what I don't remember. It could have been two, but I'm not sure, but I know I notarized paperwork for him.

THE COURT: Were you in the room when -- when there was a transaction where cash exchanged hands?

MR. HART: No, sir. I don't know anything about any cash.

THE COURT: And do you have your notary book from March of 2019?

MR. HART: No, sir. Because I haven't

been -- for almost 20 years, I've been in and out of the hospital.  I'm a double amputee, and I'm pretty much at home.

THE COURT:  Where is your notary book that would reflect this transaction?

MR. HART:  Honestly, sir, I really don't know.  I've tried looking for it, but I've moved a couple of times since my amputation since '18.  And, actually, right now, I don't know where it is.

THE COURT:  Okay.  Thank you very much.

Anybody want to ask Mr. Hart questions?  I took over because I'm trying to keep it short.  I've got another 11:30 TI.

MR. GARATE:  Your Honor, this is Robert Garate.  I apologize.  The only thing I want to make sure.  I don't know if we actually swore Mr. Hart in before you started questioning him.

MR. TELFORD:  Yeah, I don't believe we did, Judge.

THE COURT:  Okay.  This is the beauty of a telephonic hearing.

Mr. Hart, you have answered questions that I have posed to you during this hearing.  Do you swear or affirm that the answers that you have given in response to each of my questions is true and correct?

MR. HART:  Yes, Judge, to the best of my knowledge, yes, sir.

THE COURT:  Okay.

MR. PAPPAS:  This is Gus Pappas.  I wanted to confirm something that I didn't quite hear well.

THE COURT:  Okay.

EXAMINATION

BY MR. PAPPAS:

Q.    Mr. Hart, is it -- is it your testimony that you recall notarizing two documents for Mr. Lane; is that correct?

A.    I remember Mr. Lane coming in a few times, but, yes.

Q.    When you said "coming in a few times," where was that?

A.    Well, it was at the funeral home, and I work in the front office of the funeral home.  I'm literally right by the front door.

Q.    So you work at Unique Green's funeral home?

A.    Well, I used to work.  I'm no longer there now.  But I used to.

Q.    Okay.  So you don't remember the specific documents that you say you notarized for Mr. Lane; is that correct?

A.   All I remember, I think it was something like a deed or something, something regarding a property or something like that.  But he just said that he needed it notarized.  I asked for his ID, and I verified it is him, and I just notarized it.

Q.   That's what I want to be clear about.  You don't have any specific recollection of the specific document, correct?

A.   I'm not sure exactly what it was, but I'm pretty sure.  I think it was something like a deed or something.

Q.   Okay.  Fair enough.

THE COURT:  All right.  Anybody else?

MR. GARATE:  Your Honor, this is Robert Garate, if you don't mind.

THE COURT:  Sure.

EXAMINATION

BY MR. GARATE:

Q.   Mr. Hart, you mentioned that you had been -- that you have been out of the office for a few years; is that correct?

A.   Yes, close to two years.  I'm a double amputee.  I've been in and out of the hospital since the middle of '18.

Q.   And when did you stop working at the front

desk?

A.   I think I tried to go back a couple of times, in the beginning part of '19, but I had to leave and go back into the hospital.

Q.   Okay.  And do you recall if Mr. Lane signed any other documents in front of you on that same day, March 5th of 2019?

A.   All -- what I remember about Mr. Lane is that when he did come in, he did have documents he needed notarized.  I notarized them.  And if I'm not mistaken, I think -- I think he was -- he was in trouble for trying to kill his wife or something like that.

MR. GARATE:  Judge, that's speculation, hearsay, completely irrelevant.

THE COURT:  Sustained.  The Court won't consider that.

BY MR. GARATE:

Q.   Mr. Hart, just for clarification, do you recall whether or not Mr. Lane signed any other documents with you that day on March 5th of 2019?

A.   Just the documents that he brought in is all I -- pretty much I remember.

Q.   The only document that you remember out of the documents that he may have signed is this particular document and that's it?

A.   Well, like I said, it was the documents that he brought in that day, but I don't know exactly what they were.  I think it was, maybe, a deed or something. That's all I can really remember.

THE COURT:  Did you notarize more than one document?

THE WITNESS:  Yes, sir.

THE COURT:  Okay.

BY MR. GARATE:

Q.   This is Robert Garate again.  Mr. Hart, do you recall about how many other times have you notarized documents for Mr. Lane?

A.   That part, I don't remember.  I just know he's been in the office a few times.  I don't know exactly how many documents I may have notarized for him.  I don't remember.

MR. GARATE:  No further questions, Your Honor.  Not right now.

THE COURT:  Okay.  This is what I want to do.

MR. TELFORD:  I have one question.

EXAMINATION

BY MR. TELFORD:

Q.   Mr. Hart, whether you signed -- whether you notarized these documents, do you remember -- did you

give them back to Mr. Lane or give them to Mr. --

A.   I gave them back to Mr. Lane.

MR. TELFORD:  Thank you.

THE COURT:  All right.  Anything else from Mr. Hart?

MR. TELFORD:  Nothing, Judge.

MR. GARATE:  No.

THE COURT:  I have one more question for Mr. Lane.  Mr. Lane, I'm going to ask you:  On the acknowledgment page for the document that's titled General Warranty Deed with No Lien, you said it's a facsimile of your signature.  Did you sign this "respectfully submitted by" and then there's a place that shows your name.  Is that your signature?

MR. LANE:  That is a copy of my signature.

THE COURT:  It is a copy of your signature?

Okay.  I understand.  I understand the argument that it wasn't part of the first page, that it's separate, and they are separately fonted.  And I get that.

Okay.  Anything else from any of these three witnesses?

MR. TELFORD:  For sake of brevity, not at

this time, Judge.

MR. PAPPAS: Judge, I just would have a couple of follow-ups for Mr. Lane. Depending on, you know, how you want to --

THE COURT: Go ahead. I've got -- I'm afraid somebody is going to call in for the 11:30 TI. I'm trying to accelerate it, but go ahead and ask Mr. Lane a couple of questions.

MR. PAPPAS: All right.

THE COURT: And this is Mr. Telford, right?

MR. PAPPAS: No, this is Gus Pappas.

THE COURT: Mr. Pappas. Okay. I'm going to ask you-all if you can to state your name before you start asking questions when you change lawyers so Michelle can get it down. It's hard for her to do without seeing faces.

MR. PAPPAS: Yeah, absolutely. Gus Pappas.

RYAN LANE,

Having been previously sworn, testified as follows:

DIRECT EXAMINATION CONTINUED

BY MR. PAPPAS:

Q. Mr. Lane, you were -- you have been presented and you see this e-mail that's marked as Movant's

Number 2 that's allegedly dated Thursday, January 10, 2019.  Do you know what e-mail I'm talking about?

A.  Yes.

Q.  Did you ever -- did you ever create an e-mail like that and send that to Unique Green?

A.  No.

Q.  Would you ever do that?  Would you ever do that?  Would you ever buy a property for $150,000, sell it for 280, and then accept $70,000 in full satisfaction.  Would you ever do that?

MR. GARATE:  Objection, Judge, speculation.

THE COURT:  Overruled.

BY MR. PAPPAS:

Q.  You can answer.

A.  No, I would never do that.

Q.  The -- and so, why -- why do you -- what did you do to confer that you never sent an e-mail like Movant's Number 2?  Did you do anything to confirm that there was no e-mail like this that ever came to you?

A.  Yes, I went to -- I --

Q.  Are you there?

A.  Yes, I am.

Q.  Go ahead.  Nothing came through.

A.  Oh, okay.  I actually went back through my

e-mails for that day, and on that day, I did not send that e-mail to Unique Green.

Q. Okay. Did you ever make any kind of -- did you ever -- if you looked through this e-mail, is there anything else about it that appears odd to you or different?

A. Yes, the portion where there's a $70,000 cash payment, that's in a different font as the, I guess, top portion of the e-mail. And then I also noticed that there is no sent -- sent block from -- from Green to Telford on that e-mail.

Q. Let me ask you something. In terms of -- is there anything in the agreement -- the earnest money contract. Is there anything in the earnest money contract between you and between the company and Unique Green that indicates there's anything about some $70,000? Is there anything in any of the other documents?

A. No.

Q. Okay. Is there the -- my understanding is that in answer to the questions, maybe there was other e-mails. Were there any other e-mails between you and Unique Green that indicate anything about some $70,000 deal?

A. No.

Q.   All right.  Do you believe that this Movant's 2 is also a manufactured document?

A.   Yes.

Q.   And you -- I just -- just for clarity in the record.  You also believe that is a manufactured document as well?

A.   Yes.

Q.   Was there any -- did you ever show up on March 5th, 2019, to the funeral home as Unique Green testifies, and, perhaps, Mr. Hart?  Did you ever show up there for the purpose of signing this general warranty deed?  Did you ever show up there for that purpose or have those documents with you?

A.   No.

Q.   Do you believe that --

THE COURT:  I'm good.  That's more than three.  I'm going to cut you off.

Mr. Lane, has your e-mail address ever been ryanlane@onlyaip.com?

MR. LANE:  Yes.

THE COURT:  Then I have one other question.  Was your e-mail address also ryan@ryanwlane.com?

MR. LANE:  Yeah, ryan@ryanwlane.com.

THE COURT:  Okay.  Got it.

(Discussion off the record.)

THE COURT:  I'm going to -- I want to read some of your -- I want to reread a couple of things.  If I need to hear more testimony before I rule, I will have Vicki reach out and get an agreeable date to continue the TI hearing.  All right?

MR. TELFORD:  All right.

THE COURT:  Anything anybody feels like they didn't get to say that I need to hear before we get off the phone or continue the hearing?

MR. GARATE:  Your Honor, this is Robert Garate.  I did have a couple of thoughts, if you don't mind, just really fast.  Do you mind?

THE COURT:  Very quickly.

MR. GARATE:  I didn't get to say much. Your Honor, a little bizarre situation in which we're in.  I personally represent Healing Favor Investments, and this alleged agreement was between Healing Favor Investments and Unique Green.  I think that the foreclosure would be something that Healing Favor Investments would do and not something that Ryan individually would do.

And I think that Mr. Lane is trying to take this on himself sua sponte to make everything in his power -- to make it look like he has control of

this LLC.  We're in a unique situation because the LLC is of the position right now that we should have a continued hold on this case or at least the restraining order should stay in place until we finish it.  I don't think that Ryan should go down there and foreclose on this property.  In fact, that's kind of what the whole lawsuit is about is whether or not Mr. Lane has the authority to do anything on behalf of HSI.  And I can't sit idly by and say that I agree that Ryan Lane can go foreclose and then also in the same breath say that Ryan Lane doesn't have the authority to do anything, including the original transaction in the first place.

