UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| UNIQUE MICA GREEN | § | CASE NO. 22-30587 |
| | § | CHAPTER 7 |
| | § | |
| DEBTOR | § | CHIEF JUDGE DAVID R. JONES |

_____

| | | |
|---|---|---|
| | § | |
| EVA S. ENGELHART, CHAPTER 7 | § | |
| TRUSTEE | § | |
| | § | |
| Plaintiff | § | |
| | § | ADV. NO. _____ |
| vs. | § | |
| | § | |
| UNIQUE MICA GREEN | § | |
| | § | |
| Defendant | § | |

## TRUSTEE'S ORIGINAL COMPLAINT

**To the Honorable David R. Jones,**
**Chief United States Bankruptcy Judge**:

COMES NOW Eva S. Engelhart, Chapter 7 Trustee ("Trustee") of the bankruptcy estate of the above-captioned bankruptcy estate and respectfully states as follows:

### A. Parties

1.      Eva S. Engelhart, Chapter 7 Trustee (hereafter the "Trustee" or "Plaintiff") is the duly appointed Chapter 7 Trustee in the above-captioned Chapter 7 bankruptcy case and may be served through the undersigned counsel.

2.      Unique M. Green is a natural person who resides, and may be served with process, at 4404 Allison Rd, Houston, Texas 77048 and/or 1116 Elberta, Houston, Texas 77051.

### B. Jurisdiction, Venue and Consent for Entry of Final Orders

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (J) and arises in and/or under Title 11.  The

statutory predicate for the relief sought herein is 11 U.S.C. § 727.

4.      Venue is proper under 28 U.S.C. §§ 1408 and/or 1409.

5.      This Court has constitutional authority to enter a final order regarding this matter.   This motion concerns essential bankruptcy matters which have no equivalent in state law thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable.   *See In re Carlew*, 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012) (discussing *Stern v. Marshall*, 131 S.Ct. 2594 (2011)).   In the alternative, all the matters addressed in this motion are essential bankruptcy matters which trigger the public rights exception.   *See Id.*

6.      The Trustee consents to the entry of a final judgment by this Court.

### C. General Factual and Procedural Background

3.      On March 4, 2022, (the "Petition Date"), Unique M. Green (the "Debtor") filed for voluntary Chapter 13 bankruptcy protection.   See Docket Number 1 and Exhibit A.

4.      On April 14, 2022, the Debtor filed her Statement of Financial Affairs.   See Docket Number 33 and Exhibit B.

5.      On April 14, 2022, the Debtor filed her Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period.   See Docket Number 34 and Exhibit C.

6.      On April 14, 2022, the Debtor filed her Schedules A/B.   See Docket Number 35 and Exhibit D.

7.      On June 12, 2022, the Debtor filed her Amended Schedule C.   See Docket Number 73 and Exhibit E.

### D. Objection to the Debtor's Discharge

8.      11 U.S.C § 727(a) provides, in relevant part, that:

(a) The court shall grant the debtor a discharge, unless –
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed,

mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(B) property of the estate, after the date of the filing of the petition;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

. . .

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
. . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

9. The Debtor has violated the foregoing provisions of § 727 multiple times in connection with this case as detailed below.

### Count I - Concealment of Bank Accounts

10. As noted above, the Debtor filed her bankruptcy Petition on March 4, 2022, see Exhibit A, wherein she disclosed ownership and utilization of the assumed name A Community Funeral Home as follows:

| 4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years<br><br>Include trade names and *doing business as* names | ☐ I have not used any business names or EINs.<br><br>A Community Funeral Home<br>Business name<br><br>Business name<br><br>4 5 _ 3 7 5 8 8 1 5<br>EIN | ☐ I have not used any business names or EINs.<br><br>Business name<br><br>Business name<br><br>__ __ - __ __ __ __ __ __ __<br>EIN |

-and-

11.     On April 14, 2022, as noted above, the Debtor filed her Statement of Financial Affairs again reiterating her ownership and use of the assumed name A Community Funeral Home as follows, see Exhibit B:

12.     On April 14, 2022, as noted above, the Debtor filed her schedule A/B, wherein she affirmatively stated as follows with regard to cash on hand and deposits of money:

13.     The Debtor's representations in her Schedule A/B are a material falsehood as, on the Petition Date, she had open bank accounts with the following institutions:

| Bank | Account # | Holder | Balance |
|---|---|---|---|
| Primeway Federal Credit Union | XXX3178S001 | Unique Mica Green | $15.25 |
| Primeway Federal Credit Union | XXX3178S007 | Unique Mica Green | $82.79 |

| Primeway Federal Credit Union | XXX6460S0001 | A Community Funeral Home | $2.00 |
|---|---|---|---|
| Primeway Federal Credit Union | XXX6460S0007 | A Community Funeral Home | $11,821.44 |
| Navy Federal Credit Union | XXX10472 | Unique Mica Battle | $0.00 |
| Navy Federal Credit Union | XXX5666 | A Community Funeral Home | $25.61 |

See Exhibits F and G.