There was a lot more testimony that I was hoping to put on today, but I know we're very short on time.  And I was hoping to question some of the other witnesses, including questioning Mr. Lane, which I didn't get a chance to do.  But, regardless, I would ask you to take that into consideration in making your final decision.

THE COURT:  Okay.  I will.  And if I need to hear more testimony or if you need the opportunity to cross-examine Mr. Lane, I will continue the hearing and reset that so you can introduce some more evidence.

All right.

MR. GARATE:  Thank you, Your Honor.

THE COURT:  Anything else?  Thank you.

MR. TELFORD:  Judge, I do have one more thing.  This is Randy Telford.  My understanding is that the property is posted for foreclosure.  If the TI continues through at least the foreclosure --

THE COURT:  It's posted for foreclosure for when?

MR. TELFORD:  Mr. Pappas, can you tell me --

MR. PAPPAS:  July 7, I believe.

THE COURT:  Got it.  We will either continue the hearing and you'll get a ruling before the 7th or you'll get a ruling before we continue the hearing.  How is that?

MR. TELFORD:  Thank you, Judge.

MR. GARATE:  Thank you.

THE COURT:  You bet.

(Proceedings concluded at 11:31 a.m.)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS   )
COUNTY OF HARRIS     )

I, Michelle Miller, Official Court Reporter in and for the 55th District Court, Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid by _____.

WITNESS MY OFFICIAL HAND this the 5th day of January, 2022.


                /s/Michelle Miller_____
                Michelle Miller, Texas CSR 9312
                Expiration Date: 2/28/23
                Official Court Reporter
                Harris County, Texas

3.
WD
2

RP-2017-547565
12/13/2017   RP1   $24.00

## GENERAL WARRANTY DEED

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY AND ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

THE STATE OF TEXAS   §

§ KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF HARRIS   §

THAT **JORGE RICARDO MEADE**, a Houston Texas and Harris County resident (the "Grantor"), for and in consideration of the sum of Ten and No/100ths Dollars ($10.00) cash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, paid by **JORGE RICARDO MEADE**, (the "Grantee"), whose address **3919 BROOKMEADE DR HOUSTON, TEXAS. 77045** & **UNIQUE MICA GREEN**, (the Grantee") whose address is **1116 ELBERTA ST HOUSTON, TEXAS. 77051** HAS GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents DOES GRANT, BARGAIN, SELL and CONVEY, subject to the matters set forth herein, unto Grantee's the following described real property (the "Lot") situated in Harris County, Texas, to-wit:

**THE EAST EIGHTEEN FEET (18) OF LOT SEVEN (7) AND THE ADJOINING WEST TEN FEET (W 10) OF LOT EIGHT (8), BLOCK THREE (3), OF SOUTH GLEN ADDITION, SECTION ONE (1), A SUBDIVISION IN HARRIS COUNTY, Texas according to the map or plat thereof recorded in Volume 54, at Page 9, of the Map records of Harris County, Texas.**

**TO HAVE AND TO HOLD** the above described premises, together, and Grantee's successors and assigns forever, and Grantor does hereby bind Grantor, and Grantor's successors and assigns, to **WARRANT** and **FOREVER DEFEND**, all and singular the Lot unto Grantee and Grantee's successors and assigns, against every person lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise, and subject to the matters set forth herein.

The reservations, covenants, conditions, and restrictions set forth in this Deed shall be covenants running with the land for the benefit of Grantor and shall be binding on Grantee and Grantee's successors, heirs, executors, administrators, other legal representatives, and assigns.

When the context requires, singular nouns and pronouns include all plural.



Exhibit K

IT IS EXPRESSLY AGREED AND STIPULATED THAT A VENDORS LIEN BY **UNIQUE M. GREEN** HAS BEEN RETAINED AGAINST THE PROPERTY UNTIL THE NOTE AND INDEBTNESS HEREIN ASSUMED BY THE GRANTEE **JORGE RICARDO MEADE** HAVE BEEN FULLY PAID ACCORDING TO THE FACE, TENOR, EFFECT, AND READING THEREOF, WHEN THIS DEED SHALL BECOME ABSOLUTE AND TO ADDITIONALLY SECURE THE GRANTEES DEBT.

EXECUTED on the date of the acknowledgment hereinafter set forth, but made effective as of the 31ST day of December, 2017.

_Jorge R. Meade_

**JORGE RICARDO MEADE**

**GRANTOR: JORGE RICARDO MEAD, GRANTEE: JORGE RICARDO MEADE signature below indicates that Grantor has read, understands, agrees to, and accepts this Deed all of which shall be binding upon Grantor, their heirs, executors, administrators, successors and assigns.**

THE STATE OF TEXAS     §

                       §

COUNTY OF HARRIS     §

Before me, the undersigned authority, on this day personally appeared JORGE RICARDO MEADE, of Harris County and acknowledged that he **JORGE RICARDO MEADE** signed the foregoing as the act of self for the purposes and consideration expressed in the foregoing instrument.

Given under my hand and seal of office on the 31ST day of December, 2017.

_____
Notary Public in and for the State of Texas

CHARLES ERVIN HART JR
Notary Public, State of Texas
Comm. Expires 12-09-2020
Notary ID 13092739-0

RP-2017-547565

Grantee's **UNIQUE MICA GREEN** signature below indicates that Grantee has read, understands, agrees to, and accepts this Deed all of which shall be binding upon Grantee, their heirs, executors, administrators, successors and assigns.

**THE STATE OF TEXAS** §

§

**COUNTY OF HARRIS** §

Before me, the undersigned authority, on this day personally appeared

_LuLIQUE GREEN_ _____, of Harris County acknowledged that he **UNIQUE MICA GREEN** signed the foregoing as the act of self for the purposes and consideration expressed in the foregoing instrument.

Given under my hand and seal of office on the _13TH_ day of _DECEMBER_

20_17_.

_____
Notary Public in and for the State of Texas

> CHARLES ERVIN HART JR
> Notary Public, State of Texas
> Comm. Expires 12-09-2020
> Notary ID 13092739-0

**AFTER RECORDING RETURN TO:**
Unique M Green
1116 Elberta St
Houston, TX 77051

RP-2017-547565

UNOFFICIAL COPY

FILED FOR RECORD

1:27:52 PM

Wednesday, December 13, 2017

*Stan Stewart*

COUNTY CLERK, HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time
stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris
County Texas

Wednesday, December 13, 2017

*Stan Stewart*

COUNTY CLERK, TEXAS
HARRIS COUNTY, TEXAS

**CONSUMER FRAUD INVESTIGATION**

| | | |
|---|---|---|
| **Date: 03/12/2020** | **Consumer Fraud Inv.** | |
| **Priors:** | **Assigned:** | |
| **Statute of Limitations:** | **Pending Response:** | |
| **ACTION:**   PROACTIVE: ☐   LETTER: ☐ | **WALK IN:** ☐   **REFERRAL:** ☐ | |

| Subject/Target: | C/W: |
|---|---|
| **Unique Mica Green AKA Unique Mica Green Battle** | **Jorge R. Meade** |
| 1116 Elberta St. | 3919 Brookmeade Dr. |
| Houston, TX 77051-1954 | Houston, TX 77045 |
| **Phone:** | **Phone**: 832-438-0125 |
| | **Email**: |

**LIST PRIORS:** *closed 3-14-2018 , inv. #14-15893-MF* / 20-49519-CF

| **CHIEF SCREENING NOTES & INSTRUCTIONS:** | **DISPOSITION** |
|---|---|
| | DATE: 7/14/20 |
| | BY Maxwell |
| | ☑ Closed: Civil |
| | ☐ Closed: Insufficient Evidence |
| | ☐ Closed: No Charges Filed |
| | ☐ Closed: No Follow-up from C/W |
| | ☐ Closed: Restitution |
| | ☐ Closed: See Notes |
| | ☐ Closed: Transferred to other Division |
| | ☐ Closed: Transferred to TB |
| | ☐ DECLINED |
| | ☐ REJECTED |
| | ☐ CASE FILED |
| | ☐ FELONY |
| | ☐ MISD |

David Mitcham

First Assistant

Vivian King

Chief of Staff

Harris County District Attorney's Office

500 Jefferson Street, Suite 600

Houston, TX 77002

Harris County District Attorney

KIM K. OGG

June 28, 2020

SUMMARY REPORT

Investigator Samuel P. Maxwell

#~~18-25769CF~~ 20-49519-CF

Target:

Unique Mica Green-Battle

1116 Elberta Street

Houston, Texas 77051

Complainant:

Complainant Jorge Meade stated Ms. Unique Green fraudulently filed 2 General Warranty Deeds by forging his signature and the signature of his deceased father in order to acquire the property located at 3919 Brookmeade, Houston Texas.

Summary of Complaint:

Mr. Meade's wife passed in Houston in October 2017. The family of the deceased choose to have the remains taken to New York. The funeral arrangements were being handled by the deceased sister in New York, Diane Pollard who chose the funeral home based upon a recommendation she received here in Houston.

At which time Mr. Meade had expressed to the target and funeral director, Unique Green that he wanted to sell his home here located at 3919 Brookmeade and move to New York to be with the family. The deed to the home however was still in the name of his late father Lucius Robinson. Mr. Meade stated that Ms. Green informed him that she was not only a funeral director but a real estate agent and lawyer and she could assist him in obtaining the deed for him.

Mr. Meade stated sometime later he was contacted by Ms. Green who informed him that it had been taken care of and the deed was now in his name. Mr. Meade stated he never signed any deed documentation for Ms. Green and when he questioned Ms. Green on how she was able to obtain the deed in his name so quickly all she would respond to was that she had legal knowledge of how to handle these things and that it was all taken care of.

Mr. Meade stated Ms. Green then began pressuring him to sell the property quickly and that she would handle selling the property. Mr. Meade advised he became uncomfortable and suspicious of Ms. Green's urgency to keep him to sell and over the next two years he continually asked her for a copy of the deed. Mr. Meade stated Ms. Green was evasive to his phone calls and text messages and would only respond that he needed to urgently allow her to sell the home. Mr. Meade stated that at no point in time did Ms. Green tell him how much she would charge for her assistance in selling the property.

Mr. Meade stated in January 2020, he went to the Harris County Appraisal District Office to file for Homestead tax exemption and was then informed that both his name and Ms. Green's name was listed on the deed to the property. Mr. Meade stated he then went over to the County Clerk's office and for the first time saw that his deceased father's name had been forged on the deed transfer document.

Mr. Meade also saw that after the initial forged document was filed placing the home in his name that Ms. Green then filed a Vendor's Lien on the property by forging his signature and putting the property in both their names.