14.	At the July 26, 2022, hearing the Debtor testified her the only bank accounts she had were the following:

Q - Where do you currently have a bank account?
A – Bank of America.

Q – In the last year prior to today have had any bank accounts with any banking institutions other than Bank of America?
A – Navy Federal Credit Union.

Q – is that account currently open or did you close it?
A – I closed it.

15.	The Debtor's failure to disclose the foregoing bank accounts and turn over the non-exempt funds on deposit, either on the Petition or Conversion Dates, violates 11 U.S.C. § 727(a)(2)(B), (3) and/or (4)(A), (B) and/or (D) and constitute grounds for denial of the Debtor's discharge.

### *Count II - Concealment of Receipt of Funds from Non-Exempt Insurance Claim*

16.	The Debtor's Schedule A/B discloses the following:



17.	What the Debtor failed to disclose was the fact that she made an insurance claim for the above referenced loss to Liberty Mutual and received a payment of $62,094.05, which was received into the Debtor's Primeway Federal Credit Union Account.   See Exhibits F and H.

18.     The Debtor's failure to disclose the claim made to Liberty Mutual and the funds received from that claim violates 11 U.S.C. § 727(a)(2)(B), (3) and/or (4)(A), (B) and/or (D) and constitute grounds for denial of the Debtor's discharge.

### Count III - Concealment of Insurance on 1958 Corvette

19.     The Debtor's Schedule A/B, see Exhibit D, states as follows with regard to insurance policies:

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ☑ No
    ☐ Yes. Name the insurance company       Company name:                    Beneficiary:
       of each policy and list its value. ...

20.     On the Petition Date, the Debtor owned a 1958 Corvette and a 2014 Corvette which have not ever been, or could ever properly be, claimed as exempt property by the Debtor. See Exhibit __, pages 2 and 3.  On June 15, 2022, in a series of emails, see Exhibits I.1 to I.3, the Trustee communicated to counsel for the Debtor that these vehicles needed to be turned over and received a positive response. However, on June 20, 2022, the Trustee was informed by the Debtor that she would not longer turn over either vehicle and asserted that the 1958 Corvette has been "stolen."   Later the same day, counsel for the Debtor conveyed the following response by the Debtor to a question by the Trustee regarding, among other things, insurance on the 1958 Corvette:

> "The 1958 Corvette was not insured and why are they asking for proof of insurance that has nothing to do with them."

21.     On September 15, 2022, the Trustee learned that the 1958 Corvette was insured by Hagerty Group, LLC, a specialty insurer of classic cars.   See Exhibits J and K.

22.     The Debtor's failure to disclose the existence of insurance coverage for the loss of the 1958 Corvette violates 11 U.S.C. 727(a)(2)(B), (3) and/or (4)(A), (B) and/or (D) and constitute grounds for denial of the Debtor's discharge.

### Count IV - The Hayabusa Motorcycle Wreck and Insurance Proceeds

23.     On July 26, 2022, the Court held a hearing on the Trustee's Emergency Motion for Order Compelling Debtor to Turn Over Motor Vehicles filed at Docket Number 81.  During the hearing the Debtor testified as follows regarding a 2008 Hayabusa motorcycle:

Q – You mentioned a little while back that you had been in a motorcycle wreck
A – In March

Q – In March of 2022?

A – This year yes
Q – Were you driving the motorcycle at the time of the wreck?
A – Yes

Q – What kind of motorcycle was it?
A – A 2008 Hayabusa
. . .
Q – What happened to you?
A - . . . my left wrist was fractured, my arm was all bloody . . . I had to go to the hospital

Q – Who owned the motorcycle you were riding?
A – It was in my name
. . .
Q – And was it insured
A – Yes
. . .
Q – Was there a police report?
A - Yes sir

Court – Ms. Green have you received any compensation related to the wreck?
A – Yes sir they, they paid the motorcycle off

Q – Who is they?
A – The insurance company

Q – Your insurance company or somebody else's insurance company?
A – My insurance company

Q – The monies that were paid by the insurance company for the Hayabusa where did those monies go?
A – They sent me a check

Q – and it was payable to you?
A – Yes

Q – And there was no secured creditor that it was also made payable to?
A – Unh uh, I owned the bike

Q – So what did you do with the check?
A – I cashed it

Q – So you went to a bank and converted it into cash?
A – Yes

Court – How much was the check for?
A – Five or six thousand dollars . . .