Investigation:

I spoke with Mr. Meade who confirmed that he did not sign or authorize the signatures found on both filed deeds.

I received a certified copy of death certificates belonging to the property owner and the complainant's father the late Lucius Robinson along with the death certificate of his late wife. The documents help to confirm Mr. Meade as heir to the property.

I contacted the clerk's office to determine who filed both deeds. I was advised that the deed containing Mr. Lucius Robinson's signature had been mailed in with no image of the mailing envelope captured. The deed with Mr. Meade's signature was filed at the clerk's office by Ms. Unique Green,

I sent the notary a letter via certified mail. I spoke with the notary found on both documents, Charles Ervin Jr. Mr. Ervin reviewed the documents and stated that he did notarize the documents and that he recognized his signature on the documents. Mr. Ervin also stated that Mr. Meade was present when the document was notarized. Mr. Ervin stated he recalled that Mr. Meade could not pay for funeral expenses so Mr. Meade signed the document as an agreement with Ms. Green to pay for funeral expenses and to his knowledge the funeral expenses were still outstanding. When asked if he recalls if Mr. Lucius Robinson was present when the document

was notarized Mr. Ervin stated he couldn't remember but he does remember that document being related to Mr. Meade.

When questioned as to Mr. Ervin providing the notary book he stated that he does not remember where it is as he has not used his notary stamp since about 2018. Mr. Ervin stated that his notary stamp is still in his possession and that to his knowledge no one has used his stamp without his permission. Mr. Ervin stated that his signature is distinct and that he recognized his signature.

I found Mr. Ervin's statement to lack credibility as:

Mr. Ervin contacted me from a phone number that has been linked to Mr. Green and not his directly linked to him.

Mr. Ervin stated he had not notarized documents since 2018 but during the course of the investigation documents with his notary stamp for Ms. Green was found dating as recent as May 2020.

Mr. Ervin stated he could not remember the location of his notary log which he stated he last used in 2018 but recalls details of Mr. Meade signing the document in 2017 because he was unable to pay for funeral expenses. Mr. Ervin also provided additional statements on documents alleged to have been signed by Mr. Ryan Lane. Mr. Ervin remarkably was able to provide statements about the arrest and charges facing Mr. Lane in 2020 despite being alleged to notarize the signature of Mr. Lane in 2019.

Mr. Ervin's statements appear to be coached or coerced. Mr. Ervin has yet to produce a copy of his notary log.

After speaking with Mr. Ervin, I contacted Mr. Meade who advised that no funeral expenses was outstanding to Ms. Green and that all funeral expenses was paid by his sister in law in New York.

A notarized letter was sent to the home address of Ms. Green. Upon responding to the letter Ms. Green stated she was already aware of the allegations and then went on to say that the deed was signed by Mr. Meade since he was unable to pay for funeral expenses. Ms. Green stated the signature on the document was Mr. Meade and could be examined to find that was indeed his signature. Ms. Green stated that Mr. Meade has been contacting her to borrow money and won't admit that he is only doing this because he wants money to pay the property taxes. Ms. Green

stated she has not been in trouble with law enforcement for 20 years and people see her past history and assume she is committing crimes.

After speaking with both Ms. Green, I contacted the complainant a third time who advised that he did not owe any funeral expenses to Ms. Green, and at the time of his wife passing that all funeral expenses were paid by his wife's sister in New York Ms. Diane Pollard.

I contacted Ms. Diane Pollard in New York. Ms. Pollard confirmed that she paid all funeral expenses for her late sister and that nothing was owed to Ms. Green at the time of her sister's passing. Ms. Pollard stated she would look for the related documents in regards to her sister's funeral. Ms. Pollard also advised she was a retired 25-year detective of the NYPD and could provide a sworn statement to that effect if needed. No CCH was found for Ms. Pollard.

Extraneous Information:

A secondary complainant, in this case, is Mr. Ryan Lane. Mr. Lane was actively engaged in attempting to sell the property to Ms. Green. Mr. Lane also filed a complaint that Ms. Green forged his signature on a copy of the general warranty deed for the property and filed the document with the clerk's office. This document was also alleged to be notified by Mr. Charles Ervin. Mr. Lane's credibility is involved due to the fact that he is currently involved in litigation as to whether or not the property in question belonged to him or his ex-wife. Mr. Lane is also currently charged with Solicitation to Commit Murder in which Ms. Green is the undercover operative used by the state to record Mr. Lane's solicitation attempt.

Ms. Green has numerous insurance fraud referrals that have yet to be investigated by the TX Dept. of Insurance.

Ms. Green has 4 prior convictions for Forgery Financial Instrument.

Conclusion:

After speaking with Ms. Green I contacted Mr. Meade again about the documents in question. Mr. Meade then stated to me that he did in fact sign documents but did not read the documents he signed and was unaware of what he was signing. When I asked Mr. Meade as anyone else present when he signed the document he recalled a black male similar to the notary description being present in the building when he signed the document.. Mr. Meade then recalled providing additional documents to Ms. Green relative to additional property he owned. The documents Mr. Meade stated he provided to Ms. Green coincided with statements Ms. Green provided regarding Mr. Meade's intent to sell property.

Due to Mr. Meade's conflicting statements I found that CW Meade's forgery affidavit lack merit as he admitted to me to that he did in fact sign documents related to the sale of his property but could not be certain as to what documents he signed because he did not recall what he signed.

## LENDER STATEMENT OF ACCOUNT



**TEXSTAR**
**ESCROW**

| ACCOUNT NO | 176 |
|---|---|
| STATEMENT DATE | 12/2/2019 |
| STATEMENT PERIOD | All Dates |
| PORTFOLIO BALANCE | $275,000.00 |
| PORTFOLIO YIELD | 8.000% |
| INTEREST PAID IN 2019 | $0.00 |

| LENDER |
|---|
| Healing Favor Investment, LLC<br>Ryan W. Lane, President<br>5868 Westheimer Rd, Suite 363<br>Houston TX 77057 |

Please advise us immediately of any discrepancies in the transactions or investment activity on your statement of account or if you contemplate changing your address. When making inquiries by telephone or in writing please give your account number. We urge you to keep this statement with your investment records.

### INVESTMENT PORTFOLIO AS OF 12/2/2019

| Loan Account | Borrower Name | Pct Owned | Interest Rate | Maturity Date | Term Left | Next Payment | Regular Payment | Loan Balance |
|---|---|---|---|---|---|---|---|---|
| 4630PERRY | Unique Mica Green | 100.000% | 8.000% | 2/21/2049 | 350 | 3/21/2019 | $2,017.85 | $275,000.00 |
| | Current Portfolio Yield: 8.000% | | | | | | $2,017.85 | $275,000.00 |

### ACCOUNT ACTIVITY

| Transaction Date | Check# or Reference | Loan Account | Transaction Amount | Serv. Fees | Interest | Distribution Principal | Charges | Other | Trust |
|---|---|---|---|---|---|---|---|---|---|
| ∯ = Electronic Payment | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

### CHECKS SCHEDULED TO BE PRINTED

| Transaction Date | Scheduled Date | Loan Account | Transaction Amount | Serv. Fees | Interest | Distribution Principal | Charges | Other | Trust |
|---|---|---|---|---|---|---|---|---|---|
| | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

Exhibit M

Office of Harris County District Clerk - Marilyn Burgess          https://www.hcdistrictclerk.com/edocs/public/CaseDetailsPrinting.a...

**HCDistrictclerk.com**     The State of Texas vs. GREEN, MICHAEL JAMES (SPN:          2/27/2020
01695461)

Cause: 145240301010     CDI: 3     Court: 232

## CRIMINAL HISTORY

| Case(Cause)Nbr / Status | Defendant | Filed / Booked | Ct | Defendant Status | Disposition | Bond Amt | Type of Action / Offense | Next Setting |
|---|---|---|---|---|---|---|---|---|
| 145240301010-3Dismissed(D) | GREEN, MICHAEL JAMES | 12/22/2014 I | 232 | Disposed(D) | Dismissed(DISM)7/5/2016 | $15,000.00 | TAMPERING WITH RECORD (F) | 7/5/2016 |
| 135092101010-3Dismissed(D) | GREEN, MICHAEL JAMES | 6/12/2012 I 6/19/2012 | 178 | Disposed(D) | Dismissed(DISM)12/20/2012 | $5,000.00 | VIOL. OF PROTECTIVE ORDER ENH. (F) | 12/20/2012 |
| 134413401010-3Dismissed(D) | GREEN, MICHAEL | 4/16/2012 I 4/18/2012 | 178 | Disposed(D) | Dismissed(DISM)12/20/2012 | $30,000.00 | AGG ASSAULT-FAMILY MEMBER (F) | 12/20/2012 |
| 126618701010-2Complete(C) | GREEN, MICHAEL JAMES | 10/26/2004 I 10/29/2004 | 2 | Disposed(D) | Disposed(DISP)11/19/2004 | $5,000.00 | EVADE DETENTION (M) | 11/19/2004 |
| 099821301010-3Complete(C) | GREEN, MICHAEL JAMES | 8/22/2004 I 11/1/2004 | 177 | Disposed(D) | Disposed(DISP)3/10/2005 | $20,000.00 | THEFT >=$500 <$1,500 (M) | 3/10/2005 |
| 111609701010-2Complete(C) | GREEN, MICHAEL JAMES | 5/16/2002 I 11/27/2002 | 10 | Disposed(D) | Disposed(DISP)1/22/2003 | | THEFT-$20-200-CHECK (M) | 1/22/2003 |
| 106293301010-2Complete(C) | GREEN, MICHAEL JAMES | 6/6/2001 I 6/28/2001 | 1 | Disposed(D) | Disposed(DISP)7/5/2001 | $5,000.00 | ASSAULT-FAMILY MEMBER (M) | 7/5/2001 |
| 079961601010-3Complete(C) | GREEN, MICHAEL JAMES | 12/4/1998 I 12/10/1998 | 177 | Disposed(D) | Disposed(DISP)3/22/1999 | $15,000.00 | FORGERY (F) | 3/22/1999 |
| 079961701010-3Complete(C) | GREEN, MICHAEL JAMES | 12/4/1998 I 12/6/1998 | 177 | Disposed(D) | Disposed(DISP)3/22/1999 | $15,000.00 | ASSAULT (M) | 3/22/1999 |
| 078435501010-3Complete(C) | GREEN, MICHAEL JAMES | 5/30/1998 I 12/21/1998 | 177 | Disposed(D) | Disposed(DISP)3/22/1999 | $15,000.00 | FORGERY (F) | 3/22/1999 |

2/27/2020, 5:15 PM

### 130775101010 - The State of Texas vs. GREEN, THADDEUS UNIQUE (Court 179)

| Summary | Appeals | Bonds | Activities | Bookings/Holds | Criminal History | Witness | Parties |
|---|---|---|---|---|---|---|---|
| Restitu/Copies Fees | Settings | Court Registry | Related Cases | Aliases | Payment Plan | Images | |

#### Case (Cause) Summary

| | |
|---|---|
| **Case** | 130775101010 - 3 |
| **File Date** | 5/26/2011 |
| **Case (Cause) Status** | Complete |
| **Offense** | AGG ROBBERY-DEADLY WPN |
| **Last Instrument Filed** | Felony Indictment |
| **Case Disposition** | Disposed |
| **Case Completion Date** | 12/19/2011 |
| **Defendant Status** | Disposed |
| **Bond Amount** | $30,000.00 |
| **Next/Last Setting Date** | 12/19/2011 |

**DA DEFENSE PORTAL** -- by clicking on this link, you will be leaving the District Clerk site and going to the District Attorney site.