Court – You will turn that cash over to the trustee in the next seven days . . .

Q – What bank did you go to to cash that check?
A – I think it was BOA

Q – When in March did you have this wreck?
A – I'm not [inaudible] I think it was March the first or something, but I will get the police report to give you the exact date.

24.     On July 28, 2022, Debtor's counsel forwarded a copy of the police report made after the wreck involving the motorcycle.   See Exhibit L.   This report proves that the Debtor's testimony about the date of the wreck was intentionally false, as the wreck occurred on March 25, 2022 (three-weeks after the Petition Date).   Moreover, the Debtor omitted her ownership of the motorcycle from her Schedule A/B as having owned it on the Petition Date, having an insurance policy related to the motorcycle and failed to disclose her insurance claim arising from the wreck either on her schedules or to the Trustee.

25.     Additionally, the Debtor's testimony regarding the amount received from the insurance claim and what she did with the money was materially false.   On July 28, 2022, the Debtor, through counsel, provided correspondence from her insurer indicating approval of her claim arising from the wreck in the amount $6,868.69.   See Exhibit M (Safeco is an affiliate of Liberty Mutual Insurance).   However, the Debtor's testimony that she received this payment by check, which she later cashed, was intentionally misleading to protect her undisclosed Primeway Federal Credit Union Account as the payment in question had been directly deposited into that account on April 5, 2022.   Further, the Debtor intentionally failed to disclose a payment of an additional $3,000.00 on this claim (this was a payment for reimbursement of specialty equipment on the motorcycle, separate from damage to the motorcycle itself), also deposited on April 5, 2022.   See Exhibit F, excerpted as follows:

**Share 0000393178 S 0007 Free Checking**

| Posting Date | Effective Date | Description | Amount | Balance |
|---|---|---|---|---|
| 04/05/2022 | | POS Deposit<br>Liberty Mutual 6536 XXXXXXXXXXXX0376<br>000000058422<br>Visa Direct MA | $6,868.69 | $9,086.97 |
| 04/07/2022 | | POS Deposit<br>Liberty Mutual 6536 XXXXXXXXXXXX0376<br>000000139317<br>Visa Direct MA | $3,000.00 | $12,086.97 |

26.     The Debtor has never turned over the funds received from Liberty Mutual.

27.     The Debtor's failure to disclose ownership of the motorcycle and insurance claim, failure to turn over the non-exempt funds received for the insurance claims and her false testimony regarding the circumstances of the wreck, amount received for the claim and how the claim funds were received violates 11 U.S.C. § 727(a)(2)(B), (3), (4)(A), (B) and/or (D) and/or (6)(A) and constitute grounds for denial of the Debtor's discharge.

### Count V - Toyota Lawsuit

28.     On March 21, 2022, almost three-weeks post-petition, Cause No. 2022-16875, *Paulette King for Sidneys Auto vs. Toyota Motor Credit Corp and Unique M. Green*, was filed in the 165th Judicial District Court of Harris County, Texas. See Exhibit N.

29.     On April 8, 2022, Allstate Vehicle & Property Insurance Company filed an expedited motion to convert this case, then a Chapter 13 case, to a Chapter 7 case.   At the hearing on this motion held on April 21, 2022, evidence was presented that this lawsuit was fraudulently filed which led to the conversion of this case.   At the July 26, 2022, hearing, the Debtor testified that, although she was a defendant in this case, she hired and paid the process server who was to have served plaintiff's suit as:

Q – So, did you have anything to do with the filing of this lawsuit?
A – No sir

Q – Did you hire anybody to serve this lawsuit on Toyota Motor Credit Company?
A - When you say hire somebody I just had a process server to serve it

Q – Okay, so you hired a process server to get that served, that lawsuit served?
A – Yes

Q – And who was that process server?
A – I don't remember his name uuh

Q – How much do you pay the process to have the lawsuit by Paulette King served?
A – I don't remember, that was in March

Q – would that have been Everett Vaugh Moore
A – I think that is his name

Q – how did you pay Mr. Moore for his services?
A – I don't remember this was in March think it could have been cash, I don't remember

30.     The Debtor failed to disclose her ownership of the 2012 BMW, which was the subject of the fraudulently filed lawsuit.