#### Defendant Details

| | | | |
|---|---|---|---|
| **Race/Sex** | B / M | **Height/Weight** | 6'01 / 216 LBS |
| **Eyes** | BRO | | |
| **Skin** | DBR | **Hair** | BLK |
| **DOB** | 11/6/1992 | **Build** | MED |
| **US Citizen** | Yes | **In Custody** | N |
| | | **Place Of Birth** | TX |
| **Address** | | 913 3RD ST., LAPORTE, TX 77571 | |
| **Markings** | | | |

#### The Current Presiding Judge

| | |
|---|---|
| **Current Court** | 179th |
| **Address** | 1201 Franklin (Floor: 18) Houston, TX 77002 Phone:7137556341 |
| **JudgeName** | Ana Martinez |
| **Court Type** | Criminal |

[Z1A]

 **130775101010 - The State of Texas vs. GREEN, THADDEUS UNIQUE (Court 179)**

Print All
*(non-financial)*

| Summary | Appeals | Bonds | Activities | Bookings/Holds | Criminal History | Witness | Parties |
| Restitu/Copies Fees | Settings | Court Registry | Related Cases | Aliases | Payment Plan | Images | |

⟳ Click column headings to sort. Click again to toggle direction.

Print Activities

| Date | Type | Description | SNU/CFI |
|------|------|-------------|---------|
| 04/24/2012 | MOTIONS | 2 IMPOSE COM SUPERVS SNU: 998 04/24/12 | |
| 04/24/2012 | MOTIONS | FILED CFI 179 04/24/12 | |
| 12/19/2011 | SENTENCED IN | COURT 179 STARTING 12/19/11 SNU: 999 12/19/11 | |
| 12/19/2011 | SENTENCE TO | 6 YEARS CONFINEMENT 12/19/11 | |
| 12/19/2011 | DELIVERY ORDER | RETURNED EXECUTED 01/31/12 SNU: 999 02/01/12 | |
| 12/19/2011 | JUDGMENT | CONVICTION SNU: 999 12/19/11 | |
| 12/19/2011 | JUDGMENT | GUILTY PLEA-NO JURY 12/19/11 | |
| 12/19/2011 | JUDG OFFENSE | AGG ROBBERY-DEADLY WPN LEVEL F1 12/19/11 | |
| 12/19/2011 | PENALTY | TDC AMOUNT 6 YEARS 12/19/11 | |
| 10/24/2011 | MOTIONS | NTC INT DESTROY EVID SNU: 999 10/24/11 | |
| 10/24/2011 | MOTIONS | FILED CFI 179 10/24/11 | |
| 07/06/2011 | GRAND JURY ACTION | FID 07/06/11 G183 SNU: 999 07/06/11 | |
| 07/06/2011 | GRAND JURY ACTION ROTATION CRT 179 | OFF FREQ BND $30000 07/06/11 | |
| 07/06/2011 | GRAND JURY ACTION | OFFENSE AGG ROBBERY-DEADLY WPN LEVEL F1 07/06/11 | |
| 07/06/2011 | ORI | PASADENA POLICE DEPA OFFENSE NO: 1110058 07/06/11 | |
| 06/03/2011 | SERVICE ACTIVITY | BY PLACING DEF IN JAIL ON 05/28/11 06/03/11 | |
| 06/03/2011 | RECEIPTED BY CLERK | 06/03/11 | |
| 06/02/2011 | BOND FILED | CRT 179 TIME 0416 TYPE SURETY 12/19/11 | |
| 06/02/2011 | BOND MADE | AMT $30000 DATE 06/01/11 RCPT# 12/19/11 | |
| 06/02/2011 | BONDSMAN | AS&CI-MUHARIB, WISAM A 12/19/11 | |
| 05/28/2011 | C87 ACTIVITY | WARN GIVEN STATUS J CFI 179 SNU: 997 05/28/11 | |
| 05/26/2011 | COMPLAINT FILED | 1036 179 AGG ROBBERY-DEADLY WPN LEVEL F1 05/26/11 | |
| 05/26/2011 | BOND SET | $30000 SNU: 999 05/26/11 | |
| 05/26/2011 | REVIEWED BY | STEPHENSON, JONATHAN D. 05/26/11 | |
| 05/26/2011 | ORI | PASADENA POLICE DEPA OFFENSE NO: 1110058 05/26/11 | |
| 05/26/2011 | COMPLAINANT | BITTNER, DANIEL PET 05/26/11 | |
| 05/26/2011 | WARI | TIME 1210 AMOUNT $30000 SNU: 999 06/03/11 | |
| 05/26/2011 | ACKNOWLEDGED BY SHERIFF | 06/03/11 | |
| 05/26/2011 | C87 ACTIVITY | PC FOUND STATUS CFI 179 SNU: 999 05/26/11 | |
| 05/26/2011 | C87 ACTIVITY | PROBABLE CAUSE FOUND 05/26/11 | |

[Z1A]

Office of Harris County District Clerk - Marilyn Burgess | Search O...          https://www.hcdistrictclerk.com/edocs/public/Search.aspx?Tab=tabCivil

Welcome ██████████ Log Out                                               Custom Search                    ████

| Home | Civil | Family | Criminal | Billing | Online Services | HR | About Us | Court Registry | Copies | Jury | FAQs | ██ | [WS7] |

(WS7) Home > Online Services > Search Our Records and Documents                    Houston, TX | February 28, 2020

## Quick Links

🗄 Costs and Fees

🖩 Child Support Records

🔧 Jury Services

📇 Search Our Records & Documents

📓 Background Checks

📚 eSubpoena

📖 e-Filing

📋 Forms

📜 Government Agencies

📜 Historical Documents

📧 How to Contact Us

📑 Passport Information

📇 District Clerk Biography

📚 Order History

📇 Update Address / Information

✒ Change Password

## Contact Information

Civil Courthouse
201 Caroline
Houston, TX 77002  MAP

## Mailing Address:

Harris County District Clerk
P.O. Box 4651
Houston, Texas 77210

# Search Results

**View Mobile Version**

Print Result(s)                                                               Print Result(s)

Click on the style of the case (cause) to view detailed information for that case (cause) such as court costs, documents, case details, parties, and more. Only public cases will be shown, however no family documents will be available for review. No federal or other County's records, or Justice of the Peace or other Municipalities Class C Misdemeanor will be searched.

📠 Click the icon to file an eSubpoena for all Criminal District courts.

New Search

Total records returned from search is 16.

Page 1 of 1  1

| Case (Cause) Number | Style | File Date | Court | Case Region | Type Of Action / Offense |
|---|---|---|---|---|---|
| 202007481-7 Active - Civil | GREEN, UNIQUE MICA vs. REGIONS BANK | 2/3/2020 | 055 | Civil | OTHER CIVIL |
| 202000236-7 Disposed (Final) | GREEN, UNIQUE MICA vs. AMERIHOME MORTGAGE COMPANY | 1/3/2020 | 334 | Civil | Foreclosure - Other |
| 201928779-7 Ready Docket | GREEN, JANEVELYN vs. ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY | 4/24/2019 | 189 | Civil | Insurance |
| 201925015-7 Active - Civil | GREEN, UNIQUE vs. YAMM PROPERTIES LLC | 4/8/2019 | 334 | Civil | OTHER CIVIL |
| 201889498-7 Disposed (Final) | GREEN, UNIQUE MICA vs. INRE-TERMINATION | 12/18/2018 | 308 | Family | Termination of Parental Rights |
| 201879647-7 Ready Docket | LANE, RYAN W vs. HEALING FAVOR INVESTMENTS LLC | 11/2/2018 | 295 | Civil | Other Contract |
| 201867062-7 Case On Appeal - Civil | GREEN, UNIQUE M vs. ALLSTATE FIRE & CASUALTY INSURANCE COMPANY | 9/24/2018 | 295 | Civil | OTHER CIVIL |
| 201858998-7 Disposed (Final) | GREEN, UNIQUE MICA vs. ALLSTATE FIRE & CASUALTY INSURANCE COMPANY | 8/30/2018 | 151 | Civil | OTHER CIVIL |
| 201845356-7 Disposed (Final) | GREEN, UNIQUE vs. FEDERAL NATIONAL MORTGAGE ASSOCIATION | 7/9/2018 | 215 | Civil | OTHER CIVIL |
| 201633636-7 Disposed (Final) | GREEN, UNIQUE M vs. CHERESTAL, ORLY ANN | 5/23/2016 | 308 | Family | Custody or Visitation |
| 201536481-7 Case On Appeal - Civil | ESTATE OF EDNA L HUBBARD vs. FEDERAL NATIONAL MORTGAGE ASSOCIATION (A CORPORATI | 6/24/2015 | 269 | Civil | Foreclosure - Other |
| 201362821-7 Disposed (Final) | GREEN, UNIQUE M vs. PARKER, ELTON | 10/17/2013 | 127 | Civil | BREACH OF CONTRACT |
| 201362835-7 Disposed (Final) | GREEN, UNIQUE M vs. EARLS, ERICK | 10/17/2013 | 152 | Civil | BREACH OF CONTRACT |
| 201328941-7 Disposed (Final) | GREEN, UNIQUE M vs. MCCHRISTIAN, SELENA E | 5/15/2013 | 080 | Civil | OTHER CIVIL |

Exhibit S

1 of 2                                                                              2/28/2020, 4:41 AM