31.     The Debtor caused the filing of a fraudulent state court lawsuit post-petition violating the automatic stay and attempting to divert property of the estate, the 2012 BMW made the basis of the fraudulent suit violates 11 U.S.C. § 727(a)(2)(B), (3), (4)(A), (B) and/or (D) and/or (6)(A) and constitute grounds for denial of the Debtor's discharge.

***Count VI - False Testimony Regarding Disposition of an Audi A7 and Source of Funds/Ownership of the 2014 Corvette***

32.     As noted above, the Debtor scheduled ownership of a non-exempt 2014 Corvette.   When demand for turnover of this vehicle was made on June 15, 2022, the Debtor refused to turn over the vehicle and instead claimed as follows (See Exhibit O) [speaking of the 2014 Corvette]:

> The other car was purchased for my son with monies he worked for and saved he was 17 at the time and the car was placed in my name because he was not 18 yet and had only a drivers permit, my son turned 18 in May and received his Texas drivers license. My son lives and alternative lifestyle and thought living in Atlanta Ga was better suitable for his lifestyle and I did not agree but he is grown and moved to Atlanta and took his vehicle with him. I told my attorney weeks ago and asked what information was needed for your office.

33.     At the hearing on July 26, 2022, the Debtor testified as follows with regard to a 2017 Audi A7 previously owned by her and as to how the 2014 Corvette was paid for:

Q – I've got a record here that shows you have registered to a grey 2017 Audi A7 Sportsback Quattro Prestige, what happened to that car?
A – That car was traded in sometime last year or something I don't remember but I don't own it anymore.
. . .

Q – Ma'am the 1958 Corvette and the 2014 Corvette did you ever make payments to purchase those two vehicles from your own funds?
A – No.

34.     The Debtor's testimony at the July 26th hearing is demonstrably false as she had not disposed of the Audi A7 at some indeterminate time in 2021; rather, she used it as a trade-in to pay $39,000.00 of the $42,890.00 purchase price of the 2014 Corvette to Extreme Autoplex, LLC (the then owner of the vehicle), with the balance due of $4,498.08, which she then paid by way of $3,000.00 cash and a $1,498.08 debit card charge to her bank account, as shown by the following:

**Exhibit P** (*Texas Department of Motor Vehicles Certified Title History on the 2014 Corvette*):



**Exhibit Q** (*Bill of Sale from Extreme Autoplex, LLC, for the 2014 Corvette*):

| Trade-in 2 | | | 24. Cash Sale Price (Add lines 3 + 15 + 23) | $ | 43498.08 |
| Year | | Lic. No. | 25. Trade-in Allowance | $ | 39000.00 |
| Make | | Odometer Reading | 26. Less Payoff | $ | N/A |
| Model | | Color | 27. Net Trade Allowance (Line 25-26) | $ | 39000.00 |
| Body Style | | | 28. Cash Down Payment | $ | 4498.08 |
| VIN | | | 29. Deferred Down Payment | $ | N/A |
| Lienholder Name | | | 30. Total Down Payment | $ | 43498.08 |

**Exhibit R** (*Disclosure of equity in trade-in from Extreme Autoplex, LLC*):

| Texas Disclosure of Equity in Trade-in Motor Vehicle | |
|---|---|
| The information below is valid as of _____2/15/2022_____ (date) and after this date is no longer valid. | |
| Name of Buyer(s)  **Unique Mica Green**<br>       **1116 Elberta St**<br>       **Houston, TX 77051**<br>Date<br>**2/15/2022** | Trade-in<br>Make / Model / Year<br>**Audi  A7  2017**<br>VIN#<br>**WAU22AFC2HN018117** |

| Dealership Allowance for Trade-in | $ | 39000.00 | |
|---|---|---|---|
| Amount Owed on Trade-in | $ | N/A | |
| Equity Amount | $ | 39000.00 | Equity: |

**Exhibit S** (*Extreme Autoplex, LLC, receipt showing payment of $1,498.08 to purchase the 2014 Corvette*):

EXTREME  AUTOPLEX  LLC
16227  STUEBNER
AIRLINE  RD
SPRING,TX  77379
832/306-8822

**SALE**

MID: 210004912184
TID: 001       REF#: 00000002
Bank ID: 2648
Batch #: 046001    RRN: 519567575
02/15/22           15:21:44
Invoice #: 2
APPR CODE: 432380
MASTERCARD                Chip
*************9836        **/**

AMOUNT        $1,498.08
       APPROVED
X_____
Mastercard Debit

**CEIPT FOR DOWNPAYMENT**

...vledges the receipt of $ 4498.08___ From Unique Mica Green_____
☒ NON-REFUNDABLE down payment for the vehicle listed below.