# Real Property

**File Number**

**Film Code**

**Date (From)**

MM/DD/YYYY

**Date (To)**

MM/DD/YYYY

**Grantor**

Last Name First - No Punctuation

**Grantee**

green unique

**Trustee**

Last Name First - No Punctuation

**Description**

**Instrument Type**

A/J

**Volume and Page**

**Section**

**Lot**

**Block**

SEARCH    CLEAR

| File Number | File Date | Type Vol Pg | Names | Legal Description | Pgs | Film Code |
|---|---|---|---|---|---|---|
| RP-2021-275608 | 05/19/2021 | A/J | **Grantor:** ALLSTATE INDEMNITY COMPANY **Grantee:** GREEN UNIQUE | **Comment:** SEE INSTRUMENT | 2 | RP-2021-275608 |
| RP-2021-275607 | 05/19/2021 | A/J | **Grantor:** ALLSTATE INDEMNITY COMPANY **Grantee:** GREEN UNIQUE | **Comment:** SEE INSTRUMENT | 2 | RP-2021-275607 |

| File Number | File Date | Type Vol Pg | Names | Legal Description | Pgs | Film Code |
|---|---|---|---|---|---|---|
| RP-2021-275606 | 05/19/2021 | A/J | **Grantor:** ALLSTATE INDEMNITY COMPANY<br>**Grantee:** GREEN UNIQUE | **Comment:** SEE INSTRUMENT | 2 | RP-2021-275606 |
| RP-2018-257833 | 06/11/2018 | A/J | **Grantor:** WILBERT FUNERAL SERVICES INC<br>**Grantee:** A COMMUNITY FUNERAL HOME<br>**Grantee:** GREEN MICHAEL<br>**Grantee:** GREEN UNIQUE | **Comment:** SEE INSTRUMENT | 2 | RP-2018-257833 |

Case 22-30587   Document 27-2   Filed in TXSB on 04/08/22   Page 125 of 139

| File Number | File Date | Type Vol Pg | Names | Legal Description | Pgs | Film Code |
|---|---|---|---|---|---|---|
| RP-2017-544773 | 12/12/2017 | A/J | **Grantor:** CITY OF HOUSTON<br>**Grantor:** HARRIS COUNTY<br>**Grantor:** HARRIS COUNTY DEPARTMENT OF EDUCATION<br>**Grantor:** HARRIS COUNTY FLOOD CONTROL DISTRICT<br>**Grantor:** HARRIS COUNTY HOSPITAL DISTRICT<br>**Grantor:** HOUSTON COMMUNITY COLLEGE SYSTEM<br>**Grantor:** HOUSTON INDEPENDENT SCHOOL DISTRICT<br>**Grantor:** HOUSTON ISD<br>**Grantor:** PORT OF HOUSTON AUTHORITY<br>**Grantee:** GREEN UNIQUE MICA | **Comment:** SEE INSTRUMENT | 2 | RP-2017-544773 |
| 20150316010 | 07/17/2015 | A/J | **Grantor:** BROWN CHARLIE<br>**Grantee:** GREEN UNIQUE M ETAL<br>**Grantee:** NALENDERS INC ETAL | **Desc:** DKT 2014-11250 | 2 | ER071752498 |

| File Number | File Date | Type Vol Pg | Names | Legal Description | Pgs | Film Code |
|---|---|---|---|---|---|---|
| 20140377167 | 08/22/2014 | A/J | **Grantor:** FIRST DATA MERCHANT SERVICES<br>**Grantee:** GREEN MICA ETAL<br>**Grantee:** GREEN U M ETAL<br>**Grantee:** GREEN UNIQUE ETAL<br>**Grantee:** GREEN UNIQUE M ETAL<br>**Grantee:** GREEN UNIQUE MICA ETAL<br>**Grantee:** OST PET SHOP & FEED ETAL<br>**Grantee:** OST PET SHOP ETAL<br>**Grantee:** PHILLIPS D L ETAL<br>**Grantee:** PHILLIPS DONNA ETAL<br>**Grantee:** PHILLIPS DONNA L ETAL<br>**Grantee:** STJULIAN-PHILLIPS D L ETAL<br>**Grantee:** STJULIAN-PHILLIPS DONNA ETAL<br>**Grantee:** STJULIAN-PHILLIPS DONNA L ETAL | **Desc:** DKT 1040683 | 2 | RP092531298 |

THE STATE OF TEXAS
VS.
**UNIQUE BATTLE-GREEN**
1116 ELBERTA
HOUSTON TX 77051

SPN: 01695461
DOB: B F 08/09/1980
DATE PREPARED: 05/26/2021

D.A. LOG NUMBER: 2730531
CJIS TRACKING NO.:
AGENCY: HPD
O/R NO: 151012020
ARREST DATE: TO BE

FILED
Marilyn Burgess
District Clerk
MAY 26 2021
Time: 12.32
Harris County, Texas
By _____ Deputy
N/O

NCIC CODE: 4802 29

RELATED CASES:

FELONY CHARGE: **TAMPERING WITH GOVERNMENTAL RECORD**

CAUSE NO: *1724643*
HARRIS COUNTY DISTRICT COURT NO: 263 179
FIRST SETTING DATE:

COURT ORDERED BAIL: **TO BE SET AT MAGISTRATION**
PRIOR CAUSE NO:
CHARGE SEQ NUM: 1

---

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

Before me, the undersigned Assistant District Attorney of Harris County, Texas, this day appeared the undersigned affiant, who under oath says that he has good reason to believe and does believe that in Harris County, Texas, UNIQUE BATTLE-GREEN also known as MICHAEL GREEN, hereafter styled the Defendant, heretofore on or about October 10, 2018, did then and there unlawfully, attached hereto as Exhibit A with intent that it be used unlawfully, possess a governmental record, namely a application for texas title.

Probable Cause
Affiant, Sergeant M. Hewitt, is a certified peace officer employed as a detective with the Houston Police Department (hereinafter "HPD") Auto Theft Division and currently assigned to the Houston Auto Crimes Task Force. Affiant believes and has good reason to believe and does believe that Unique Green also known as Michael Green, a black female with a date of birth of August 9, 1980 and hereafter "Defendant," committed the felony offense of Tampering with a Government Document on or about October 10, 2018 in Harris County, Texas.

Affiant bases his belief on the following:

On Wednesday, September 2, 2020, Affiant, Sergeant M. J. Hewitt spoke with Mrs. Shawntonya Lavinghousez who advised that she was the owner of a white 2017 Jeep Wrangler with a black hard top and Vehicle Identification Number (VIN) 1C4BJWDG3HL645252. Mrs. Lavinghousez reported the vehicle stolen to Deputy K. L. Daniels with Harris County Constable Office Precinct 7 on August 31, 2018; the 2017 Jeep Wrangler was listed as stolen under case #180800133. Mrs. Lavinghousez hired private investigator John Peoples to assist her in locating the vehicle. Mrs. Lavinghousez advised me that a relative who wanted to remain anonymous saw Unique Green driving the listed stolen 2017 Jeep Wrangler approximately one year after it was reported stolen.

I spoke with John Peoples, a retired DEA agent who I find to be credible and reliable, and he provided me with VIN 1C4HJWEG4DL641312 that he believes is on the stolen 2017 Jeep Wrangler. Through my training and experience, I know that suspects will switch the visible VIN of a vehicle in order for it to be more difficult to detect as stolen. I conducted an inquiry on the VIN given to me by John Peoples and found that this was for a white 2013 Jeep Wrangler and is registered to Unique Green, also known as Michael Green, and identified through her Texas Driver's License and hereinafter referred to as "Defendant." I am personally familiar with the Defendant who I have investigated before for a scheme in which she reported vehicles stolen after selling them for cash. Unique Green's driver's license identifies her as a black female, but she is listed as a black male with the name of Michael Green on the Harris County District Attorney's Office website.

On Monday, March 15, 2021, I discovered that Department of Public Safety (DPS) Special Agent D. Willis had recovered the 2017 Jeep Wrangler with VIN 1C4BJWDG3HL645252 on October 27, 2020. According to Agent Willis, the public VIN plate had been removed from the 2017 Jeep Wrangler. Agent Willis also told me that the Defendant had contacted him about the 2017 Jeep Wrangler at her place of business and requested that he come and recover the Jeep. Agent Willis recovered the 2017 Jeep Wrangler with VIN 1C4BJWDG3HL645252 at 4630 Perry Street, which is a funeral home that the Defendant works at and manages.

I spoke with National Insurance Crime Bureau Special Agent A. Cortez, who I know to be a credible and reliable person, and asked him to the check the 2017 Jeep Wrangler with VIN 1C4BJWDG3HL645252 that had been taken to Copart located at 1655 Rankin for any paperwork that may be inside. Agent Cortez called me and advised that he found insurance papers in the 2017 Jeep Wrangler with the Defendant's name. Agent Cortez gave me the insurance papers and I observed that the Defendant obtained insurance on a 2013 Jeep

D.A. LOG NUMBER: 2730531
DEFENDANT: **UNIQUE BATTLE-GREEN**

RECORDER'S MEMORANDUM
This Instrument is of poor quality
at the time of imaging

Certified Document Number: 96065550 - Page 1 of 4

1724643 - 263 179

Wrangler with VIN 1C4HJWEG4DL641312 under GEICO policy #4557-72-90-29. The insurance card showed the effective date November 12, 2018 through March 23, 2019. I conducted an second inquiry on VIN 1C4HJWEG4DL641312 and found that the 2013 Jeep Wrangler was listed as stolen with Burleson County Sherriff's Office under their case #2100003150.

I contacted Lieutenant T. Davis with Burleson County Sheriff's Office, who I found credible and reliable, and he emailed me a copy of their report. I reviewed his report and found that the Defendant had reported a White 2013 Jeep Wrangler stolen on March 28, 2021. I conducted a Title History and Vehicle Inspection report on the 2013 Jeep Wrangler. I found that the 2013 Jeep Wrangler with VIN 1C4HJWEG4DL641312 was a black (not white) Jeep Wrangler, and David Ally with DNA Auto Sales had bought the salvage on October 15, 2020 for $2,000.00. I spoke with David Ally and he stated that he had sold the salvage to a Unique Green who he described a black male but was dressed like a woman. I met with David Ally, who I identified by Texas Driver's License and who I found to be credible and reliable, and he stated that Unique Green had contacted him about buying a salvage jeep because she wanted parts off of it. I completed a photo array using the Harris County District Attorney's office website and the Defendant was randomly selected by the computer placing the Defendant in the number two position. Sergeant Monte presented the photo spread to the witness David Ally, and he tentatively selected the number two position; he stated that the Defendant was heavier in the picture but he believed that was the person who he sold the salvaged 2013 black Jeep Wrangler to.