_____   _____
       Corvette                CP
        Model                Body Type

**Exhibit F** (*Debtor's Bank statement showing payment of $1,498.08 to Extreme Autoplex, LLC*):



# primeway®
## FEDERAL CREDIT UNION

Date: 09/06/2022

**A Community Funeral Home Group**

Period: 10/22/2021 to 09/06/2022

2517 wheeler st
houston TX 77004

Share ▮▮▮▮460 S 0007 Prime Small Business Checking

| Category | Draft | Open Date | 10/22/2021 |
|---|---|---|---|
| Type | Prime Small Business Checking | | |
| | | Beginning Balance | $0.00 |
| | | Ending Balance | $292.20 |
| | | Joint owner | Green,Unique Mica |

| Posting Date | Effective Date | Description | Amount | Balance |
|---|---|---|---|---|
| 02/16/2022 | | Card Card purchase EXTREME AUTOPLEX LLC 5511 XXXXXXXXXXXX9836 204601244329 (02/15/2022) SPRING TX | $-1,498.08 | $5,313.04 |

**Exhibit T** (*Application for certificate of title for the purchase of the Audi A7 by the Debtor*):

35.  On June 29, 2022, the Court entered an Order requiring the Debtor to turn over the 2014 Corvette to the Trustee, which the Debtor has failed and refused to do.

36.  The Debtor's false testimony regarding the disposition of the Audi A7, circumstances of the purchase of the 2014 Corvette and attempts to mislead the Trustee with false information violates 11 U.S.C. § 727(a)(2)(B), (3), (4)(A), (B) and/or (D) and/or (6)(A) constitute grounds for denial of the Debtor's discharge.

*Count VII - Online Financial Transfer Services*

37.     Also at the July 26, 2022, hearing, the Debtor testified as follows with regard to her use of online financial transfer services:

> Q – Do you use any online funds transfers services to either receive or pay money to or from anybody else?
> A – No sir like what kind I don't' understand the question I don't have paypal or any of that.

38.     The foregoing is demonstrably false even by way of the most casual review of the Debtor's Primeway Federal Credit Union accounts statements which are replete with transfers by the debtor to third parties utilizing the Cash App online financial services peer to peer money transfer system.   See Exhibit F.

39.     The Debtor's false testimony regarding her non-use of online financial transfer services, and thereby conceal her personal financial activities, violates 11 U.S.C. § 727(a)(2)(B), (3) and/or (4)(A), (B) and/or (D) and constitute grounds for denial of the Debtor's discharge.

*Count VIII -Undisclosed Funeral Plots*

40.     On October 27, 2016, a Quit Claim deed was filed in the Brazoria County, Texas, Real Property Records whereby the below referenced interest in real property was transferred to the Debtor, see Exhibit __:

> EDNA MARIE BLAIR, JOHN BLAIR & DARRELL BLAIR of grantor, of HARRIS County, Texas, for and in consideration of the sum of ten dollars and no cents ($10.00) paid by the Grantee named in this deed, the receipt of which is hereby acknowledged, has quit claimed, and by this instrument does quitclaim, to **UNIQUE MICA GREEN** of grantee, of HARRIS County, Texas, all of their right, title and interest in and to the real property situated in Brazoria County, Texas, and described as:
> BURIAL PLOTS in LOT N1&2 PLOT 128, SECTION16 AT HOUSTON MEMEORIAL GARDENS CEMETERY located at 2426 Cullen blvd, Pearland Tx. 77581:

41.     The Debtor failed to disclose ownership of the foregoing interest in real property on her Schedule A/B.   See Exhibit U.

42.     The Debtor's failure to disclose her ownership of non-exempt burial plots violates 11 U.S.C. § 727(a)(2)(B), (3) and/or (4)(A), (B) and/or (D) and constitute grounds for denial of the Debtor's discharge.

43.     The Trustee reserves the right to seek to amend and/or add additional allegations and Counts as discovery progresses.

WHEREFORE, premises considered, Catherine Stone Curtis, Trustee, prays that this Honorable Court grant judgment as follows:

a.      Denial of the Debtor's discharge;
b.      Costs of Court;
c.      All reasonable and necessary attorney's fees as allowed by law; and
d.      Such other and further relief as the Trustee may show herself to be entitled.

Respectfully submitted,

*/s/ Marc Douglas Myers*

_____

Marc Douglas Myers
Ross, Banks, May, Cron & Cavin, P.C.
SBN 00797133
7700 San Felipe, Suite 550
Houston, Texas 77063
(713) 626-1200; (713) 623-6014 fax
mmyers@rossbanks.com
COUNSEL FOR THE TRUSTEE