I reviewed the title history for the 2013 Jeep Wrangler and found that the Defendant had filled out Texas Department of Motor Vehicle (TXDMV) form 130-U for Application for Texas Title and/or Registration. The form was dated October 10, 2020, which was prior to Mr. David Ally purchasing the 2013 Jeep Wrangler from Insurance Auto Auctions, and therefore could not have been in the Defendant's possession. The form had Mr. David Ally signature; I showed him the form and he advised me that was not his signature, and he never signed the form. I also located TXDMV form VTR-61 for Rebuilt Vehicle Statement where the Defendant's name was on and dated October 15, 2020, which is the date that Mr. David Ally had purchased the 2013 salvaged Jeep Wrangler. The form indicated that the work performed was replacing the front fender and front bumper. I reviewed the pictures of the salvaged 2013 Jeep Wrangler which showed it to be black and had extensive damage all over. Through my training and experience with auto theft and vehicles generally, I know that this vehicle was too damaged to have simply repaired the fender and front bumper to get it in working condition and to pass an inspection.

I then compared the signatures on both of the TXDMV forms to the Defendant's signature on her driver's license and found both to be the same. I found through the vehicle inspection history that the 2013 Jeep Wrangler with VIN 1C4HJWEG4DL641312 had two inspections completed on it. The first was on October 19, 2018, where the mileage was recorded as 56,874. The second inspection was conducted on November 23, 2019, where the personalized license plate was listed as ITSHER. The license plate is registered to the Defendant for the 2013 Jeep Wrangler with VIN 1C4HJWEG4DL641312. The mileage listed was 17,097 which conflicts with the first inspection mileage noted. I spoke with DPS Special Agent Verdeja who regulates vehicle inspection stations and provided me with additional information on the inspections. The inspection conducted at Hicks Services II on November 23, 2019 showed the entered VIN as 1C4HJWEG4DL641312; however, the EVIN was 1C4BJWDG3HL645252. This is the VIN that the computer read once it was hooked up to the 2013 Jeep Wrangler, and this is the VIN of the stolen 2017 Jeep Wrangler. I was unable to locate the 2013 Jeep Wrangler at the time of this investigation.

Based on the above investigation, my training and experience with auto theft, I believe that the Defendant had possession of Mrs. Lavinghousez's white 2017 Jeep Wrangler for years. This is based on the fact that insurance papers found in the 2017 Jeep were in the Defendant's name. When the Defendant no longer had need for the vehicle or wanted to get rid of it, the Defendant began a complex scheme to attempt to hide the fact that she had possession of it. The Defendant bought the salvaged black 2013 Jeep Wrangler and used the VIN from that vehicle to attempt to conceal the true VIN of the stolen 2017 Jeep. Prior to purchasing the salvage vehicle, the Defendant filled out the application for Texas Title. On the same day the Defendant purchased the salvage vehicle, the stolen Jeep was recovered at the Defendant's place of work and was reported to police. This was only a couple of weeks after the Defendant bought the 2013 salvaged Jeep from David Ally.

Pending Cases - Fort Bend CO SO:
Case #21-DCR-094177 = Forgery Financial Instrument - D-268 - PENDING
Case #21-DCR-094178 = Tamper W/Gov. Doc        - D-268 - PENDING

D.A. LOG NUMBER: 2730531
DEFENDANT: **UNIQUE BATTLE-GREEN**                              Page 2 of 3

Certified Document Number: 96065550 - Page 2 of 4

1724643 - 179

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Signed and sworn by me on ___5/26/21___

_____
AFFIANT

Duly attested by me on ___5/26/21___

_____
Assistant District Attorney
Harris County District Attorney's Office
TBC No.

_____
Witness (Peace Officer)

DARREN A SCHLOSSER 109624
Witness Printed name & Badge or Payroll number

COMPLAINT

D.A. LOG NUMBER: 2730531
DEFENDANT: **UNIQUE BATTLE-GREEN**

Page 3 of 3

Certified Document Number: 96065550 - Page 3 of 4

EXHIBIT A

# Application for Texas Title and/or Registration

1724643 - 263 179
1724643 - 263

| Applying for (please check one): | | | | | County: | 101 |
|---|---|---|---|---|---|---|
| ☒ Title & Registration   ☐ Title Only   ☐ Registration Purposes Only   ☐ Nontitle Registration | | | | | **TAX OFFICE USE ONLY** 145405 | |

For a corrected title or registration, check reason.
☐ Vehicle Description   ☐ Add/Remove Lien   ☐ Other: _____

Doc #: _____
☐ SPV   ☐ Appraisal Value $ _____

| 1 Vehicle Identification Number | 2. Year | 3. Make | 4. Body Style | 5 Model | 6 Major Color | 7 Minor Color |
|---|---|---|---|---|---|---|
| **1C4HJWEG4DL641312** | **2013** | **JEEP** | **LL** | **WRAN** | **WHITE** | |

| 8 Texas License Plate No | 9. Odometer Reading (no tenths) | 10. This is the Actual Mileage unless the mileage is: | 11 Empty Weight | 12 Carrying Capacity (if any) |
|---|---|---|---|---|
| | **56874** | ☐ Not Actual   ☐ Exceeds Mechanical Limits   ☐ Exempt | | |

| 13 Applicant Type | | | | | 14 Applicant Photo ID Number or FEIN/EIN |
|---|---|---|---|---|---|
| ☒ Individual   ☐ Business   ☐ Government   ☐ Trust   ☐ Non-Profit | | | | | **19743767** |

15. ID Type   ☒ U.S. Driver License/ID Card (issued by: **TEXAS** )   ☐ NATO ID   ☐ U.S. Dept. of State ID
☐ Passport (issued by: _____ )   ☐ U.S. Military ID   ☐ U.S. Dept. of Homeland Security ID
☐ U.S. Citizenship & Immigration Services/DOJ ID   ☐ Other Military Status of Forces Photo ID

| 16. Applicant First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| **UNIQUE** | **MICA** | **GREEN** | |

| 17. Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| 18. Applicant Mailing Address | City | State | Zip | 19 Owner County of Residence |
|---|---|---|---|---|
| **1116 ELBERTA ST** | **HOUSTON** | **TEXAS** | **77051** | **HARRIS** |

| 20 Previous Owner Name (or Entity Name) | City | State | 21 Dealer GDN (if applicable) | 22. Unit No (if applicable) |
|---|---|---|---|---|
| **DNA AUTO SALES** | **HOUSTON   TEXAS** | | | |

| 23 Renewal Recipient First Name (or Entity Name) (if different) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| 24 Renewal Notice Mailing Address (if different) | City | State | Zip |
|---|---|---|---|
| | | | |

| 25. Applicant Phone Number (optional) | 26. Email (optional) | 27. Registration Renewal eReminder |
|---|---|---|
| | | ☐ Yes (Provide Email in #26) |

| 28 Vehicle Location Address (if different) | City | State | Zip |
|---|---|---|---|
| | | | |

| 29 Multiple (Additional) Liens | 30 Electronic Title Request | 31 Certified/eTitle Lienholder ID Number (if any) | 32. First Lien Date (if any) |
|---|---|---|---|
| ☐ Yes (Attach Form VTR-267) | ☐ Yes (Cannot check #29) | | |

| 33. First Lienholder Name (if any) | Mailing Address | City | State | Zip |
|---|---|---|---|---|
| | | | | |

**MOTOR VEHICLE TAX STATEMENT**

34. Check only if applicable.
☐ I hold Motor Vehicle Retailer's (Rental) Permit No. _____ and will satisfy the minimum tax liability (V.A.T.S., Tax Code §152.046(c))
☐ I am a dealer or lessor and qualify to take the Fair Market Value Deduction (V.A.T.S., Tax Code, §152.002(c)) GDN or Lessor Number _____

| 35. Trade-In (if any)   Year   Make   Vehicle Identification Number | 36. Additional Trade-In(s) |
|---|---|
| ☐ Yes (Complete) | ☐ Yes |

**SALES AND USE TAX COMPUTATION**

37. Check only if applicable.
☐ (a) Sales Price ($ _____ rebate has been deducted)   $ _____
 (b) Less Trade-in Amount, described in Item 35 above   $ ( _____ )
 (c) For Dealers/Lessors/Rental ONLY — Fair Market Value
    Deduction, described in Item 35 above   $ ( _____ )
 (d) Taxable Amount (Item a minus Item b or Item c)   $ _____
 (e) 6.25% Tax on Taxable Amount (Multiply Item d by .0625)   $ _____
 (f) Late Tax Payment Penalty ☐ 5% or ☐ 10%   $ _____
 (g) Tax Paid to _____ (STATE)   $ _____
 (h) AMOUNT OF TAX AND PENALTY DUE
    (Item e plus Item f minus Item g)   $ _____

☐ $90 New Resident Tax — (Previous State) _____
☐ $5 Even Trade Tax
☐ $10 Gift Tax — Use Comptroller Form 14-317
☒ $65 Rebuilt Salvage Fee
☐ 2.5% Emissions Fee (Diesel Vehicles 1996 and Older > 14,000 lbs.) _____
☐ 1% Emissions Fee (Diesel Vehicles 1997 and Newer > 14,000 lbs.) _____
☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because **REBUILT BY OWNER**
☒ $28 or $33 Application Fee for Texas Title
 (Contact your county tax assessor-collector for the correct fee.)

**CERTIFICATION – State law makes falsifying information a third degree felony**

I hereby certify all statements in this document are true and correct to the best of my knowledge and belief, and I am eligible for title and/or registration (as applicable)

| Signature(s) of Seller(s), Donor(s), or Trader(s) | **DAVID ALLY** Printed Name(s) (Same as Signature(s)) | **10/10/2018** Date |
|---|---|---|
| Signature of Applicant/Owner | **UNIQUE MICA GREEN** Printed Name (Same as Signature) | **10/10/2018** Date |
| Signature(s) of Additional Applicant(s)/Owner(s) | Printed Name(s) (Same as Signature(s)) | Date |

Certified Document Number: 96065550 - Page 4 of 4

Form 130-U Rev 08/16          Form available online at www.TxDMV.gov          Page 1 of 2



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   May 27, 2021

Certified Document Number:        96065550 Total Pages:  4

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

 **078435501010 - The State of Texas vs. GREEN, MICHAEL JAMES (Court 177)**

Print All
*(non-financial)*

| Summary | Appeals | Bonds | Activities | Bookings/Holds | Criminal History | Witness | Parties |
|---|---|---|---|---|---|---|---|
| Restitu/Copies Fees | Settings | Court Registry | Related Cases | Aliases | Payment Plan | Images | |

Click column headings to sort. Click again to toggle direction.

Print Aliases

| Defendant Alias | True Name | Race | Sex | DOB | SPN |
|---|---|---|---|---|---|
| BATTLE-GREEN, UNIQUE | | B | M | 8/9/1980 | 01695461 |
| BATTLE-GREEN, UNIQUE M. | | B | M | 8/9/1980 | 01695461 |
| BATTLE-GREEN, UNIQUE MICA | | B | M | 8/9/1980 | 01695461 |
| GREEN, MICHAEL | | B | M | 8/9/1980 | 01695461 |
| GREEN, MICHAEL J | | B | M | 8/9/1980 | 01695461 |
| GREEN, MICHAEL JAMES | Yes | B | M | 8/9/1980 | 01695461 |

Skip to Main Content Logout My Account Search Menu New Criminal Search Refine Search Back          Location : Fort Bend   Images Help

# REGISTER OF ACTIONS
## CASE NO. 02-DCR-036014

| The State of Texas vs Michael James Green | § | Case Type: | **Adult Felony - Filed by Indictment** |
|---|---|---|---|
| | § | Date Filed: | **03/11/2002** |
| | § | Location: | **400th District Court** |
| | § | Other: | **036014** |
| | § | | |

---

### PARTY INFORMATION

| | | | **Attorneys** |
|---|---|---|---|
| **Defendant** | **Green, Michael James** | Female Black | **LARRY E THOMAS** |
| | HOUSTON, TX 77033 | 5' 9", 178 lbs | *Court Appointed* |
| | | | 281-437-6753(W) |
| | | | |
| **State** | **State of Texas** | | **Shelly Dawn Strimple** |
| | | | 254-933-5215(H) |

---

### CHARGE INFORMATION

| Charges: Green, Michael James | Statute | Level | Date |
|---|---|---|---|
| 1.  FORGERY / FELONY-SJF | 32.21(D) PC | State Jail Felony | 01/05/2002 |

---

### EVENTS & ORDERS OF THE COURT

**DISPOSITIONS**

06/14/2002 | **Judgment** (Judicial Officer: Vacek, Clifford J)
　　　　1. FORGERY / FELONY-SJF
　　　　　　Convicted

06/14/2002 | **Plea** (Judicial Officer: Vacek, Clifford J)
　　　　1. FORGERY / FELONY-SJF
　　　　　　Guilty

06/14/2002 | **Probation/Community Supervision** (Judicial Officer: Vacek, Clifford J)
　　　　1. FORGERY / FELONY-SJF
　　　　　　Comment (Sentence = 180 days , Probated to 3 years Probation Revocation Date: 08/22/2003 Probation Revocation Length: 180 DYS SJ
　　　　　　)

**OTHER EVENTS AND HEARINGS**

03/11/2002 | **Indictment**
　　　　*Bond Amount: NO BOND*
03/11/2002 | **Remarks**
　　　　*Original Case Type: Filed by Indictment*
03/14/2002 | **Warrant Issued**
05/14/2002 | **Warrant Returned Served**
06/10/2002 | **Arraignment/In Jail Hearing** (1:30 PM) (Judicial Officer Vacek, Clifford J)
06/14/2002 | **Disposition Comment**
　　　　*Conviction: Guilty Plea No Jury;*
06/14/2002 | **Conviction - Guilty Plea Nolo Contendere**
05/20/2003 | **Motion to Revoke Probation**
　　　　*Disposed Date: 08/22/2003 Disposition Type: Revoked MRP Code: MRP Attorney Name: LARRY E THOMAS Attorney Appointed Date:*
　　　　*07/02/2003 Bond Amount: NO BOND Comments: 180 DYS S/J W/150 DYS CREDIT*
05/27/2003 | **Bond Filed**
　　　　*Bond Amount: NO BOND Comments: MRP*
05/28/2003 | **Warrant Issued**
07/01/2003 | **Warrant Returned Served**
07/11/2003 | **MRP/MAG Hearing** (1:30 PM) (Judicial Officer Vacek, Clifford J)
　　　　*APPT.*
08/04/2003 | **MRP/MAG Hearing** (1:30 PM) (Judicial Officer Vacek, Clifford J)
08/08/2003 | **MRP/MAG Hearing** (1:30 PM) (Judicial Officer Vacek, Clifford J)
08/22/2003 | **Order Revoking Probation**
　　　　*180 DYS S/J W/150 DYS CREDIT Attorney: THOMAS, LARRY E Attorney Appointed Date: 20030702*
10/24/2003 | **Warrant Issued**
06/24/2004 | **Warrant Returned Served**
09/21/2004 | **Remarks**
　　　　*DATE LOCATION 8-22-03 CLOSEOUTS 8-27-03 AUG.'03 MF 10-23-03 ISSUANCE 10-24-03 AUG. 03 MF 7-7-04 MARCH 04 MFILM 09-21-04*
　　　　*DISPOSED (SHELL)*
08/29/2011 | **Images Converted from Microfilm**
　　　　*Images Converted from Microfilm*
12/24/2017 | **Shell-Imaged**
　　　　*Re-Imaged Documents*
07/18/2030 | **MRP/MAG Hearing** (1:30 PM) (Judicial Officer Vacek, Clifford J)

---

## FINANCIAL INFORMATION

---

**Defendant** Green, Michael James
Total Financial Assessment                                                                 781.00
Total Payments and Credits                                                                   8.00
**Balance Due as of 03/04/2021**                                                           **773.00**

| | | | | |
|---|---|---|---|---|
| 06/14/2002 | Transaction Assessment | | | 198.00 |
| 06/14/2002 | Transaction Assessment | | | 500.00 |
| 06/14/2002 | Transaction Assessment | | | 50.00 |
| 06/14/2002 | Transaction Assessment | | | 25.00 |
| 11/30/2017 | Transaction Assessment | | | 8.00 |
| 11/30/2017 | Mail Payment | Receipt # 2017-72460-DCLK | Green, Michael James | (8.00) |

**THE STATE OF TEXAS**

**VS**

**UNIQUE MICA GREEN-BATTLE**

Scott Carpenter
32.21(e-1)(4)
25020017

21-DCR-094177
INDI          1
Indictment
6262523

| | |
|---|---|
| D.O.B.: ███████ | DA CONTROL NO: 20-011387 |
| FELONY CHARGE: FORGERY FINANCIAL INSTRUMENT >=$2500<$30K IAT/ FS | ARREST DATE: Not arrested on this charge |
| CAUSE NO: 21-DCR-094177 | OFFENSE DATE: October 22, 2019 |
| DISTRICT COURT NO: 268th | AGENCY/AGENCY NO: FORT BEND COUNTY SHERIFF'S OFFICE/ 200041418 |
| BAIL AMOUNT: $2500.00 ROR | PRIOR CAUSE NO: |
| RELATED: TAMPER W/GOV REC-INS DOC (A)(1,3,4,6) | CO-DEF: |

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Fort Bend County, Texas, presents in the District Court of Fort Bend County, Texas, that in Fort Bend County, Texas, **UNIQUE MICA GREEN-BATTLE**, hereafter styled the Defendant, heretofore on or about **October 22, 2019**, did, unlawfully and with the intent to defraud and harm another, possess a forged writing, namely, a lien release, and the Defendant possessed the writing with the intent to pass the writing and with knowledge that the writing was forged, and the value of the property or service the Defendant obtained or attempted to obtain was $2,500 or more but less than $30,000.

AGAINST THE PEACE AND DIGNITY OF THE STATE.

FILED

2021 JAN 11 PM 3: 48

_Beverly McGrew Walker_
CLERK DISTRICT COURT
FORT BEND CO., TX

_____
FOREMAN OF THE GRAND JURY

INDICTMENT   (ORIGINAL/DA)

QC 02/02/21: RC

# THE STATE OF TEXAS

### VS

## UNIQUE MICA GREEN-BATTLE

Scott Carpenter
37.10 (d)(2)
73990628

21-DCR-094178
INDI          1
Indictment
6265504

| | |
|---|---|
| D.O.B.: ■■■■■■ | DA CONTROL NO: 20-011389 |
| FELONY CHARGE: TAMPER W/GOV REC-INS DOC (a)(1,3,4,6)/ F3 | ARREST DATE: Not arrested on this charge |
| CAUSE NO: 21-DCR-094178 | OFFENSE DATE: October 22, 2019 |
| DISTRICT COURT NO: 268th | AGENCY/AGENCY NO: FORT BEND COUNTY SHERIFF'S OFFICE/ 200041418 |
| BAIL AMOUNT: $2-500.00 | PRIOR CAUSE NO: |
| RELATED: FORGERY FINANCIAL INSTRUMENT >=$2500<$30K IAT | CO-DEF: |

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Fort Bend County, Texas, presents in the District Court of Fort Bend County, Texas, that in Fort Bend County, Texas, **UNIQUE MICA GREEN-BATTLE**, hereafter styled the Defendant, heretofore on or about **October 22, 2019**, did, unlawfully and knowingly make, present, or use any record, document, or thing, namely, a lien release, with knowledge of its falsity, with the intent that it be taken as a genuine governmental record, and with the intent to harm or defraud another.

AGAINST THE PEACE AND DIGNITY OF THE STATE.

FILED

2021 JAN 11 PM 3:46

*[signature]*

CLERK DISTRICT COURT
FORT BEND CO., TX

_____
FOREMAN OF THE GRAND JURY

INDICTMENT   (ORIGINAL/DA)

| Case (Cause) Number | Style | File Date | Court | Status | Type Of Action / Offense | | |
|---|---|---|---|---|---|---|---|
| 173399001010-3 Active - CRIMINAL(A) | **The State of Texas vs. BATTLE-GREEN, UNIQUE M. (SPN: 01695461) (DOB: 08/09/1980)** | 8/3/2021 | 179 | **Defendant:** Defendant Discharged(X) **Disposition:** | CREDIT CARD / DEBT CARD ABUSE ELDERLY (F) | | |
| 173399101010-3 Active - CRIMINAL(A) | **The State of Texas vs. BATTLE-GREEN, UNIQUE M. (SPN: 01695461) (DOB: 08/09/1980)** | 8/3/2021 | 179 | **Defendant:** Defendant Discharged(X) **Disposition:** Dismissed(DISM) | FRAUD / USE / POSS ID INFO- 5-9 ITEMS (F) | | |
| 173399201010-3 Active - CRIMINAL(A) | **The State of Texas vs. BATTLE-GREEN, UNIQUE M. (SPN: 01695461) (DOB: 08/09/1980)** | 8/3/2021 | 179 | **Defendant:** Defendant Discharged(X) **Disposition:** | FRAUD / USE / POSS ID INFO- 5-9 ITEMS (F) | | |
| 173398001010-3 Active - CRIMINAL(A) | **The State of Texas vs. BATTLE-GREEN, UNIQUE M. (SPN: 01695461) (DOB: 08/09/1980)** | 8/2/2021 | 179 | **Defendant:** Defendant Discharged(X) **Disposition:** | CREDIT CARD / DEBT CARD ABUSE ELDERLY (F) | | |
| 173327901010-3 Active - CRIMINAL(A) | **The State of Texas vs. BATTLE-GREEN, UNIQUE MICA (SPN: 01695461) (DOB: 08/09/1980)** | 7/28/2021 | 179 | **Defendant:** Defendant Discharged(X) **Disposition:** | CREDIT CARD / DEBT CARD ABUSE ELDERLY (F) | | |
| 172464301010-3 Active - CRIMINAL(A) | **The State of Texas vs. BATTLE-GREEN, UNIQUE (SPN: 01695461) (DOB: 08/09/1980)** | 5/26/2021 | 179 | **Defendant:** Bond Made(B) **Disposition:** | TAMPER GOVT RECORD (F) | | |
| 145240301010-3 Dismissed(D) | **The State of Texas vs. GREEN, MICHAEL JAMES (SPN: 01695461) (DOB: 08/09/1980)** | 12/22/2014 | 232 | **Defendant:** Disposed(D) **Disposition:** Dismissed(DISM) | TAMPERING WITH RECORD (F) | | |
| 135092101010-3 Dismissed(D) | **The State of Texas vs. GREEN, MICHAEL JAMES (SPN: 01695461) (DOB: 08/09/1980)** | 6/12/2012 | 178 | **Defendant:** Disposed(D) **Disposition:** Dismissed(DISM) | VIOL. OF PROTECTIVE ORDER ENH. (F) | | |
| 134413401010-3 Dismissed(D) | **The State of Texas vs. GREEN, MICHAEL (SPN: 01695461) (DOB: 08/09/1980)** | 4/16/2012 | 178 | **Defendant:** Disposed(D) **Disposition:** Dismissed(DISM) | AGG ASSAULT-FAMILY MEMBER (F) | | |
| 133926801010-3 Complete(C) | **The State of Texas vs. GREEN, JAMES RUSSELL (SPN: 01633171) (DOB: 08/09/1980)** | 3/4/2012 | 174 | **Defendant:** Disposed(D) **Disposition:** Disposed(DISP) | DEADLY CONDUCT (M) | | |
| 126618701010-2 Complete(C) | **The State of Texas vs. GREEN, MICHAEL JAMES (SPN: 01695461) (DOB: 08/09/1980)** | 10/26/2004 | 2 | **Defendant:** Disposed(D) **Disposition:** Disposed(DISP) | EVADE DETENTION (M) | | |
| 099821301010-3 Complete(C) | **The State of Texas vs. GREEN, MICHAEL JAMES (SPN: 01695461) (DOB: 08/09/1980)** | 8/22/2004 | 177 | **Defendant:** Disposed(D) **Disposition:** Disposed(DISP) | THEFT >=$500 <$1,500 (M) | | |
| 111609701010-2 Complete(C) | **The State of Texas vs. GREEN, MICHAEL JAMES (SPN: 01695461) (DOB: 08/09/1980)** | 5/16/2002 | 10 | **Defendant:** Disposed(D) **Disposition:** Disposed(DISP) | THEFT-$20-200-CHECK (M) | | |
| 106293301010-2 Complete(C) | **The State of Texas vs. GREEN, MICHAEL JAMES (SPN: 01695461) (DOB: 08/09/1980)** | 6/6/2001 | 1 | **Defendant:** Disposed(D) **Disposition:** Disposed(DISP) | ASSAULT-FAMILY MEMBER (M) | | |
| 079961601010-3 Complete(C) | **The State of Texas vs. GREEN, MICHAEL JAMES (SPN: 01695461) (DOB: 08/09/1980)** | 12/4/1998 | 177 | **Defendant:** Disposed(D) **Disposition:** Disposed(DISP) | FORGERY (F) | | |
| 079961701010-3 Complete(C) | **The State of Texas vs. GREEN, MICHAEL JAMES (SPN: 01695461) (DOB: 08/09/1980)** | 12/4/1998 | 177 | **Defendant:** Disposed(D) **Disposition:** Disposed(DISP) | ASSAULT (M) | | |
| 078435501010-3 Complete(C) | **The State of Texas vs. GREEN, MICHAEL JAMES (SPN: 01695461) (DOB: 08/09/1980)** | 5/30/1998 | 177 | **Defendant:** Disposed(D) **Disposition:** Disposed(DISP) | FORGERY (F) | | |

LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
ATTORNEYS AT LAW
4828 LOOP CENTRAL DRIVE
SUITE 600 (77081)
PO BOX 3064
Houston, TX 77253-3064

(713) 844-3561
Fax  (713) 844-3505

November 20, 2020

Healing Favor Investments, LLC (In Rem Only)
Ryan W. Lane
Registered Agent
1935 Kentwood Ln.
Carrollton, TX 75007-2407

## A Property Tax Lawsuit Will Be Filed

RE:     Tax Account Number: 0540260000001
        Property Description: Lot Six (6), In Block Eight (8), Of South Court Amending Plat No. 1, A Subdivision In Harris County, Texas.
        According To The Map Or Plat Thereof, Recorded Under Film Code No. 681616 Of The Map Records Of Harris County, Texas.

Dear Taxpayer:

Please be advised that a law suit will be filed after 10 days from the date of this letter against you and the above-referenced property ("Property") seeking foreclosure of a delinquent tax lien on behalf of the taxing entities for which this law firm collects delinquent property taxes.  Prior to filing this delinquent tax foreclosure suit, extensive title research was conducted in order to identify all owners and lien-holders of the property and to verify the property's legal description.  You were identified as having either an ownership or lien interest in the Property.

**We encourage you to resolve this matter prior to the filing of this delinquent tax foreclosure lawsuit by contacting a taxpayer representative at (713) 844-3561 to discuss your payment options. When suit is filed additional costs may be incurred, including Abstract Fees, Court Costs, Tax Master Fee and Attorney Ad Litem Fees (if any).**

IF YOU ARE 65 YEARS OF AGE OR OLDER OR ARE DISABLED, AND YOU OCCUPY THE PROPERTY DESCRIBED IN THIS DOCUMENT AS YOUR RESIDENCE HOMESTEAD, YOU SHOULD CONTACT THE APPRAISAL DISTRICT REGARDING ANY ENTITLEMENT YOU MAY HAVE TO A POSTPONEMENT IN THE PAYMENT OF THESE TAXES. To claim an over 65 or disabled deferral, you must contact the Harris County Appraisal District at 713-957-7800 or visit www.hcad.org to request an application.

Sincerely,

Margaret Alfred
State Bar No. 24104378

If you are a debtor in a pending bankruptcy, please contact us with the cause number of the bankruptcy so that we can code your account and file a claim in the bankruptcy proceeding.  If you are represented by a lawyer, please forward this letter to him/her.

ANN HARRIS BENNETT
TAX ASSESSOR-COLLECTOR
P.O. BOX 3547
HOUSTON, TEXAS 77253-3547
TEL: 713-274-8000



**2020 Property Tax Statement**

**Web Statement**

| Statement Date: | November 30, 2020 |
|---|---|
| **Account Number** | |
| **054-026-000-0001** | |

* 0 5 4 0 2 6 0 0 0 0 0 0 1 *

GREEN UNIQUE MICA
1116 ELBERTA ST
HOUSTON TX 77051-1954

| Taxing Jurisdiction | Exemptions | Taxable Value | Rate per $100 | Taxes |
|---|---|---|---|---|
| Houston ISD | 0 | 304,626 | 1.133100 | $3,451.72 |
| Harris County | 0 | 304,626 | 0.391160 | $1,191.58 |
| Harris County Flood Control Dist | 0 | 304,626 | 0.031420 | $95.71 |
| Port of Houston Authority | 0 | 304,626 | 0.009910 | $30.19 |
| Harris County Hospital District | 0 | 304,626 | 0.166710 | $507.84 |
| Harris County Dept. of Education | 0 | 304,626 | 0.004993 | $15.21 |
| Houston Community College System | 0 | 304,626 | 0.100263 | $305.43 |
| City of Houston | 0 | 304,626 | 0.561840 | $1,711.51 |

| Property Description |
|---|
| MADRID AVE 77021 |
| LT 6 BLK 8 SOUTH COURT AMEND |

| Appraised Values | |
|---|---|
| Land - Market Value | 115,000 |
| Impr - Market Value | 189,626 |
| Total Market Value | 304,626 |
| Less Capped Mkt Value | 0 |
| Appraised Value | 304,626 |

| Exemptions/Deferrals |
|---|
| Delinquent Taxes Exist |
| Overage may exist. Please contact Tax Office for details |

*Page: 1 of 1*

| | |
|---|---|
| **Total 2020 Taxes Due By January 31, 2021:** | **$7,309.19** |
| **Payments Applied To 2020 Taxes** | **$0.00** |
| **Total Current Taxes Due (Including Penalties)** | **$7,309.19** |
| **Prior Year(s) Delinquent Taxes Due (If Any)**  2019 - 2019 | **$5,489.77** |
| **Total Amount Due For January 2021** | **$12,798.96** |

| Penalties for Paying Late | Rate | Current Taxes | Delinquent Taxes | Total |
|---|---|---|---|---|
| By Febuary 28, 2021 | 7% | $7,820.83 | $5,534.04 | $13,354.87 |
| By March 31, 2021 | 9% | $7,967.02 | $5,578.30 | $13,545.32 |
| By April 30, 2021 | 11% | $8,113.20 | $5,622.58 | $13,735.78 |
| By May 31, 2021 | 13% | $8,259.39 | $5,666.84 | $13,926.23 |
| By June 30, 2021 | 15% | $8,405.58 | $5,711.10 | $14,116.68 |

Tax Bill Increase (Decrease) from 2015 to 2020:   Appraised Value  803%,   Taxable Value 803%,   Tax Rate -5%,   Tax Bill 754%.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**PLEASE CUT AT THE DOTTED LINE AND RETURN THIS PORTION WITH YOUR PAYMENT.**

* 0 5 4 0 2 6 0 0 0 0 0 0 1 *

**PAYMENT COUPON**

GREEN UNIQUE MICA
1116 ELBERTA ST
HOUSTON TX 77051-1954

| Account Number |
|---|
| **054-026-000-0001** |
| **Amount Enclosed** |
| $_____ . _____ |

Web Statement - Date Printed: 11-30-2020

**Make check payable to:**

IF YOU ARE 65 YEARS OF AGE OR OLDER OR ARE DISABLED AND THE PROPERTY DESCRIBED IN THIS DOCUMENT IS YOUR RESIDENCE HOMESTEAD, YOU SHOULD CONTACT THE APPRAISAL DISTRICT REGARDING ANY ENTITLEMENT YOU MAY HAVE TO A POSTPONEMENT IN THE PAYMENT OF THESE TAXES.

**ANN HARRIS BENNETT
TAX ASSESSOR-COLLECTOR
P.O. BOX 4622
HOUSTON, TEXAS 77210-4622**

0540260000015 2020 001279896 001335487 001354532 001373578